UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTENNIAL BANK,

    Plaintiff,

v.                                                                                          Case No: 8:16-cv-88-T-36JSS

SERVISFIRST BANK INC. and
GREGORY W. BRYANT,

    Defendants.
_____/

## ORDER

THIS MATTER is before the Court on Plaintiff Centennial Bank's ("Centennial") Motion to Compel Complete Responses to Subpoenas to Produce Documents Served on Catapult Entities ("Motion") (Dkt. 87). On June 28, 2016, a hearing was held on the Motion. Upon consideration of the parties' oral arguments at the hearing and for the reasons stated on the record at the hearing, the Motion is denied without prejudice.

## BACKGROUND

This case concerns alleged violations of the non-compete provisions in the employment contracts of several of Centennial's former employees. Centennial acquired Bay Cities Bank ("Bay Cities") in October 2015. (Dkt. 53 at ¶ 7(b).) In connection with the acquisition, Centennial retained several former Bay Cities employees to aid in the integration of its Tampa Bay area branches, specifically Defendant Gregory W. Bryant, the former CEO of Bay Cities, Patrick Murrin, former Chief Risk Manager and Executive Vice President of Bay Cities, and Gwynn Davey, Bay Cities' former Market President of Hillsborough County. (*Id.* at ¶¶ 13, 26–27.) Mr. Bryant, Mr. Murrin, and Ms. Davey signed employment contracts with Centennial that included provisions governing the maintenance of Centennial's confidential information; noncompetition;

non-solicitation of Centennial's customers; and non-solicitation of Centennial's employees. (*Id.* at ¶¶ 24–25; Ex. 6–8.)

On December 31, 2015, after Centennial's acquisition of Bay Cities, Mr. Bryant, Mr. Murrin, and Ms. Davey simultaneously resigned from Centennial and, in January 2016, began working for Defendant ServisFirst Bank ("ServisFirst"). (*Id.* at ¶¶ 42–44, 49, 53.) Shortly thereafter, on January 14, 2016, Centennial filed suit against ServisFirst and Mr. Bryant. (Dkt. 1.)

In the Motion, Centennial seeks an order compelling production of documents responsive to the subpoenas it issued to four limited liability companies, of which Mr. Bryant is managing member, specifically, Catapult Solutions, LLC, Catapult Funding, LLC, Catapult ALF 1, LLC, and Catapult ALF 2, LLC (collectively, "Catapult Entities"). (*See* Dkt. 87 at ¶ 9(a), Ex. A–D.)

In support of the Motion, Centennial argued that Mr. Bryant used an email address ending in "catapultsol.com" in connection with communications relating to his interviews for positions with banks after the announcement of Centennial's acquisition of Bay Cities. (*Id.* at ¶ 5(a).) Further, Centennial argued that Catapult Solutions, LLC, loaned an unidentified borrower $400,000.00 in February of 2015, which was secured by an unrecorded mortgage on property of the borrower ("Collateral"). (*Id.* at ¶ 9(d).) The loan was later assigned to Catapult ALF 1, LLC. (*Id.* at ¶ 9(f).) Centennial contended that in August of 2015, while president of Bay Cities, Mr. Bryant presided over a meeting of the loan committee of Bay Cities at which the committee approved a $12 million construction loan to the borrower, which was secured by the Collateral. (*Id.* at ¶ 9(h).) Mr. Bryant, because of his employment agreements, Centennial argues, was precluded from directly or indirectly competing with Bay Cities or Centennial. (*Id.* at ¶ 10.)

Centennial argued that compelling the requested documents from the Catapult Entities is necessary for Centennial to (1) build its case against Bryant, (2) understand its obligations to its

borrowers, and (3) address the expectations of the borrower and other customers "[Mr.] Bryant might have exploited." (*Id.* at ¶ 11(c).)

In response to the Motion, the Catapult Entities argued that the documents sought by the subpoenas are not relevant to any party's claims or defenses and are not proportional to the needs of the case. (Dkt. 120 at 4–7.) Specifically, they argued that Bryant created the Catapult Entities "as vehicles for personal investments" and that Centennial has not shown that these entities are related to Bryant's departure from Centennial. (*Id.* at 4.) The Catapult Entities argued that they were never mentioned by Centennial in the Amended Complaint or the Motion for Preliminary Injunction and that many of Centennial's contentions relate to conduct that occurred before Centennial acquired Bay Cities. (*Id.* at 4, 7.) Further, they stated that Bryant has already produced emails he sent using his Catapult email address. (*Id.* at 11.)

Centennial countered the Catapult Entities' relevancy objection by arguing that this case involves "Bryant's direct and indirect misappropriation of Centennial's confidential information, poaching of Centennial employees, solicitation of Centennial's customers, and impermissible conflicts of interest" in violation of his employment agreements. (Dkt. 87 at 15.) At the hearing, counsel for Centennial expanded on this argument, contending that its claims against Mr. Bryant for breach of fiduciary duty (Dkt. 53 at Count V) and fraudulent inducement (Dkt. 53 at Count VII) are predicated on conduct such as Mr. Bryant's actions, that affect Centennial, taken through the Catapult Entities.

**APPLICABLE STANDARDS**

A party, "[o]n notice to other parties and all affected persons," may move to compel discovery. Fed. R. Civ. P. 37(a)(1). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Id.* at 37(a)(4). Courts maintain great

discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). The court has broad discretion to compel or deny discovery. *Josendis v. Wall to Wall Residence Repairs, Inc*., 662 F.3d 1292, 1306 (11th Cir. 2011).

Through discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged, relevant to any party's claim or defense, and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The term "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts consider the following factors when evaluating whether requested discovery is proportional to the needs of the case: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Parties responsible for issuing subpoenas "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the Court must enforce this duty. *Id.* at 45(d)(1). An order compelling production "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* at 45(d)(2)(B)(ii). In response to a subpoena, a subpoenaed person may serve objections to the subpoena and, if a person withholds information under a claim of privilege or work product protection, the person must "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information

itself privileged or protected, will enable the parties to assess the claim." *Id.* at 45(d)(2)(B) and (e)(2).

## ANALYSIS

As stated on the record at the hearing, the discovery Centennial seeks from the Catapult Entities is relevant to Centennial's allegations in the Amended Complaint regarding Mr. Bryant's allegedly improper conduct that forms the basis of Centennial's claims against Mr. Bryant for breach of fiduciary duty and fraudulent inducement.  However, the requests in the subpoenas, as drafted, are overly broad and not reasonably tailored—e.g. "[a]ll documents . . . constituting any form of communication by and between Catapult and Bryant . . . at any time from January 1, 2015 through the present date." (*See* Dkt. 82 at Ex. A–D.)  Further, the Motion, and counsel's argument at the hearing, demonstrates the involvement of only Catapult Solutions, LLC and Catapult ALF 1, LLC in Mr. Bryant's allegedly improper conduct.  Thus, Centennial has not shown that discovery from Catapult Funding, LLC and Catapult ALF 2, LLC is relevant to any of its claims against Mr. Bryant.

Accordingly, the Motion (Dkt. 87) is **DENIED** without prejudice.

**DONE** and **ORDERED** in Tampa, Florida on July 1, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record