UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTENNIAL BANK,

      Plaintiff,

v.                                                   Case No: 8:16-cv-88-T-36JSS

SERVISFIRST BANK INC. and
GREGORY W. BRYANT,

      Defendants.
_____/

## ORDER

THIS MATTER is before the Court on Plaintiff Centennial Bank's Motion to Compel Complete Responses to Subpoenas to Produce Documents Served on ServisFirst Employees ("Non-Party Motion") (Dkt. 88) and Plaintiff Centennial Bank's Motion to Compel Bryant to Provide Better Responses to Centennial Bank's First Request for Production ("Bryant Motion") (Dkt. 124). On June 28, 2016, a hearing was held on the Non-Party Motion and the Bryant Motion. Upon consideration of the parties' oral arguments on the Non-Party Motion and the Bryant Motion at the hearing and for the reasons stated on the record at the hearing, the Non-Party Motion is granted and the Bryant Motion is denied.

## BACKGROUND

### A.  Overview

This case concerns alleged violations of the non-compete provisions in the employment contracts of several of Plaintiff Centennial Bank's ("Centennial") former employees. Centennial acquired Bay Cities Bank ("Bay Cities") in October 2015. (Dkt. 53 at ¶ 7(b).) In connection with the acquisition, Centennial retained several former Bay Cities employees to aid in the integration of its Tampa Bay area branches, specifically Defendant Gregory W. Bryant, the former CEO of

Bay Cities, Patrick Murrin, former Chief Risk Manager and Executive Vice President of Bay Cities, and Gwynn Davey, Bay Cities' former Market President of Hillsborough County. (*Id.* at ¶¶ 13, 26–27.) Mr. Bryant, Mr. Murrin, and Ms. Davey signed employment contracts with Centennial that included provisions governing the maintenance of Centennial's confidential information; noncompetition; non-solicitation of Centennial's customers; and non-solicitation of Centennial's employees. (*Id.* at ¶¶ 24–25; Ex. 6–8.)

On December 31, 2015, after Centennial's acquisition of Bay Cities, Mr. Bryant, Mr. Murrin, and Ms. Davey simultaneously resigned from Centennial and, in January 2016, began working for Defendant ServisFirst Bank ("ServisFirst"). (*Id.* at ¶¶ 42–44, 49, 53.) Shortly thereafter, on January 14, 2016, Centennial filed suit against ServisFirst and Mr. Bryant (collectively, "Defendants"). (Dkt. 1.)

**B.      Non-Party Motion**

In the Non-Party Motion, Centennial seeks to compel Ms. Davey and Mr. Murrin (together, "Non-Parties") to produce documents responsive to its subpoenas. (Dkt. 88 at ¶ 7.) The information Centennial seeks from the Non-Parties are: (1) Centennial's confidential information that the Non-Parties allegedly forwarded to their personal email accounts while still employed by Centennial, which Centennial contends is contained in the Non-Parties' personal email accounts, and (2) indemnification agreements between the Non-Parties and ServisFirst, executed on December 31, 2015.

With regard to the confidential information Centennial contends is in the Non-Parties' personal email accounts, Centennial seeks an order compelling the Non-Parties to produce the hard drives of their personal devices for inspection and mirror imaging. (*Id.* at 18–21.) This measure is warranted, Centennial argued, because there is a question of whether the Non-Parties deleted

their personal emails at the end of 2015 and, therefore, the information it seeks from the Non-Parties may not be otherwise obtainable.  (*Id.* at 13, 20–21) ("[Counsel for the Non-Parties] communicated that Davey had committed 'e-mail bankruptcy' and deleted all of her personal e-mails at the end of 2015 and that Murrin followed a similar procedure.").

As further articulated at the June 28, 2016 hearing, Centennial requests that a data specialist be permitted to access the devices the Non-Parties used to access their personal email accounts and mirror image the hard drives, which would remain in the specialist's custody pending resolution of the Non-Party Motion.  Also, Centennial requests that the specialist be permitted to access the Non-Parties' personal email accounts in order to determine which devices accessed the email accounts and whether emails were deleted or captured in the accounts' archives.  At the hearing, the parties conferred as to the procedure for mirror imaging the Non-Parties' hard drives and reached a tentative agreement in that regard.

