UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTENNIAL BANK,

     Plaintiff,

v.                                   Case No: 8:16-cv-88-T-36JSS

SERVISFIRST BANK INC. and
GREGORY W. BRYANT,

     Defendants.

_____/

## ORDER

THIS MATTER is before the Court on Defendant ServisFirst Bank Inc.'s ("ServisFirst")

Motion to Quash Subpoenas to Gwynn Davey and Patrick Murrin ("Motion") (Dkt. 160) and

Centennial Bank's ("Centennial") Response in Opposition ("Response") (Dkt. 168). Upon

consideration of the Motion and the Response and for the reasons that follow, the Motion is denied.

## BACKGROUND

**A. Overview**

This case concerns alleged violations of the non-compete provisions in the employment

contracts of several of Centennial's former employees. Centennial acquired Bay Cities Bank

("Bay Cities") in October 2015. (Dkt. 53 ¶ 7(b).) In connection with the acquisition, Centennial

retained several former Bay Cities employees to aid in the integration of its Tampa Bay area

branches, specifically Defendant Gregory W. Bryant, the former CEO of Bay Cities, Patrick

Murrin, former Chief Risk Manager and Executive Vice President of Bay Cities, and Gwynn

Davey, Bay Cities's former Market President of Hillsborough County. (*Id.* ¶¶ 13, 26–27.) Mr.

Bryant, Mr. Murrin, and Ms. Davey signed employment contracts with Centennial that included

provisions governing the maintenance of Centennial's confidential information; noncompetition;

non-solicitation of Centennial's customers; and non-solicitation of Centennial's employees.  (*Id.* ¶¶ 24–25; Ex. 6–8.)

On December 31, 2015, after Centennial's acquisition of Bay Cities, Mr. Bryant, Mr. Murrin, and Ms. Davey simultaneously resigned from Centennial and, in January 2016, began working for ServisFirst. (*Id.* ¶¶ 42–44, 49, 53.)  Shortly thereafter, on January 14, 2016, Centennial filed suit against ServisFirst and Mr. Bryant.  (Dkt. 1.)

**B.     The Motion**

On March 28, 2016, Centennial served subpoenas on Mr. Murrin and Ms. Davey (together, "Non-Parties"), requesting production of documents on April 15, 2016.   (Dkts. 88-1, 88-2.) ServisFirst filed the Motion on June 29, 2016, seeking to quash the subpoenas to the Non-Parties to the extent the subpoenas request production of documents ServisFirst contends constitute privileged work product.  (Dkt. 160.)

Previously, on April 11, 2016, the Non-Parties served objections to the subpoenas, in which the Non-Parties asserted that they withheld documents on the basis of the work product doctrine. (Dkts. 88-3, 88-4.)  Thereafter, on April 20, 2016, Centennial filed a motion to compel the Non-Parties to produce documents the Non-Parties identified as protected by the work product doctrine, specifically two letters prepared by ServisFirst's Chief Executive Officer and President on December 31, 2015, titled "Indemnification Agreement" ("Indemnification Agreements").  (Dkts. 88, 161.)

On June 28, 2016, the Court held a hearing on Centennial's motion to compel.  At the hearing, the Non-Parties addressed whether they had standing to assert the work product doctrine to protect their production of the Indemnification Agreements given that they are not parties to the litigation.  On the record at the hearing, ServisFirst stated its objection to Centennial's subpoenas

to the Non-Parties based on the work product protection in case there was any doubt as to the Non-Parties' ability to assert this protection. After the hearing, counsel for the Non-Parties submitted the Indemnification Agreements to the Court for *in camera* review.

On July 1, 2016, the Court entered an order finding that, after an *in camera* inspection of the Indemnification Agreements, the Indemnification Agreements, on their face, state that they were prepared in anticipation of litigation such as the present litigation. (Dkt. 165 at 9.) Thus, the Court determined that the Indemnification Agreements were protected by the work product doctrine and that Centennial had not overcome this protection with a showing of its substantial need for the Indemnification Agreements under Federal Rule of Civil Procedure 26(b)(3)(A). (Dkt. 165 at 9.)

However, the Court determined that the Non-Parties were not entitled to assert the work product doctrine because they are not parties to the present litigation. (Dkt 165 at 8.) *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 284 (11th Cir. 2009); *Bozeman v. Chartis Cas. Co.*, No. 2:10-CV-102-FTM-36, 2010 WL 4386826, at *2 (M.D. Fla. Oct. 29, 2010). Therefore, the Court granted Centennial's motion to compel the Non-Parties to produce the Indemnification Agreements, but stayed the Non-Parties' obligation to produce the Indemnification Agreements pending the disposition of the Motion at issue, which ServisFirst filed on June 29, 2016, after the hearing on Centennial's motion to compel. (Dkts. 160, 165 at 8.)

