UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CENTENNIAL BANK,**

      **Plaintiff,**

v.                                                     **Case No: 8:16-cv-88-T-36JSS**

**SERVISFIRST BANK INC., and**
**GREGORY BRYANT,**

      **Defendants.**
_____/

## ORDER

This cause comes before the Court upon Motions to Dismiss filed by ServisFirst Bank Inc. and Gregory Bryant (Doc. 72, Doc. 73), to which Centennial Bank has responded in opposition (Doc. 80, Doc. 81). The Court, having considered the parties' submissions and being fully advised of the premises, will GRANT the Motions and allow leave to amend.

**I.**    **Background**

Plaintiff Centennial Bank ("Centennial") sues Gregory Bryant, a former employee, and his new employer, ServisFirst Bank Inc. ("ServisFirst"), for various claims arising from Bryant's relocation to ServisFirst.

On October 1, 2015, Centennial acquired Bay Cities Bank, which Bryant operated as chief executive officer. Doc. 53 at ¶¶ 7a-7b. Bryant encouraged and facilitated the acquisition, which resulted in Bryant receiving a total incentive compensation package of $2,174.99.98. *Id.* at ¶¶ 17, 22. Following the acquisition, Bryant worked for Centennial pursuant to an at-will employment agreement ("Centennial Employment Agreement"). *Id.* at ¶ 24; Doc. 53-6 at ¶ 6. The Centennial Employment Agreement included a non-compete clause, which prohibited Bryant from "engag[ing] in the banking business" in Sarasota, Hillsborough, Manatee, and Pinellas Counties

for a period of one year following his voluntary or involuntary termination. Doc. 53-6 at ¶ 10. Bryant also had a prior non-compete agreement with Bay Cities ("Bay Cities Non-Compete Agreement"), which prohibited Bryant from working within a 75-mile radius of Tampa. Doc. 53 at ¶¶ 10, 30.

Bryant resigned from Centennial three months after the acquisition, on December 31, 2015, and began working for ServisFirst at a newly-opened branch in Pasco County. *Id.* at ¶¶ 42, 44, 53, 60, 64. Two other "key executives," Pat Murrin and Gwynn Davey, left Centennial at the same time and moved to ServisFirst. *Id*. at ¶¶ 13, 44, 112. Centennial alleges that these departures were "choreographed with executive precision." *Id*. at ¶ 44.

On January 14, 2016, Centennial initiated this action against Bryant and ServisFirst. Doc. 1. On February 19, 2016, Centennial filed a twelve-count Amended Complaint. Doc. 53. Bryant and ServisFirst move to dismiss all claims. Docs. 72, 73.

**II.     Legal Standard**

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

**III.     Discussion**

Although Bryant and ServisFirst have not requested a more definite statement of Centennial's claims pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, this Court finds that a more definite statement is required. The Amended Complaint is an impermissible "shotgun" pleading. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). The Amended Complaint contains 48 pages with 196 numbered paragraphs. In each of the twelve counts, Centennial improperly incorporates the allegations from all preceding counts as well as 26 pages with 91 paragraphs of general factual allegations. *Id.* at 1321; *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). As explained in more detail below, Centennial relies on vague labels and conclusory legal allegations and attempts to plead multiple claims within one count. *Weiland*, 792 F.3d at 1322-23. In short, the Amended Complaint fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The Court therefore *sua sponte* dismisses the Amended Complaint and grants Centennial leave to file a Second Amended Complaint consistent with the instructions set forth below. *Weiland*, 792 F.3d at 1321 n.10. In order to facilitate a successful re-pleading, the Court briefly addresses the pleading deficiencies and Defendants' main challenges to the Amended Complaint.

**Tortious Interference with Contracts**

In Count I, Centennial alleges that ServisFirst tortiously interfered with Centennial's employment agreements with Bryant, Murrin, and Davey. Doc. 53 at ¶ 92. In Count III, Centennial alleges that Bryant tortiously interfered with Centennial's employment agreements with Murrin and Davey. *Id.* at ¶ 109. Under Florida law, a claim for tortious interference with a contractual relationship requires: (1) the existence of a contract, (2) the defendant's knowledge of

3

the contract, (3) the defendant's intentional procurement of the contract's breach, (4) absence of any justification or privilege, and (5) damages resulting from the breach. *Johnson Enters. of Jacksonville, Inc.*, 162 F.3d at 1321; *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).

