UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTENNIAL BANK,

    Plaintiff,

v.                                                     Case No: 8:16-cv-88-T-36JSS

SERVISFIRST BANK INC., GREGORY
W. BRYANT, GWYNN DAVEY,
PATRICK MURRIN and JONATHAN
ZUNZ,

    Defendants.
_____/

## **ORDER**

THIS MATTER is before the Court on Centennial Bank's Motion to Compel Production of Responsive Documents Over Objection of ServisFirst Bank ("Centennial's Motion") (Dkt. 374), with ServisFirst Bank's response in opposition (Dkt. 376); and ServisFirst Bank's Motion to Compel Production of Documents Responsive to ServisFirst's First Set of Requests for Production ("ServisFirst's Motion") (Dkt. 383), with Centennial Bank's response in opposition (Dkt. 387). For the reasons set forth below, Centennial's Motion is denied, and ServisFirst's Motion is also denied.

## **BACKGROUND**

Defendants Gregory Bryant, Patrick Murrin, Gwynn Davey and Jonathan Zunz were all officers at Bay Cities Bank ("Bay Cities"). (Dkt. 199 ¶ 10.) In 2015, Plaintiff, Centennial Bank ("Centennial") acquired Bay Cities. (Dkt. 199 ¶ 10.) However, shortly after the acquisition, the individual defendants were hired by the corporate defendant, ServisFirst Bank ("ServisFirst"). (Dkt. 199 ¶ 10.) In the Second Amended Complaint, Centennial alleges numerous "statutory, contractual, and common law causes of action tied to a pattern of wrongful conduct by the

[d]efendants to deprive Centennial of the benefit of the bargain in acquiring Bay Cities and hiring" the individual defendants. (Dkt. 199 ¶ 10.) In the motions at issue, Centennial and ServisFirst both move to compel discovery.

## APPLICABLE STANDARDS

The court has broad discretion in managing pretrial discovery matters and in deciding to compel. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011); *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002). Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the case's needs. Fed. R. Civ. P. 26(b)(1). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC*, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016).

## ANALYSIS

### A. Centennial's Motion

At issue in this case—and particularly in this motion—are several non-competition and non-solicitation agreements, which prevented Centennial employees from competing with Centennial for a year after leaving employment. (Dkts. 374 at 6; 376 at 2.) In this case, the one-year restriction would have expired on December 31, 2016. (Dkts. 374 at 6; 376 at 2.) As such, ServisFirst believes its employees are now free to compete with Centennial and ServisFirst has limited production of discovery after December 31, 2016. (Dkt. 376 at 2.) Centennial, however, argues that the employment agreements contained a valid tolling provision and, because the former employees have continuously violated the restrictive provisions, the agreements should be equitably tolled and discovery during the time period after December 31, 2016 is relevant. (Dkt. 374 at 6–7.)

While Gregory Bryant's agreement with Bay Cities did have a tolling provision (Dkt. 199-1 at 21), the non-compete agreements with Centennial do not have such a provision. (Dkt. 199-2 at 70–92.) Previously, in considering whether preliminary injunctive relief was warranted, the Court noted that pursuant to the unambiguous contract language, Gregory Bryant's agreement with Bay Cities appeared to be superseded by his agreement with Centennial. (Dkts. 131 at 13; Dkt. 173.) Nonetheless, Centennial argues that the agreements should be "equitably tolled" because they have been continually breached. (Dkt. 374 at 6.) However, the Court agrees with ServisFirst that the cases cited by Centennial all apply equitable tolling to protect a party that has "already won a decision on the merits or a preliminary injunction" (Dkt. 376 at 6)—not to provide a party with discovery beyond the conclusion of the agreement.

For example, in *Proudfoot Consulting Co. v. Gordon*, the plaintiff alleged breach of several restrictive covenants, which restricted the defendant from competition for six months after his employment ended. 576 F.3d 1223, 1229–30 (11th Cir. 2009). After a bench trial, the district court ruled in the plaintiff's favor and enjoined the defendant from competing for an additional six months after judgment. *Id.* at 1230. The injunction was based on the district court's finding that the defendant's breach of the agreements tolled the restrictive period, which the Eleventh Circuit affirmed on appeal. *Id.* at 1232.

Similarly, in *Capelouto v. Orkin Exterminating Co. of Fla., Inc.*, the plaintiff sued seeking a declaratory judgment as to his rights under a two-year non-competition agreement. 183 So. 2d 532, 533 (Fla. 1966). The trial court found the agreement to be reasonable and enjoined the plaintiff from competition for more than two years after the decision. *Id.* at 534. Noting that the plaintiff "participated in the prohibited activities during the course of the litigation," the Florida

Supreme Court affirmed the injunction to ensure that "the provisions of the contract . . . could be effectuated." *Id.* at 534–35.

In *Ocean Beauty Seafoods, LLC v. Pacific Seafood Group Acquisition Co.*, the Ninth Circuit addressed a district court's decision to deny a preliminary injunction based on a non-compete agreement. 648 F. App'x 709, 710 (9th Cir. 2016). The Ninth Circuit reversed, finding that the plaintiff was entitled to a preliminary injunction. *Id.* Noting that the one-year period in the agreement had expired, the Ninth Circuit found an "equitable extension" was warranted and remanded with instructions for the district court to enter a preliminary injunction "for a period of one year from the date of entry." *Id.* at 712.

