**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CENTENNIAL BANK,
an Arkansas state-chartered bank,

      Plaintiff,

vs.                                  Case No. 8:16-cv-00088-CEH-JSS

SERVISFIRST BANK INC., an Alabama
state chartered bank, GREGORY W. BRYANT,
an individual, PATRICK MURRIN, an
individual, GWYNN DAVEY, an individual,
and JONATHAN ZUNZ, an individual,

      Defendants.

_____/

## CENTENNIAL BANK'S OBJECTIONS TO ORDER DENYING COMPEL MOTION

Pursuant to Federal Rule of Civil Procedure 72(a), 28 U.S.C. §636(b)(1)(A), Local Rule 6.01(a), and other applicable law, Centennial Bank, an Arkansas state-chartered bank ("Centennial") objects on the following grounds to the entry of an order (the "Order Denying Compel Motion") [Doc. 395] entered by the Honorable Julie S. Sneed, United States Magistrate Judge, on May 9, 2019, upon consideration of "Centennial Bank's Motion to Compel Production of Responsive Documents Over Objection of ServisFirst Bank and Incorporated Memorandum of Law" (the "Compel Motion") [Doc. 374], filed by Centennial on December 19, 2018, and upon consideration of "ServisFirst Bank's Response in Opposition to Centennial Bank's Motion to Compel" (the "Compel Response") [Doc. 376], filed by ServisFirst Bank Inc. ("ServisFirst") on January 2, 2019, all relating to ServisFirst's arbitrary cutoff of discovery compliance at December 31, 2016 (the "Arbitrary Cutoff") in responding to "Centennial Bank's Second Request for Production to ServisFirst Bank Inc." (the "Production Request"), served on October 11, 2017:

# I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL OVERVIEW

1.      In this cause, Centennial has asserted that Centennial purchased Bay Cities Bank ("Bay Cities") for approximately $101,000,000 on or as of October 1, 2015, at which time the senior management of Bay Cities consisted of Gregory W. Bryant ("Bryant"), Patrick Murrin ("Murrin"), Gwynn Davey ("Davey"), And Jonathan Zunz ("Zunz"), among others, with the individual named defendants (collectively, the "Departed Officers") all departing Centennial on or as of December 31, 2015, to take up similar positions at a fledgling presence of ServisFirst in Tampa Bay.  And while nothing about these basic facts would be unusual in themselves in any way, the circumstances of the Departed Officers' departure from Centennial twelve (12) weeks after Centennial's acquisition of Bay Cities has given rise to forty-two (42) distinct causes of action by Centennial against ServisFirst and the Departed Officers (collectively, the "Defendants"), all of which this Court has set for jury trial on its December 2019 term.

2.      The pleadings under which Centennial and the Defendants (collectively, the "Parties") are traveling to trial are as follows:

a.   "Second Amended Complaint" (the "Operative Complaint") [Doc. 199], filed by Centennial on November 14, 2016;

b.   "Defendant Jonathan Zunz's Answer and Affirmative Defenses to Plaintiffs' Amended Complaint" (the "Zunz Answer") [Doc. 261], filed by Zunz on September 29, 2017;

c.   "Defendant Gregory W. Bryant's Answer and Affirmative Defenses to Plaintiff's Amended Complaint and Counterclaim" (the "Bryant Answer") [Doc. 263], filed by Bryant on September 29, 2017;

d.   "ServisFirst Bank's Answer to the Second Amended Complaint" (the "ServisFirst Answer") [Doc. 264], filed by ServisFirst on September 29, 2017;

e.   "Defendant Patrick Murrin's Answer to Plaintiff's Second Amended Complaint" (the "Murrin Answer") [Doc. 265], filed by Murrin on September 29, 2017;

f. "Defendant Gwynn Davey's Answer to Plaintiff's Second Amended Complaint" (the "Davey Answer") [Doc. 266], filed by Davey on September 29, 2017;

g. "Centennial Bank's Answer and Affirmative Defenses to Bryan Counterclaim" (the "Centennial's Counterclaim Answer") [Doc. 391], filed by Centennial on April 30, 2019; and

h. "Answer of John W. Allison" (the "Allison Counterclaim Answer") [Doc. 392], filed by Allison on April 30, 2019.

The Operative Complaint, Zunz Answer, Bryant Answer, ServisFirst Answer, Murrin Answer, Davey Answer, Centennial's Counterclaim Answer, and Allison Counterclaim Answer are collectively referred to herein as the "Operative Pleadings."