As to the indemnification agreements, at the hearing, Centennial argued that the agreements do not constitute work product because they were not created in anticipation of litigation, as demonstrated by the timeline of events leading up to the execution of the agreements. Specifically, on December 11, 2015, ServisFirst offered Mr. Bryant and the Non-Parties positions with ServisFirst.  On December 31, 2015, the Non-Parties and Mr. Bryant gave their notice to Centennial and executed the indemnification agreements on the same day.  Finally, on January 11, 2016, Centennial sent cease and desist letters to Defendants and the Non-Parties, and on January 14, 2016, Centennial filed suit.  Thus, Centennial argues, the Non-Parties could not have anticipated litigation when the indemnification agreements were executed because no demand had been made or suit filed.

At the hearing, the Non-Parties contended that they have produced all responsive documents, with the exception of the indemnification agreements, but that, to the extent emails were deleted and are recoverable, those emails have not been produced.  They also objected to Centennial's request to mirror image the hard drives of their devices because the request is overly broad and unduly burdensome. (Dkt. 121 at 3–8.)  The Non-Parties argued that the indemnification agreements are protected from production by the work product doctrine because the language of the agreements themselves show that they were prepared in anticipation of litigation such as the present case. (*Id.* at 8.)

## C.      Bryant Motion

Centennial moves to compel responses to requests for production it served on Mr. Bryant. As narrowed at the hearing, Centennial seeks (1) the indemnity agreement between ServisFirst and Mr. Bryant and (2) emails from Mr. Bryant's personal email account that he has yet to produce, should such emails exist.  Generally, Centennial argued, Mr. Bryant's objections to the requests for production are insufficiently specific and should be overruled. (Dkt. 124 at 6–8.)  Further, Mr. Bryant waived any assertions of attorney-client privilege or work product, Centennial argued, because he served his privilege log about a week after he produced responsive documents. (*Id.* at 11.)

In response, Mr. Bryant argued that the indemnification agreements are protected from discovery by the work product doctrine because the agreements themselves state that they were created in anticipation of the present litigation. (Dkt. 139 at 9–10.)  Further, he did not waive this protection, Mr. Bryant argued, because no federal rule requires service of a privilege log simultaneously with the responses to production requests and, here, his log was served only six business days after his production of responsive documents. (Dkt. 139 at 4–6.)  Finally, at the

hearing, counsel for Mr. Bryant stated that Mr. Bryant has produced his emails to Centennial, and, to the extent he withholds responsive documents on the basis of his objections, he identified such documents on his privilege log and specifically stated so in his objections.

Finally, at the hearing, counsel for Mr. Bryant offered to submit his indemnification agreement with ServisFirst for the Court's *in camera* review.  Counsel for the Non-Parties likewise agreed to submit the Non-Parties' indemnification agreements with ServisFirst.  Following the hearing, the indemnification agreements were submitted for *in camera* review.

## APPLICABLE STANDARDS

A party, "[o]n notice to other parties and all affected persons," may move to compel discovery.  Fed. R. Civ. P. 37(a)(1).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  *Id.* at 37(a)(4).  Courts maintain great discretion to regulate discovery.  *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990).  The court has broad discretion to compel or deny discovery.  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

Through discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged, relevant to any party's claim or defense, and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The term "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Courts consider the following factors when evaluating whether requested discovery is proportional to the needs of the case: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether

the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Parties responsible for issuing subpoenas "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the Court must enforce this duty. *Id.* at 45(d)(1). An order compelling production "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* at 45(d)(2)(B)(ii). In response to a subpoena, a subpoenaed person may serve objections to the subpoena and, if a person withholds information under a claim of privilege or work product protection, the person must "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." *Id.* at 45(d)(2)(B) and (e)(2).

Under the work product doctrine, documents and other "tangible things" are not discoverable by a party when they were "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* at 26(b)(3)(A). These protected materials may be discovered, however, if "they are otherwise discoverable under Rule 26(b)(1)" and the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

As to the production of electronically-stored information, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." *Id.* at 26(b)(2)(B). When a motion to compel has been filed, the resisting party "must show that the information is not reasonably

accessible because of undue burden or cost," and, if such showing is made, "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." *Id.*

## ANALYSIS

### A. Non-Party Motion

As stated on the record at the hearing, the Non-Party Motion is granted and the Non-Parties shall produce e-discovery responsive to Centennial's requests because the requests are relevant to Centennial's claims in this case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, Centennial's information that the Non-Parties forwarded to their personal email accounts while they were still employed by Centennial is relevant to Centennial's allegations of Defendants' wrongdoing. (Dkt. 53 at ¶ 73.)