## APPLICABLE STANDARDS

Courts maintain great discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). The court has broad discretion to compel or deny discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

Through discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged, relevant to any party's claim or defense, and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under the work product doctrine, documents and other "tangible things" are not discoverable by a party when they were "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* at 26(b)(3)(A). These protected materials may be discovered, however, if "they are otherwise discoverable under Rule 26(b)(1)" and the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

A party has standing to move to quash a subpoena directed at a non-party if the party alleges a "personal right or privilege" with respect to the subpoenas. *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). A court must quash a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies" upon "timely motion" to quash the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iii).

## ANALYSIS

The Court has previously determined that, based on an *in camera* inspection, the Indemnification Agreements constitute privileged work product because the Indemnification Agreements state on their face that they were prepared in anticipation of litigation such as the present case. (Dkt. 165 at 9.) Thus, the Court must consider whether ServisFirst has standing to quash the subpoenas Centennial served upon the Non-Parties and whether ServisFirst has timely moved to quash the subpoenas based on the work product doctrine.

**A.      ServisFirst's Standing to Move to Quash the Subpoenas**

A party has standing to move to quash a subpoena that is not directed to the party, but instead is directed to a non-party, if the party alleges a "personal right or privilege" with respect to the subpoenas. *Auto-Owners*, 231 F.R.D. at 429 (internal citations omitted).  Here, ServisFirst asserts that the work product doctrine protects the Indemnification Agreements from production.  (Dkt. 160.)  ServisFirst has shown that it has a personal right with respect to the subpoenas because the Non-Parties' production of the Indemnification Agreements impacts ServisFirst's work product protection as to the Indemnification Agreements.  *See State of Fla. ex rel. Butterworth v. Jones Chemicals, Inc. (Florida)*, No. 90-875-CIV-J-10, 1993 WL 388645, at *2 (M.D. Fla. Mar. 4, 1993) (finding that the movants had standing "to assert their claims of attorney-client and work product privilege with respect to the testimony and documents sought in the subpoena directed to [a non-party]").  Therefore, ServisFirst has standing to move to quash the subpoenas.

**B.      Timeliness of ServisFirst's Motion to Quash the Subpoenas**

When a party serves a subpoena commanding the production of documents, "before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."  Fed. R. Civ. P. 45(a)(4).  The Federal Rules of Civil Procedure do not set forth a specific time period for filing a motion to quash a subpoena.  *Id.* at 45(d)(3).  Rather, the Rules state that, upon a "timely motion," a court must quash a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies."  *Id.* at 45(d)(3)(A)(iii).  The "term timely is not defined in the Rule or the Committee notes thereto."  *Schaaf v. SmithKline Beecham Corp.*, No. 3:06CV120 J25TEM, 2006 WL 2246146, at *1 (M.D. Fla. Aug. 4, 2006) (finding a motion to quash filed fifteen days after service of the subpoena timely); *Flynn v. Square One Distribution, Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *1 (M.D. Fla. May

25, 2016) (quoting the Commentary to Rule 45 and stating "[w]hat constitutes timeliness is not stated in the Rule but, a 'motion to quash is generally considered timely if it is brought before the time indicated for compliance.'").

In *Moore v. City of St. Augustine, Florida*, a motion to quash filed "over forty days after the date specified for compliance" was determined to be untimely. No. 3:12-CV-797-J-20MCR, 2013 WL 1156384, at *1 (M.D. Fla. Mar. 14, 2013); *see Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 2:14-MC-25-FTM-38CM, 2014 WL 5810920, at *2 (M.D. Fla. Nov. 7, 2014) (finding a motion to quash filed minutes after the time for compliance set forth in the subpoena untimely); *CCB LLC v. Banktrust*, No. 3:10CV228/LAC/EMT, 2010 WL 4038740, at *1 (N.D. Fla. Oct. 14, 2010) (finding a motion to quash untimely when it was filed "twenty-seven" minutes before the time for compliance set forth in the subpoena because the motion was filed on a federal holiday and did not provide sufficient time "for any court to issue a meaningful and timely order").

Here, ServisFirst filed its Motion over three months after Centennial provided it with notice and copies of the subpoenas and over two months after the time specified for compliance with the subpoena. The record shows that Centennial provided ServisFirst with notice and copies of the subpoenas on March 25, 2016, and that the subpoenas specified April 15, 2016, as the date for the Non-Parties to comply with the subpoena. (Dkts. 88-1, 88-2.) ServisFirst, however, did not move to quash the subpoenas until June 29, 2016. (Dkt. 160.)