Bryant argues that he had a privilege to interfere with Murrin's and Davey's employment agreements because the contracts provided for at-will employment. Privilege is an affirmative defense to a claim for tortious interference. *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami*, Inc., 629 So. 2d 252, 256 (Fla. 3d DCA 1993). As a result, the Court finds that consideration of Bryant's arguments at this time would be premature. *Id.*

Bryant and ServisFirst more persuasively argue that Centennial fails to adequately plead the third element of the tortious interference claim: that the relevant contracts were breached, and that the breaches were intentionally procured by Defendants. *See Johnson v. Elizabeth Wellborn, P.A.*, 418 F. App'x 809, 815-16 (11th Cir. 2011) (affirming dismissal where the complaint failed to allege that the contract was breached).

With respect to the claim against ServisFirst, Centennial alleges: "At ServisFirst's direction, the Departed Officers are violating the Non-Compete Provisions." Doc. 53 at ¶ 98; *see also id.* at ¶ 92. This allegation is impermissibly vague. The Amended Complaint defines "Departed Officers" to include Murrin, Davey, as well as Jonathan Zunz, a lower level former Centennial employee. *Id.* at ¶ 13. The "Non-Compete Provisions" are defined as "a set of confidentiality, non-competition, and non-solicitation provisions." *Id.* ¶ 7e. Centennial alleges that Murrin's and Davey's employment agreements include "some" of the "Non-Compete Provisions." *Id.* at ¶ 28. Even reading these allegations together, it is not clear which "Departed

4

Officers" are violating which "Non-Compete" provisions, let alone how ServisFirst intentionally procured those violations.

The claim against Bryant suffers from similar deficiencies. Centennial alleges that "Murrin and Davey each executed their Employment Agreement, both of which are among the Breached Contracts" and that "Murrin and Davey are currently responding to the instructions of their new employer, ServisFirst, under Bryant's continued leadership . . . who has taken every step possible to entice this form of conduct." *Id.* at ¶¶ 111-12. The claim does not indicate which provisions of the "Breached Contracts" were breached, which "conduct" establishes the breach, or how Bryant intentionally procured the breach. *See id.* at ¶¶ 109-14.

In response to the Motions to Dismiss, Centennial points to several facts from the background allegations that it contends lend factual support to the claims. Doc. 80 at 15, Doc. 81 at 8-9. Neither this Court nor the defendants have an obligation to mine 26 pages and 91 paragraphs in order to locate the allegations that Centennial believes are relevant to its claims. Given the length and scope of the background allegations, Centennial's "failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324. The burden on this Court and the Defendants is only increased with each successive count, because Centennial improperly incorporates all allegations from all preceding counts. *Id.*

If Centennial re-pleads these claims, it shall allege or incorporate specific facts – not labels or conclusory allegations – within each count supporting each element of a tortious-interference claim. Among other elements, Centennial shall identify which specific contractual provisions are allegedly breached, facts relating to the breach, and facts that would permit an inference that Bryant or ServisFirst intentionally procured the breach. To the extent that Centennial claims that

5

Bryant or ServisFirst interfered with more than one contract under distinct circumstances, Centennial shall plead a separate count for each contract at issue. Fed. R. Civ. P. 10(b).

### Tortious Interference with Prospective Business Advantage

In Counts II and IV, Centennial alleges that ServisFirst and Bryant have "interfer[ed] with the relations of Centennial to Customers, Employees, and the public at large." Doc. 53 at ¶¶ 105, 121. The elements of a claim for tortious interference with a business relationship are: (1) the existence of a business relationship, (2) the defendant's knowledge of the relationship, (3) the defendant's intentional and unjustified interference with the relationship, and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). In contrast to a claim for tortious interference with a contract, a business relationship "need not be evidenced by an enforceable contract." *Id.*; 32 Fla. Jur. 2d Interference § 6. "However, the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Ethan Allen, Inc.*, 647 So. 2d at 814 (internal quotation marks omitted). In particular, it must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* at 815.