The procedural posture of this case is notably different. The Court has denied Centennial's motion for preliminary injunction (Dkts. 131, 173) and there has been no determination on the merits that the employment agreements have been breached. If Centennial prevails on the merits of its claims, it may obtain either damages for the alleged breaches or equitable relief to effectuate the agreements post-judgment. *See Vela v. Kendall*, 905 So. 2d 1033, 1035 (Fla. 5th DCA 2005) (reversing an injunction after judgment because the plaintiff "was treated with complete fairness by virtue of its recovery of damages for the violation of the restrictive covenant during the two-year period of its viability"). In either case, documents showing activities after the expiration of the agreements, and before entry of an injunction, are not relevant to the determination of the issues in the Second Amended Complaint.

Further, the Court agrees with ServisFirst that Centennial's requests, which essentially encompass all communications with customers for an unlimited period of time, are overly broad. *See Affiliated Foods Midwest Coop., Inc. v. SuperValu Inc.*, No. 8:16-cv-465, 2018 WL 6177074, at *3 (D. Neb. Nov. 27, 2018) ("Generally, a discovery request without any temporal or other

reasonable limitation is objectionable on its face as overly broad."). To the extent the documents after the expiration of the employment agreements have any relevance, which has not been shown to exist at this time, such expansive discovery is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Therefore, Centennial's Motion is denied.

### B. ServisFirst's Motion

In this motion, ServisFirst seeks documents related to Centennial's claims for damages. (Dkt. 383 at 1–2.)

#### 1. Requests for Production Numbers 4, 5, 6, 11, and 21

In these requests, ServisFirst requests "documentation relating to both Centennial and Bay Cities Bank's financial situation on both a quarterly and annual basis for a five-year period." (Dkt. 387 at 4.) Centennial argues that the burden of these discovery requests is not proportional to the needs of the case in light of the extensive financial discovery already provided. (Dkt. 387 at 4–5.) Additionally, Centennial argues that the documents sought in these requests are publicly available and accessible to ServisFirst. (Dkt. 387 at 5–6.)

ServisFirst cites case law stating the discovery may not be resisted solely because the documents are publicly accessible. *See, e.g.*, *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 2:10–cv–753–FtM–36SPC, 2011 WL 3841557, at *4 (M.D. Fla. Aug. 29, 2011). However, in considering the needs of the case, Rule 26 requires the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In considering these factors and the extensive financial discovery provided already, the Court agrees with Centennial (Dkt. 387 at 5–6) that Centennial

should not be required to bear the burden of collecting and disclosing further financial information that is easily accessible to ServisFirst. ServisFirst's Motion is denied as to requests for production numbers 4, 5, 6, 11, and 21.

### 2. Requests for Production Number 19

In this request, ServisFirst seeks documents showing the financial compensation that Home BancShares, Inc. Chairman John Allison[1] and Centennial CEO Tracy M. French were eligible for and received as a result of the acquisition of Bay Cities Bank. (Dkt. 383 at 6.) ServisFirst argues that this information is relevant because "a particularly high level of compensation for the Chairman and CEO in connection with the Acquisition would support an argument that Centennial purposefully paid an inflated purchase price for Bay Cities in order to financially benefit Centennial's leadership, and that any applicable damages should be reduced accordingly." (Dkt. 383 at 7.)

The Court finds that ServisFirst has not sufficiently established how this information is relevant to its defenses. Additionally, although it might have some tenuous relevance to damages, considering "the parties' relative access to relevant information" and "the importance of the discovery in resolving the issues," the financial compensation of these employees is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b). As such, ServisFirst's Motion is denied as to request for production number 19.

### 3. Requests for Production Number 20

In this request, ServisFirst seeks employment agreements between "Centennial and individuals employed at a bank or financial institution acquired by Centennial." (Dkt. 383 at 8.) ServisFirst argues these documents are relevant for two reasons. First, ServisFirst argues that it

---

[1] Home BancShares, Inc. owns Centennial. (Dkt. 383 at 7.)

"is entitled to explore the variety of contractual relationships in which Centennial is engaged and to determine whether, in those relationships, Centennial has evinced an understanding of the difference between at-will contracts and contracts for a term of years." (Dkt. 383 at 9.) However, ServisFirst has failed to establish how Centennial's understanding of contract law is at all relevant to a claim or defense at issue in this case. *See* Fed. R. Civ. P. 26(b).

Second, ServisFirst argues that the employment agreements are relevant to its affirmative defense, which alleges that "Centennial has employed individuals who were subject to non-compete and non-solicitation agreements with other banks." (Dkt. 383 at 9–10.) However, the Court agrees with Centennial that the employment agreements of employees at banks *acquired by* Centennial do not tend to show that Centennial knowingly hired employees subject to non-compete and non-solicitation agreements with other banks. Additionally, even assuming Centennial did hire employees subject to a non-compete agreement with another bank, it is unclear how that would be reflected in the employment agreement with Centennial. Therefore, ServisFirst's Motion is denied as to request for production number 20.

### 4. Requests for Production Number 24

In this request, ServisFirst seeks pricing models used by Centennial to evaluate the acquisition of Bay Cities. (Dkt. 383 at 11.) Centennial argues this information is "highly confidential and a protected trade secret" and has produced equivalent information regarding the projected value of the Bay Cities acquisition. (Dkt. 387 at 9–10.) Nonetheless, "in a spirit of good-faith and cooperation, Centennial anticipates further analysis" of the documents which have not been produced. As such, ServisFirst's Motion is denied without prejudice for the parties to continue conferring as to request for production number 24.

Accordingly, it is **ORDERED:**

1. Centennial Bank's Motion to Compel Production of Response Documents Over Objection of ServisFirst Bank (Dkt. 374) is **DENIED**; and

2. ServisFirst Bank's Motion to Compel Production of Documents Responsive to ServisFirst's First Set of Requests for Production (Dkt. 383) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida, on May 9, 2019.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record