3. In the Operative Pleadings, Centennial asserts certain claims based upon the violation by Bryant, Murrin, and Davey of non-compete agreements and related contracts that obligated them to refrain from competition for a one-year term within multiple service areas, and other similar rights that are not geographically limited; however, numerous other causes of action exist, and different damage models are applicable as a result. Moreover, liabilities of the Defendants may differ, although that is a matter of dispute. Finally, the well-established doctrine of "equitable tolling" applies in the current context because Centennial has never gotten the benefit of a one-year non-compete agreement, and the Defendants continue to exploit the benefits derived from sacking the Bay Cities footprint only a matter of weeks after Centennial made the Departed Officers quite wealthy.

4. The expert witnesses disclosed by Centennial to the Defendants include Dr. Steven S. Oscher ("Oscher") and Theodore "Ted" Gammill ("Gammill"), both having testimony that is necessary and appropriate to ascertain business damages sustained by Centennial under different damage theories. Conversely, Mark E. Gauthier ("Gauthier") was designated by the Defendants on or as of May 10, 2019, as a rebuttal damage expert witness.

5.      Discovery in this cause has been delayed in certain respects for different reasons beyond the control of Centennial; however, the expert depositions of Oscher and Gammill occurred on April 18, 2019 and April 15, 2019.  The deposition of Gauthier, relating to his report that was recently disclosed, has not been scheduled.  However, financial discovery and expert reports to date reveal three (3) contrasting or conflicting damage analyses and conclusions, in their most succinct and basic essence, as follows:

a.  **<u>Gammill Analysis and Conclusion</u>:**  In determining Centennial's business damages, Gammill makes the assumption that Centennial would never have purchased Bay Cities if it had been accurately disclosed that Bryant had never intended to stay with Centennial post-acquisition, and intended instead to take his team including all of the Departed Officers as soon as possible after receiving his "Golden Parachute" payment at closing on the acquisition and moving to the next available bank that would suit his preference.  Gammill then values Bay Cities as a financial institution, both as presented at market during 2015 and assuming that Bryant had fully disclosed that the Departed Officers would not only be leaving weeks after acquisition but would also directly compete in the same market area.  To reach this conclusion, Gammill has assumed that Centennial will establish that Bryant never intended to stay with Centennial post-acquisition, and instead intended to relocate with his band, and that Centennial by contrast would never have done the deal with proper disclosure.  Realizing that the transaction has completed, Gammill concludes that the delta between Bay Cities as presented to Centennial and Bay Cities with an imminently departing senior echelon of management is the measure of Centennial's damages.

b.  **<u>Oscher's Analysis and Conclusion</u>:** In determining Centennial's business damages, Oscher separates out the proposition that the Defendants were all part of a fraudulent inducement scheme that benefitted all of them by tricking Centennial into purchasing

Bay Cities based upon false representations that senior management would remain with Centennial post-acquisition, and instead predicates his damage model upon the conduct of the Departed Officers after they forwarded Confidential Information from their Centennial computer systems, and then breached ethics codes, non-compete agreements, and multiple statutes while relocating to ServisFirst. By comparing Bryant's financial projections to the actual performance of Centennial within the Bay Cities footprint following the Departed Officers' relocation to ServisFirst, and by also comparing Bay Cities' historic financial performance to the actual results achieved by Centennial, Oscher generates a lost profits damage model.

c. **Gauthier's Analysis and Conclusion:** In determining Centennial's business damages, Gauthier makes the assumption that the only damages that any of the Defendants owe to Centennial stem from the actual business directly clearly migrated from Centennial's Tampa Bay core, purchased at the price of $101,000,000, and then only for 365 days after the date of departure. The fact that Gauthier may assume on instructions from counsel that the law only holds tortfeasors and breaching parties liable for ill-gotten gains that they receive, rather than the business damages actually sustained by the non-breaching party, reflects a misunderstanding of the law that he has received from the counsel that retained him. But much more subjective and disingenuous is the proposition that actionable misconduct during a single year gives rise to damages that are automatically forgiven as a matter of law or disregarded when the year is up. Accordingly, not only is the Gauthier damage model smaller because the Defendants have largely failed to derive the full benefits of unfair competition that they expected to achieve, but also because damages are arbitrarily halted on the one-year anniversary of the Departed Officers' arrival at ServisFirst.