As to the indemnification agreements between the Non-Parties and ServisFirst, the indemnification agreements are relevant and therefore discoverable because ServisFirst's agreement to indemnify the Non-Parties and Mr. Bryant in the event of litigation such as the present litigation is relevant to Centennial's claims regarding ServisFirst's interference with the Non-Parties' and Mr. Bryant's employment agreements. *See* Fed. R. Civ. P. 26(b)(1). Because the Non-Parties oppose production, it is their burden to establish that the work product doctrine protects the indemnification agreements from discovery. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013).

The work product doctrine protects from production documents and other "tangible things" that were "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The Eleventh Circuit, in *Tambourine Comercio*

*Internacional SA v. Solowsky*, held that "[b]y its plain text, Rule 26(b)(3) applies to documents or things prepared by or for another party or its representative" and held that the work product protection does not apply to documents prepared for those who are not parties to the case "even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit."  312 F. App'x 263, 284 (11th Cir. 2009) (internal citations omitted).  The Eleventh Circuit's holding in *Tambourine* has been interpreted to mean that "[a] non-party is not entitled to claim work product protection."  *Bozeman v. Chartis Cas. Co.*, No. 2:10-CV-102-FTM-36, 2010 WL 4386826, at *2 (M.D. Fla. Oct. 29, 2010) (citing *Tambourine*, 312 F. App'x 263).

Here, the Non-Parties are not parties to the present litigation.  As such, they cannot claim the protections of the work product doctrine and therefore must produce the indemnification agreements.  However, the Court notes that, since the hearing, ServisFirst has filed a motion to quash Centennial's subpoenas to the Non-Parties to the extent they seek the indemnification agreements. (*See* Dkts. 160–161.)  At the time of entry of this Order, ServisFirst's motion to quash remains pending.  Accordingly, the Court finds it appropriate to stay the Non-Parties' production of the indemnification agreements pending the disposition of ServisFirst's motion to quash.

## B.      Bryant Motion

The Court rejects Centennial's contention that Mr. Bryant's objections to Centennial's request for production are not sufficiently specific because, after review of his objections (Dkt. 124 at Ex. B), the Court finds that Mr. Bryant adequately stated the basis for his objections and the objections are well taken.  The Court further rejects Centennial's argument that Mr. Bryant has waived any attorney-client privilege or work product protections because Centennial cites no binding authority that a privilege log must be produced simultaneously with a party's responses

and, in any event, Mr. Bryant served his privilege log shortly after providing responsive documents. *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 696 (M.D. Fla. 2005) ("The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents."). Further, Centennial suffered no prejudice due to the short delay.

As to Centennial's request to compel production of the indemnification between ServisFirst and Mr. Bryant, the Court denies the request because it is protected from discovery under the work product doctrine. Specifically, Mr. Bryant, as a party, may assert the work product protection and, after the Court's *in camera* inspection of the indemnification agreement, the agreement, on its face, states that it was prepared in anticipation of litigation such as the present litigation.[1] *See* Fed. R. Civ. P. 26(b)(3)(A). Further, Centennial has not shown that the agreement is "otherwise discoverable under Rule 26(b)(1)" or that it has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See* Fed. R. Civ. P. 26(b)(3).

Accordingly, it is

1.     Plaintiff Centennial Bank's Motion to Compel Complete Responses to Subpoenas to Produce Documents Served on ServisFirst Employees ("Non-Party Motion") (Dkt. 88) is **GRANTED**; however, the Non-Parties' obligation to produce the indemnification agreements is stayed pending the disposition of ServisFirst's motion to quash. (*See* Dkts. 160–161.)

2.     The Non-Parties shall serve e-discovery responsive to Centennial's subpoenas within sixty (60) days of entry of this Order.

---

[1]   The indemnification agreement between ServisFirst and non-parties Mr. Murrin and Ms. Davey were virtually identical to the indemnification agreement between ServisFirst and Mr. Bryant. Having conducted an *in camera* review of the three agreements, they all appear to have been prepared in anticipation of litigation such as the present litigation.

3.      Plaintiff Centennial Bank's Motion to Compel Bryant to Provide Better Responses to Centennial Bank's First Request for Production ("Bryant Motion") (Dkt. 124) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on July 1, 2016.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record