In the Motion, ServisFirst argues, without explanation or citation to authority, that the Motion is "timely because it was filed before Davey and Murrin [the Non-Parties] are required to produce the indemnification agreements." (Dkt. 160 ¶ 5.) This argument is unpersuasive. ServisFirst has not cited to authority holding that its obligation to timely move to quash the subpoenas is affected by the Non-Parties' timely service of objections to the subpoenas. While it

is true that the Non-Parties' obligations to comply with the subpoena were stayed because the Non-Parties timely served objections to the subpoenas[1] and the Non-Parties' production of documents responsive to the subpoenas was stayed pending the disposition of the present Motion, ServisFirst has not shown how this affects *its* obligation to timely move to quash the subpoenas.

In fact, the operation of the Rules illustrates that a non-party subject to a subpoena and a party whose interests are implicated by a subpoena must act independently to protect their respective interests and that the acts of one do not protect the other's interest. For example, "[a] party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). In contrast, a non-party to whom a subpoena is directed must object in order to stay the non-party's compliance with the subpoena and "[t]he party to whom the subpoenaed records pertain *cannot* simply object," but must move for a protective order or to quash the subpoena. *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 384 (C.D. Cal. 2002) (emphasis in original); *see Forsythe v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2012) (citing Rule 45 and stating that a party cannot rely upon objections to a subpoena served on a nonparty, "but must instead file a motion to quash or seek a protective order").

ServisFirst cannot now attempt to quash subpoenas served more than three months ago. The governing rule and applicable authorities do not support the relief ServisFirst seeks. Instead, courts hold that a motion to quash filed *before* the date of compliance stated on the face of the subpoena is timely. *Compare Moore*, 2013 WL 1156384, at *1 (finding a motion filed forty days after the date of compliance untimely), *with Flynn*, 2016 WL 2997673, at *1 (finding a motion to

---

[1] Under Federal Rule of Civil Procedure 45(d)(2)(B), when a person subject to a subpoena serves objections to the subpoena, the serving party may move for an order compelling production and the person subject to the subpoena is stayed from complying with the subpoena pending the court's resolution of the motion to compel. Fed. R. Civ. P. 45(d)(2)(B).

quash filed a day before the date of compliance timely).  Here, the date of compliance specified in

the subpoenas was April 15, 2016.  (Dkts. 88-1, 88-2.)  ServisFirst filed the Motion more than two

months after the date of compliance and more than three months after it was provided with notice

of the subpoenas.  Although Rule 45(d)(3) does not set a date certain for ServisFirst's Motion and

provides instead that a "timely motion" must be filed, ServisFirst's lapse—of over three months

from the date it became aware of the subpoenas and over two months from the date of

compliance—cannot be considered "timely."  Accordingly, the Court finds that ServisFirst's filing

of the Motion was untimely.

"[I]n unusual circumstances and for good cause, the failure to act timely under Rule 45 will

not bar a court's consideration of the objections." *Schaaf*, 2006 WL 2246146, at *2, n.2.  Examples

of such unusual circumstances or good cause are that a subpoena is overly broad on its face or

"would impose significant expense on a nonparty acting in good faith," or that evidence exists

showing "contact between counsel for the subpoenaed party and the subpoenaing party prior to the

challenge to the subpoena." *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349 (W.D.

Va. 1999) (finding that, despite a subpoena being overly broad on its face, the delay in filing a

motion to quash until thirty-six days after the non-party was "aware of the subpoena" was not

excusable); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996) (finding

a non-party's failure to timely move to quash a subpoena excused because the subpoena was overly

broad on its face and exceeded "the bounds of fair discovery," and the non-party's counsel was in

contact with the subpoenaing party's counsel to negotiate the non-party's obligations under the

subpoena prior to filing the motion to quash).

Here, the Court finds that good cause or unusual circumstances to excuse the untimeliness

of the Motion are not present.  In its five-paragraph Motion, ServisFirst provides no explanation

for filing the Motion on June 29, 2016, despite its being aware of the subpoenas since March 25, 2016, when Centennial provided ServisFirst notice of serving the subpoenas and copies of the subpoenas. (Dkts. 88-1, 88-2, 160.) Further, the subpoenas' request for the Indemnification Agreements is not overly broad, but instead is narrowly tailored to two documents. Finally, there is no indication that ServisFirst's counsel informed Centennial's counsel that ServisFirst objected to the subpoenas prior to June 28, 2016. Thus, the Court finds that there are no circumstances excusing the untimeliness of the Motion. The Motion is therefore denied as untimely.

Accordingly, it is **ORDERED** that ServisFirst Bank Inc.'s Motion to Quash Subpoenas to Gwynn Davey and Patrick Murrin (Dkt. 160) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on August 5, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record