ServisFirst argues that any interference was privileged because ServisFirst's activities constituted lawful competition. *Se. Integrated Med., P.L. v. N. Fla. Women's Physicians, P.A.*, 50 So. 3d 21, 24 (Fla. 1st DCA 2010). As noted, privilege is an affirmative defense not properly considered at this juncture. *Id.*

Bryant argues that no protected business relationship exists between a company and the "community at large" or unspecified customers. *Ethan Allen, Inc.*, 647 So. 2d at 815; *Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 526-27 (Fla. 1st DCA 1997); *Bortell v. White Mountains Ins.*

*Grp., Ltd.*, 2 So. 3d 1041, 1048-49 (Fla. 4th DCA 2009); *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6-14-CV-2257, 2015 WL 304048, at *8 (M.D. Fla. Jan. 21, 2015). Centennial responds that it has sufficiently identified the "Customers," but the Amended Complaint not only broadly defines "Customers" as "banking customers," it improperly alleges relationships with the "public at large," distinguishing the instant case from Centennial's cited authority. Doc. 53 at ¶ 7f; *e.g.*, *E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc.*, No. 8:10-CV-1870, 2011 WL 4343790, at *10 (M.D. Fla. Aug. 10, 2011). If Centennial re-pleads these claims, it shall clarify the relationships with which Defendants allegedly interfered and the parties' "actual and identifiable understanding or agreement." *Ethan Allen, Inc.*, 647 So. 2d at 815.

### Breach of Fiduciary Duty

In Count V, Centennial alleges that Bryant breached his fiduciary duty to Centennial. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). In the employment context, Florida courts hold that:

> an employee does not violate his duty of loyalty when he merely organizes a corporation during his employment to carry on a rival business after the expiration of his employment. However, that employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment.

*Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981); *accord New World Fashions, Inc. v. Lieberman*, 429 So. 2d 1276, 1277 (Fla. 1st DCA 1983); *Connelly v. Special Rd. & Bridge Dist. No. 5*, 126 So. 794, 798 (1930).

The Amended Complaint alleges that Bryant "concealed his alternative plans," "actively undermined the objectives of both Bay Cities and Centennial," "carefully plann[ed] relocation for himself and his immediate executive teammates," and "continued to shirk his responsibilities to

7

Centennial." Doc. 53 at ¶¶ 126, 128-29. In sum, Centennial alleges that Bryant was planning to compete with Centennial, which does not state a plausible claim for breach of fiduciary duty. *Fish*, 401 So. 2d at 845.

In response, Centennial again identifies other facts contained in the general background allegations of the Amended Complaint. Doc. 80 at 8. A number of those allegations similarly relate to Bryant's plans (Doc. 53 at ¶¶ 33-34, 76-77) or consist of conclusory allegations of tortious interference, active competition, and "Actionable Misconduct" (¶¶ 66, 80-81). In any event, Centennial's shotgun pleading prevents meaningful review of this claim. If Centennial attempts to re-plead the claim for breach of fiduciary duty, it shall allege or incorporate specific supporting facts.

### Conversion

In Count VI, Centennial brings a claim for conversion against both ServisFirst and Bryant. Doc. 53 at ¶ 132. "In Florida, a conversion is an unauthorized act which deprives another of his identifiable property permanently or for an indefinite time." *Rosenthal Toyota, Inc. v. Thorpe*, 824 F.2d 897, 902 (11th Cir. 1987). "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

Bryant argues that the Amended Complaint fails to allege what property was converted. In addition, Bryant maintains that the Amended Complaint alleges only possession, without any intent to permanently deprive Centennial of property. In particular, the Amended Complaint alleges that "ServisFirst continues to ask what Centennial wants done with some of the Confidential Information." Doc. 53 at ¶ 135. ServisFirst raises similar arguments.