6.     The Production Request was served upon ServisFirst, on October 11, 2017, immediately after the Defendants had responded to the Operative Complaint.  ServisFirst's responses to the discovery in question have been "rolling," for approximately three (3) years, with the most recent document production being received on the day preceding of the filing of this motion, approximately 14,000 pages on the day prior to Bryant's scheduled deposition.

7.     Gammill, Oscher, and Gauthier (collectively, the "Expert Witnesses") may all have different professional opinions as to damages at trial; however, the actual financial performance of ServisFirst through the date of trial is highly relevant to any damage model.  And that is why the Production Request sought all financial data, particularly as it relates to clients falling within the contractual arrangements of Bryant, Murrin, and Davey, not only to establish liability but to verify and confirm damages and damage models.

## II.      SUMMARY OF OBJECTIONS

ServisFirst refused to produce any business documents generated after the Arbitrary Cutoff, even though properly requested in the Production Request, on the pretext that because some of the counts of the Operative Complaint involved a one-year non-compete provision, that somehow all documents relating to the actionable misconduct at issue generated after that date were somehow sacrosanct.  By adopting this position, the Magistrate Judge narrowed the scope of discovery on the entire case based on language applicable to only some counts.

In filing the Compel Motion, Centennial recognized that the clientele wrongfully taken by the Defendants in the first year following the Departed Officers' relocation to ServisFirst continue to do business with ServisFirst through business inertia, and the business relationships can grow incrementally.  Had there been any doubt about this fact when the Production Request was originally served, it is now more than clear that even relatively small business relationships migrating from Centennial/Bay Cities have become much larger as the United States economy has flourished.  Just like the damage caused by a personal injury or medical malpractice is unrelated to any applicable

statute of limitations, damages cannot be subject to a bright line that somehow forgives damages created in a year of unfair competition but experienced in the ensuing years.

In filing the Compel Response, ServisFirst impermissibly fused the concept of a one-year non-compete and the inapplicable concept of a one-year cap on damages. The Order Denying Compel Motion thus conflates the subject of damages with the issue of statute of limitations. Moreover, because only some of the forty-two (42) counts of the Operative Complaint deal with a one-year non-compete contractual arrangement, ServisFirst diverts attention from the reality that this is not simply a non-compete lawsuit. Moreover, ServisFirst further confused the analysis by arguing the merits of affirmative defenses and conflicting damage theories in connection with a discovery dispute. By urging this Court to make hard decisions on the merits, in a way that impedes legitimate access to discovery, ServisFirst postures this cause for significant difficulty as trial advances.

In entering the Order Denying Compel Motion, this Court did not consider the fact that the disputes as to equitable tolling, damage theories, and other substantive issues do not need to be adjudicated now, and cannot be adjudicated until proper discovery has been conducted. Even assuming that the conclusion of the Court as set forth in the Order Denying Compel Motion comported with controlling Florida law on point, nothing about such a conclusion would inoculate discovery pertaining to events occurring after the one-year anniversary of the improper relocation to ServisFirst.

### III.     <u>MEMORANDUM OF LAW</u>

**A.     <u>The Applicable Legal Standard</u>**

The Federal Rules of Civil Procedure provide for broad discovery of any non-privileged matter that is relevant to a party's claim or defense. Pursuant to Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The overall purpose of discovery is to "require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. See First Coast Energy, L.L.P. v. Mid-Continent Cas. Co., 286 F.R.D. 630, 632 (M.D. Fla. 2012); Oliver v. City of Orlando, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 21, 2007) (citing United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958)); see also Nationwide Mut. Fire Ins. Co. v. Kelt, Inc., 2015 WL 1470971, at *2 (M.D. Fla. Mar. 31, 2015); Fed. R. Civ. P. 26(b)(1) (Allowing a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevancy is determined based on the "tendency to make a fact more or less probably than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401. Proportionality requires counsel and the Court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the Court is guided by the non-exclusive list of factors in Federal Rule of Civil Procedure 26(b)(1). Graham & Co., LLC v. Liberty Mut. Fire Ins. Co., 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." Id. (quoting Witt v. GC Servs. Ltd. P'ship, 307 F.R.D. 554, 569 (D. Colo. 2014)).