The Court agrees that the Amended Complaint fails to plead identifiable property, which hinders any evaluation of the remaining elements of this claim. Centennial alleges that the defendants converted its "Confidential Information," which the Amended Complaint defines as "confidential information and related resources." *Id.* at ¶¶ 7f, 132. Centennial now points to various allegations regarding customer contacts, lists of deposits and loans, and "information in the intellects of the Departed Officers," but those allegations are not included or specifically referenced in Count VI. Doc. 81 at 16; Doc. 53 at ¶¶ 48, 62, 73. To the extent that Centennial re-pleads a conversion claim, it shall split the claims against Bryant and ServisFirst into separate counts, or otherwise make clear the basis for each Defendant's liability.

### Fraudulent Inducement

In Count VII, Centennial asserts a claim for fraudulent inducement against Bryant. Under Florida law, a claim for fraudulent inducement requires: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (internal quotation marks omitted). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Centennial "must state with particularity the circumstances constituting fraud or mistake." The Eleventh Circuit holds that:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007) (internal quotation marks omitted).

9

Count VII is not pleaded with the requisite particularity. Centennial generally alleges that Bryant made "a series of continuous representations to Centennial" and made "knowing misstatements of his intentions to Centennial (the 'False Representations')." Doc. 53 at ¶ 139. In addition to a claim of misrepresentation, Centennial appears to assert a fraudulent-omission claim, alleging that Bryant was "fraudulent in concealing the False Representations from Centennial." *Id.* at ¶ 140. Count VII fails to allege "precisely what statements were made," or the time and place of the statements. *Tello*, 494 F.3d at 972.

Centennial points to five paragraphs within the background allegations, which it contends meet the Rule 9(b) requirements. Doc. 80 at 5. The Court expresses no opinion on the sufficiency of these allegations. Centennial will be required to re-plead this claim, to include or incorporate specific, relevant allegations within the fraud claim. To the extent that Centennial raises both a fraudulent-misrepresentation and a fraudulent-omission claim, Centennial shall plead each claim in a separate count.

In the Motion to Dismiss, Bryant also argues that the fraud claim is barred by terms contained in the Centennial Employment Agreement as well as Centennial's merger agreement with Bay Cities. Bryant may re-assert this argument once the fraud claim has been properly delineated.

### Breach of Contract

In Count VIII, Centennial asserts a claim for breach of contract against Bryant. "The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999).

Centennial alleges that "Bryant has breached the Bryant Contracts by his conduct in the Middle District of Florida – specifically Bryant has breached the Non-Compete Provisions of the

Bryant Employment Agreement by directly or indirectly participating in the Actionable Misconduct." Doc. 53 at ¶ 148. Because the Amended Complaint defines the "Bryant Contracts" to include both the Bay Cities Non-Compete Agreement and the Centennial Employment Agreement, it appears that Centennial is alleging a breach of the non-compete provisions in both agreements. *Id*. at ¶ 30.

Bryant argues that the Bay Cities Non-Compete Agreement is not enforceable for two reasons. First, Bryant maintains that the Centennial Employment Agreement specifically provides that the "[Bay Cities] Employment Agreement will terminate and be of no further force or effect" following Centennial's acquisition of Bay Cities. Doc. 53-6 at ¶ 1. As Centennial points out, however, the Centennial Employment Agreement specifically defines the "[Bay Cities] Employment Agreement" as an agreement executed on June 26, 2013. *Id.* at 1. By contrast, the exhibits to the Amended Complaint indicate that the Bay Cities Non-Compete Agreement was executed as a separate document, dated January 1, 2003. Doc. 53 at ¶ 10; Doc. 53-1. Bryant offers no other argument on this point.

Bryant alternatively argues that the Bay Cities Non-Compete Agreement is unenforceable pursuant to an integration clause in the Centennial Employment Agreement, which provides: "This Agreement sets forth the entire understanding between the parties and the subject matter hereof and may not be modified, changed or amended, except by a writing signed by both parties." Doc. 53-6 at ¶ 14. Essentially, Bryant appears to argue that the Centennial Employment Agreement constitutes a novation to the Bay Cities Non-Compete Agreement. *See Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008) ("A novation is a mutual agreement between the parties for the discharge of a valid existing obligation by the substitution of a new valid obligation."); *Audiology Distribution, LLC v. Simmons*, No. 8:12-CV-02427, 2014 WL 7672536,

at *13-14 (M.D. Fla. May 27, 2014) (discussing the weight to be afforded to a merger/integration clause in evaluating a claim of novation). Novation is an affirmative defense. *Sans Souci v. Div. of Fla. Land Sales & Condominiums, Dep't of Bus. Regulation*, 421 So. 2d 623, 631 (Fla. 1st DCA 1982). While a court may grant a Rule 12(b)(6) motion on an affirmative defense if it "clearly appears on the face of the complaint," *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), Bryant does not address the elements necessary to show a novation. *See Audiology Distribution, LLC*, 2014 WL 7672536, at *13.