When objecting to a discovery request, the "[p]arties are not permitted to assert … conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable." Martin v. Zale Delaware, Inc., 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008). Indeed, an objecting party "must explain its reasoning in a specific and particularized way" and "an objection that a discovery request is irrelevant … must include a specific explanation describing why." Id.at *1-2. Federal Rule of Civil Procedure 37 authorizes a motion to compel discovery when a party fails to

provide a response to requests for production under Rule 34. Fed. R. Civ. P. 37(a)(3)(B).

Under Federal Rule of Civil Procedure 37(a), a party may move to compel discovery if another party fails to properly respond. "[A]n evasive or incomplete disclosure, answer, or response" to a discovery request is "treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

**B.** **Legal Argument**

Preceding its responses to the individual requests contained within the Production Request, ServisFirst has incorporated into its "general objections" a severe limitation to its discovery compliance that it unilaterally seeks to impose on Centennial. Specifically, ServisFirst objected to the Production Request in its entirety, stating that: [ServisFirst] has limited its produced documents in time to documents existing on or before December 31, 2016. Defendants object to producing any documents that did not exist on or before December 31, 2016, except to the extent specified in response to specific requests.

The foregoing limitation that ServisFirst supplies to every specific Request that follows is undoubtedly based upon ServisFirst's erroneous contention that Gregory Bryant ("Bryant"), Patrick Murrin ("Murrin"), and Gwynn Davey ("Davey") are free to compete with Centennial in any geographical area, solicit Centennial's customers, and poach Centennial's employees, beginning on January 1, 2017, or one (1) year after Bryant, Murrin, and Davey (the "Restricted Officers"), left the employ of Centennial. For purposes of this motion, the relevant contracts imposing a one-year prohibition against competition with Centennial are collectively referred to as the "Employment Contracts." Notably, only some of the forty-two (42) counts of the Operative Complaint deal with a one-year non-compete contractual arrangement, even though ServisFirst wishes to divert attention from the reality that this is not simply a non-compete lawsuit.

In the face of allegations and record evidence that the Restricted Officers acted in open violation of Employment Contracts with Centennial, ServisFirst withholds relevant documents post-

dating the Arbitrary Cutoff on the pretext that the Restricted Officers were only precluded from competition for a one-year term. Not only does Centennial reject this contention for purposes of case management or disposition of the merits, but applicable Florida law is clear that the one year term at issue has not yet begun to run because the Restricted Officers have not yet begun to abide by its terms. Because the breach of the Employment Contracts has been ongoing, the concept of "equitable tolling" applies such that the Restricted Officers are not rewarded for their breach by being excused from the year of compliance required under the Employment Contracts. Anything to the contrary would not only be inconsistent with a solid body of substantive Florida law, but would be unjust and inequitable with respect to Centennial, which spent over $100,000,000 in reliance upon the enforceability of these and related documents governing the terms of acquisition of Bay Cities Bank ("Bay Cities").

Among the Employment Contracts are two executed by Bryant, one during his employment with Bay Cities that expressly inures to the benefit of Centennial has successor in interest of Bay Cities (the "Bay Cities Non-Compete"), and a second executed on the day that Centennial went under contract to acquire Bay Cities (the "Centennial Bryant Agreement"), both of which remain in effect. The Bay Cities Non-Compete explicitly states that "[t]he time restrictions applicable to [the noncompete provisions] shall be tolled during the period of any breach of this Agreement." The Eleventh Circuit has upheld such provisions. See Proudfoot Consulting Co. v. Gordon, 576 F. 3d 1223 (11th Cir. 2009). And while the Centennial Bryant Agreement does not contain a similar explicit tolling provision, the outcome is the same under applicable law. See Capelouto v. Orkin Exterminating Co. of Fla., Inc., 183 So. 2d 532, 534-35 (Fla. 1966) ("Appellant argues that he acted swiftly to obtain an adjudication of his rights under the contract and he should not be penalized by extending the restrictive period beyond the time specified in the contract. This argument ignores the fact that appellant has participated in the prohibited activities during the course of litigation. To agree with appellant would be to nullify, in major part, the effectiveness of such agreements."); see also Ocean Beauty Seafood, LLC v. Pacific Seafood Group Acquisition Co., Inc., 648 Fed. Appx. 709 (9th Cir. 2016) (equitably tolling the non-

compete restrictions at issue); <u>Roanoke Engl'g Sales Co. v. Rosenbaum</u>, 223 Va. 548, 290 S.E. 2d 882, 886 (Va. 1982) ("The question before the court is whether [the former employee' is able, by his breach of his agreement, not only to reap the profits of his breach but also to render the judicial system impotent to redress it, simply by forcing the other party to go through lengthy litigation to obtain relief. We answer this in the negative.").