Nonetheless, Bryant correctly argues that the breach-of-contract claim is impermissibly vague. Centennial alleges that Bryant breached "the Non-Compete Provisions" of the Bay Cities Non-Compete Agreement and the Centennial Employment Agreement "by directly or indirectly participating in the Actionable Misconduct." Doc. 53 at ¶ 146. "Non-Compete Provisions" are broadly defined as "a set of confidentiality, non-competition, and non-solicitation provisions" that are "set forth in a series of contracts." *Id.* at ¶ 7e. "Actionable Misconduct" is circularly defined as "the pattern of conduct being engaged in at this time (as more fully described below)." *Id.*

If Centennial attempts to re-plead this claim, Centennial will be required to plead separate counts for the alleged breach of the Bay Cities Non-Compete Agreement and the alleged breach of the Centennial Employment Agreement. If Centennial alleges that more than one provision in each agreement is breached, Centennial shall include each claim in a separate count to the extent the claims are "founded on a separate transaction or occurrence." Fed. R. Civ. P. 10(b). Within each count, Centennial shall identify which provision(s) of the contract were breached and in what manner, without reliance on shorthand terms such as "Actionable Misconduct" and "Non-Compete Provisions."

**Breach of the Duty of Good Faith and Fair Dealing**

In Count IX, Centennial asserts a claim against Bryant for breach of the duty of good faith and fair dealing. Doc. 53 at ¶ 151. In Florida, every contract contains an implied covenant of good faith and fair dealing, which requires the parties to "follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005); *Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1183-84 (Fla. 2d DCA 2000). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc.*, 420 F.3d at 1151. The implied covenant "is usually raised when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards." *Publix Super Mkts., Inc. v. Wilder Corp. of Del.*, 876 So. 2d 652, 654 (Fla. 2d DCA 2004).

Centennial alleges that Bryant had a duty to advise Bay Cities and Centennial, before the acquisition was completed, that he planned to leave Centennial shortly after the acquisition. Doc. 53 at ¶ 157. Bryant maintains that a failure to disclose cannot be the basis for a breach of the implied duty of good faith and fair dealing without a corresponding contract term requiring disclosure.

Centennial argues that Bryant is misconstruing the claim. Doc. 80 at 19. Centennial points out that the Amended Complaint alleges the existence of "implied contract provisions" prohibiting "Bryant from engaging in conduct that frustrated or injured Centennial's rights." Doc. 53 at ¶ 156. The Amended Complaint does not identify the "implied contract provisions" or "conduct" in any more detail. More problematic, Centennial provides no authority for the proposition that a duty of good faith and fair dealing can attach to a term that is itself implied. *See Meruelo v. Mark Andrew*

13

*of Palm Beaches, Ltd.*, 12 So. 3d 247, 251 (Fla. 4th DCA 2009) (holding that a claim for breach of the implied duty of good faith and fair dealing cannot be premised on an implied term).

The Amended Complaint also alleges that "Bryant breached the provisions of the Bryant Contracts, specifically not honoring his responsibilities to adhere to the Non-Compete Provisions and to further ensure the Confidential Information entrusted unto him maintained its confidential nature." Doc. 53 at ¶ 154. Further, "[i]n undertaking the Actionable Misconduct herein alleged, Bryant acted to deprive Centennial of the benefits of the Bryant Contracts and thereby breached his implied covenant of good faith and fair dealing." *Id*. at ¶ 158. Again, Centennial's resort to conclusory legal allegations and labels such as "Actionable Misconduct" and violation of "Non-Compete Provisions" does not satisfy Rule 8's notice-pleading standards. And even assuming that Centennial had adequately pleaded the existence of an express contract provision, it is not clear in what manner Bryant breached his implied duty of good faith with respect to that provision. For instance, Centennial does not appear to allege that Bryant inappropriately exercised contractually-retained discretion. *Publix Super Mkts., Inc.*, 876 So. 2d at 654.