In interpreting the above cited precedent, the Order Denying Compel Motion read into the law a distinction that the cases "all apply equitable tolling to protect a party that has already won a decision on the merits or a preliminary injunction." (Dkt. 395 p. 3). However, Centennial has not yet had the opportunity to "[win] a decision on the merits." As such, even according to the law as stated by the Order Denying Compel Motion, it is premature to foreclose the possibility that equitable tolling will apply. By then significantly narrowing discovery, the Order Denying Compel Motion seeks to limit discovery on an issue that may ultimately, and likely will, control this case in the future.

The Order Denying Compel Motion is further problematic because it states that "[i]f Centennial prevails on the merits of its claims, it may obtain either damages for the alleged breaches or equitable relief." This pronunciation is problematic for several reasons. This overlooks the fact that if Centennial prevails on the merits and damages are ultimately appropriate, Centennial will be inhibited from calculating a damages figure because the Order Denying Contempt Motion bars access to the discovery that Centennial would need to form an accurate damages calculation.

The Restricted Officers, and their new employer ServisFirst, seem to believe that they may have one or another pretext for having left Centennial, and that on some grounds they might somehow have been justified in simply disregarding the noncompetition terms after having received all of the benefits of Centennial's acquisition of Bay Cities, their former employer. And that will be their heavy burden at trial. But in the meantime, Centennial contends that no event or circumstance at Bay Cities or Centennial liberated the Restricted Officers to compete at will as employees of ServisFirst, and their one-year term of non-competition has not yet begun. As a result, the hypothetical date at which they

might have been able to compete is irrelevant to this litigation, because they never stopped. And for this reason, the Arbitrary Cutoff is, simply, arbitrary on the part of ServisFirst.

Even assuming <u>arguendo</u> that Centennial were wrong in its legal analysis, uncontradicted as it is by Florida law, ServisFirst cannot invoke its substantive theory of the case in order to support a tautological conclusion precluding Centennial from obtaining discoverable documents after the Arbitrary Cutoff. <u>See e.g.</u>, <u>Florida Medical Ass'n, Inc. v. Department of Health, Education, & Welfare</u>, 2011 WL 4459926, at *6 (S.D.Fla. May 18, 2011); <u>Anvik Corp. v. Samsung Electronics</u>, 2009 WL 10695623 at *3 (S.D. N.Y. Sep. 16, 2009) (sustaining a motion to compel production because of the court's reluctance to prejudge substantive issues of patent law within the contours of a discovery dispute); <u>Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.</u>, 422 F.Supp. 2d 934, 946 (N.D. Ill. 2006) (rejecting defendant's "inverted approach" that the plaintiff "must prove liability before it is entitled to conduct the discovery that the Federal Rules of Civil Procedure assume is required to determine whether liability exists"); <u>Killingham v. Wilbon</u>, 1987 WL 10554 at *1-2. (D.D.C. Apr. 22, 1987) (holding that discovery could not be limited by defendant's interpretation of the parties' contractual agreement because to do so would prejudice the merits of the litigation); <u>Strong v. Wisc.</u>, 2007 WL 5445863 at *1 (W.D. Wis. May 25, 2007) (court was not permitted to prejudge plaintiff's claim to be false and deny discovery based on that basis alone); <u>Katunich v. Donovan</u>, 576 F.Supp. 636, 639 (Ct. Intl. Trade 1983) (granting plaintiff's motion for order allowing access to confidential information because requiring the specificity sought by defendant would require the court to prejudge the existence of substantial evidence); <u>Humble Oil & Refinery Co. v. Standard Oil Co. (Kentucky)</u>, 1962 WL 8735 at *2-3 (S.D. Miss. Apr. 5, 1962) (refusing to grant the defendant a temporary injunction because it would effectually prejudge the case on the merits).