**Specific Performance**

In Count X, Centennial brings a claim against Bryant for specific performance of the "Non-Compete Provisions." Doc. 53 at ¶ 160. Bryant maintains that specific performance is an equitable remedy which fails in the absence of a well-pleaded breach of contract claim. Doc. 73 at 22 n.9. Centennial does not contest this point. Centennial may re-assert this claim in the Second Amended Complaint, to the extent it asserts a breach of contract claim.

**Declaratory Relief**

In Count XI, Centennial requests a declaratory judgment against Bryant and ServisFirst pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment

Act permits a court, in its discretion, to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In essence, the Declaratory Judgment Act "'permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty.'" *Eisenberg v. Standard Ins. Co.*, No. 09-80199-CIV, 2009 WL 1809994, at *2 (S.D. Fla. June 25, 2009) (quoting 10B C. Wright & A. Miller, *Federal Practice & Procedure*, Civil 3d § 2751 (2004)).

> According to the Amended Complaint:
>
> Centennial seeks declaratory relief that the Actionable Misconduct by the Defendants caused the Departed Officers to breach their contractual relations to Centennial, to solicit Customers, and to solicit Employees, all in a manner prohibited under the Breached Contracts, and that all of the foregoing is tortious and actionable by Centennial as against the Defendants.

Doc. 53 at ¶ 168. Because Centennial requests a declaration that a contractual breach or a tort occurred, this claim is duplicative of the other claims pleaded in the Amended Complaint. Absent a more specific request for a declaration regarding Centennial's rights and legal relations, Centennial states no actionable declaratory-judgment claim. *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012) ("Plaintiffs are not seeking a declaration of their 'rights' under the contracts; they are seeking a declaration that Defendants' actions were fraudulent, unconscionable and inequitable"); *Eisenberg*, 2009 WL 1809994, at *3 (holding that a request for a declaratory judgment with respect to possible contractual breaches is not within the ambit of 28 U.S.C. § 2201); *accord Advanced Fluids Sols., LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, No. 6:11-CV-16, 2011 WL 3627413, at *4 (M.D. Fla. July 26, 2011).

### Injunctive Relief

In the final claim, Count XII, Centennial includes a request for injunctive relief against Bryant and ServisFirst. Doc. 53 at ¶ 174. The allegations primarily consist of legal argument and

case law, in contravention of Rule 8's preference for a "short and plain statement of the claim." *Id.* at ¶¶ 176-88; *Moore v. McCalla Raymer, LLC*, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013). Further, "injunctive relief" is a remedy, not an independent claim for relief. *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015).

To the extent that Centennial is attempting to plead an underlying violation of Florida's Uniform Trade Secrets Act, Fla. Stat. §§ 688.01, *et seq.*, which is mentioned within Count XII, Centennial shall plead the elements of that claim in a separate count and title the count accordingly. *See Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (listing the elements of a claim under Florida's Uniform Trade Secret Act). Centennial is also required, under Local Rule 1.06(b), to include any prayer for injunctive relief in the title of its pleading.

### IV. Conclusion

Based on the foregoing, it is hereby **ORDERED** that:

(1) Defendant ServisFirst Bank Inc.'s Motion to Dismiss (Doc. 72) and Defendant Gregory Bryant's Motion to Dismiss (Doc. 73) are **GRANTED**, to the extent that the Amended Complaint (Doc. 53) is dismissed without prejudice and with leave to amend.

(2) Plaintiff Centennial Bank shall file a Second Amended Complaint **on or before October 28, 2016**. The Second Amended Complaint shall correct the deficiencies identified in this Order. Failure to file a Second Amended Complaint within the time provided and in compliance with this Order may result in the dismissal of this action without further notice.

**DONE AND ORDERED** in Tampa, Florida on October 14, 2016.

Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record