In <u>Killingham</u>, the plaintiff-movant moved to compel responses to request for production of documents over the defendant-respondents objections based upon its interpretation of the parties' contractual obligations owed to each other and attempts to restrict the plaintiff-movant's discovery to

a date certain. In rejecting the defendant-respondents' arguments, the <u>Killingham</u> Court held that "[t]he scope of discovery at this stage of the proceedings cannot now be limited to the defendant's interpretation of the partnership agreement, and its provisions, involved in this litigation, nor should [the Court] at this stage of the proceedings prejudge the merits of the litigation." The <u>Killingham</u> Court went on to hold that the plaintiff-movant was entitled to full and complete discovery, as the ultimate trier of facts may "not agree with the defendant's interpretation. Thus the scope of discovery should be broad enough to satisfy whatever interpretation or construction of the Partnership Agreement the Court may adopt at trial." <u>Killingham</u>, 1987 WL 10554, at *1-2 (D.D.C. Apr. 22, 1987).

The same foregoing analysis applies to the situation at bar, and was not considered by the Order Denying Compel Motion. This argument was overlooked in error. ServisFirst should not be afforded the right to obstruct and limit Centennial's discovery efforts simply because it maintains a different theory of the case and liabilities it stands to face. However, the contours of a discovery dispute are not the proper arena to explore substantive issues when the ultimate issue to be decided at discovery is whether the documents requested are "relevant." <u>See</u> <u>Anvik</u>, 2009 WL 10695623, at *3 (S.D.N.Y. Sept. 16, 2009). Accordingly, ServisFirst's general objection should be overruled, and this Court should require ServisFirst to produce all documents responsive to the Production Request that post-date the Arbitrary Cutoff.

### IV. <u>CONCLUSION</u>

Bracketing the fact that the Operative Pleadings implicate numerous distinct causes of action and corresponding defenses, and are not limited to breaches of non-compete agreements that are partially tied to duration limitations, the proposition that a party breaching a non-compete agreement during the applicable non-compete term can limit damages to those actually calculated or experienced during that term, rather than those damages caused during that term but continuing on for years to come, would be a revolutionary change in applicable law on point. Further still, to utilize such a construction of liability and damages to shield the breaching party from discovery, including some

discovery that might be important to the Expert Witnesses, would stray far from the historic parameters of discovery under Rule 26(b)(1). Absent reconsideration of the Order Denying Compel Motion, Centennial will be deprived of the ability to present its full case at trial, and in connection with dispositive motions, and this could present significant prejudice to all parties and this Court.

WHEREFORE, Centennial respectfully objects to the entry of the Order Denying Compel Motion, and requests that this Court (a) sustain the objections asserted above, (b) direct compliance with the Production Request to the extent just and appropriate in light of the scope of the pleadings in this cause at present, (c) conduct a hearing, if necessary in the estimation of this Court, to more completely vet the issues presented by this discovery dispute, and (d) grant any other further relief this Court deems just and proper.

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQ.**
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
**ANDREW J. GHEKAS, ESQ.**
Florida Bar Number: 0119169
aghekas@anthonyandpartners.com
Anthony & Partners, LLC
201 North Franklin Street, Suite 2800
Tampa, Florida 33602
Telephone: (813) 273-5616
Telecopier: (813) 221-4113
Attorneys for Centennial Bank

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic means and/or U.S. Mail on this 23rd day of May 2019, to the following:

Sean Estes, Esq.
James Hoyer, P.A.
2801 West Busch Boulevard
Suite 200
Tampa, Florida 33618
sestes@jameshoyer.com

Michael T. Sansbury, Esq.
Spotswood Sansom & Sansbury
1819 Fifth Avenue North, Suite 1050
Birmingham, Alabama 35203
msansbury@spotswoodllc.com

Clayborne S. Stone, Esq.
Devin R. Bates, Esq.
Mitchell, Williams, Selig, Gates &
Woodyard, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
cstone@mwlaw.com
dbates@mwlaw.com

Burt W. Wiand, Esq.
George L. Guerra, Esq.
Jared J. Perez, Esq.
Wiand Guerra King P.A
5505 W Gray St
Tampa, Florida 33609-1007
bwiand@wiandlaw.com
gguerra@wiandlaw.com
jperez@wiandlaw.com

Phillip J. Harris, Esq.
Constangy, Brooks, Smith & Prophete, LLP
100 N. Tampa St., Suite 3350
P.O Box 1840
Tampa, Florida 33601
pharris@constangy.com
dnowlin@constangy.com

Eddie Suarez, Esq.
The Suarez Law Firm
1011 West Cleveland Street
Tampa, Florida 33606
esuarez@suarezlawfirm.com

/s/ John A. Anthony
**ATTORNEY**