UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTENNIAL BANK,

    Plaintiff,

v.    Case No: 8:16-cv-88-T-36JSS

SERVISFIRST BANK INC., GREGORY
W. BRYANT, GWYNN DAVEY,
PATRICK MURRIN and JONATHAN
ZUNZ,

    Defendants.
_____/

# **O R D E R**

This cause comes before the Court upon Centennial Bank's Objections to Order Denying Deposition Motions (Doc. 495) and ServisFirst Bank Inc. and Gregory W. Bryant's response thereto (Doc. 509). Upon careful consideration, the Court will overrule Centennial Bank's Objections and affirm the Order of the Magistrate Judge entered July 26, 2019.

    **I.**    **BACKGROUND**

In this diversity action, Plaintiff/ Counter-defendant Centennial Bank ("Centennial") sues four former employees— Defendant/ Counter-plaintiff Gregory W. Bryant ("Bryant"), Defendant Patrick Murrin ("Murrin"), Defendant Gwynn Davey ("Davey"), and Defendant Jonathan Zunz ("Zunz")—and the former employees' new employer, Defendant ServisFirst Bank Inc. ("ServisFirst"). Doc. 199. Centennial sets forth various state-law claims arising from the former employees' simultaneous resignation and relocation to ServisFirst in December 2015 and January 2016. *Id.* The causes of action against the Defendants include tortious interference, breach of contract, specific performance, misappropriation of trade secrets, conversion, fraudulent inducement, fraudulent omission, breach of fiduciary duty, and civil conspiracy. *Id.*

The parties conducted discovery. Before taking any depositions, Centennial served requests for production. Doc. 398 at p. 3. Defendants held back certain documents based on objections and assertions of privileges. *Id.* The parties proceeded with depositions. *Id.* at p. 4. Dana Miller's ("Miller") deposition was taken February 21, 2019 and Thomas Broughton's ("Broughton") deposition was taken February 22, 2019. *Id.* at pp. 4, 7. During his deposition, Broughton testified that he remembered "setting up a phone call between [Bryant] and counsel [Michael Sansbury ("Sansbury"), counsel for ServisFirst] to discuss what it meant to comply, how to comply, did he have any questions." *Id.* at p. 4, n.2. Broughton could not remember when the call was set up. *Id.*

Three days prior to commencing Bryant's deposition on May 23, 2019, ServisFirst released over 14,000 pages of additional documents to Centennial. *Id.* at p. 5. On the day prior to Bryant's deposition, Bryant released over 2,000 additional pages to Centennial. *Id.* Included with Bryant's production was a document memorializing a 40 minute telephone conversation on November 25, 2015 (the "November conversation") between Bryant and Sansbury, and Dana Miller ("Miller"), the head of human resources at ServisFirst. *Id.* at pp. 5-7. Centennial describes the document as follows:

> From the document, it is unmistakable that Sansbury is giving direct advice to non-clients, Bryant and his team, in furtherance of the civil conspiracy. . . . The [document] recounts instructions provided by ServisFirst's 'labor law' counsel, lead trial counsel for ServisFirst in this litigation, to the Former Employees while the conspiracy was unfolding. Because that conversation is memorialized in the [document], Centennial has now confirmed the orchestrating role of ServisFirst and its counsel during the plot.

*Id.* at pp. 6-7.

Centennial confronted Bryant with the document (the "November conversation document") at his deposition, after Bryant stated he did not remember any phone calls between he and Sansbury prior to leaving Centennial and starting at ServisFirst in January 2016. *Id.*

On May 30, 2019, one week after Bryant's deposition, Centennial filed a Motion to Compel Depositions of Material Witnesses. Doc. 398 ("Motion to Depose Material Witnesses"). A few days later, Centennial and counter-defendant John W. Allison ("Allison") also filed a Motion for Order Compelling Bryant to Appear at Deposition for Five Additional Hours. Doc. 400 ("Motion to Depose Bryant"). Both motions assert that additional depositions are necessary because of the late disclosure of the November conversation document.

In the Motion to Depose Material Witnesses, Centennial requests that the Court order Broughton and Miller to appear for additional oral examination on certain topics and order Sansbury to appear for oral examination. Doc. 398. Centennial argues Broughton's additional testimony is necessary, as Centennial seeks testimony "regarding the role Broughton instructed Sansbury to play in ServisFirst recruitment efforts of the Former Employees . . . as well as to why Broughton testified under oath that Sansbury would not have spoken with the Former Employees until after [January 2016]—a statement that is utterly contradicted by the [November conversation document]." *Id.* at p. 10. Centennial also argues reexamination of Miller is warranted because it seeks testimony "regarding her role and participation in the" November conversation. *Id.* at pp. 11-12. Centennial contends it had "no prior ability to question Miller on this topic" because of the late disclosure of the November conversation document. *Id.* Centennial also states Sansbury should be required to sit for a deposition as "a material witness to the improper conduct of the Defendants—if not the architect of that conduct and overall conspiracy." *Id.* at p. 13. Centennial states it seeks to depose Sansbury only as to the facts regarding the November conversation. *Id.*

In the Motion to Depose Bryant, Centennial and Allison argue that additional examination of Bryant is necessary because they require more time to "cover Bryant's self-dealing as it relates to lending relationships," because it would permit more time to "fairly examine Bryant about the approximately 16,000 pages of documents they received in the" three days prior to his deposition, and because Allison did not have the opportunity to examine Bryant. Doc. 400 at pp. 5, 7. Centennial and Allison also seek to question Bryant about the veracity of his prior testimony which they allege has been called into question by various affidavits obtained subsequently. Doc. 405 at p. 12.

The Magistrate Judge rejected these arguments.[1] First, the Magistrate Judge held that Centennial has not established good cause to re-depose Broughton about the November conversation because Broughton was not a party to the conversation and it was unclear what relevant information he would be able to offer on the topic. Doc. 463 at pp. 3-4. Next, the Magistrate Judge held that although the November conversation document was obtained after Miller's deposition, Centennial did not establish good cause to re-depose Miller because it previously could have, but did not, ask Miller questions which might have revealed relevant evidence on the topic. *Id.* at p. 4. Moreover, the Magistrate Judge held that because Bryant was questioned about the November conversation, an additional deposition of Miller on this topic would be unnecessarily cumulative and not proportional to the needs of the case. *Id.*

The Magistrate Judge also concluded that Centennial failed to establish good cause to depose Sansbury because (1) Centennial failed to establish grounds to exceed the ten-deposition limit, (2) additional depositions on the topic of the November conversation would be unnecessarily

---

[1] However, the Magistrate Judge granted the Motion to Depose Material Witnesses as to Broughton, to the extent that Centennial would be allowed to re-depose Broughton on topics on which he will provide expert testimony. Doc. 463 at p. 4. The Magistrate Judge found good cause to grant that request because Broughton was not designated as an expert witness until after his deposition. *Id.*

duplicative, and (3) Centennial failed to meet the higher burden of showing that a deposition of opposing counsel is necessary and the only practical means available for obtaining the information. *Id.* at p. 5. Lastly, the Magistrate Judge concluded that Centennial failed to establish good cause to re-depose Bryant because (1) Bryant has already been questioned about the November conversation document, (2) substantial discovery has already been taken on the issue of Bryant's financial dealings, and (3) Allison does not need the opportunity to depose Bryant because normally only one attorney for each side should depose a witness. *Id.* at pp. 6-7.

## II.   LEGAL STANDARD

A magistrate judge's ruling on a non-dispositive matter must be affirmed unless "it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). The "clearly erroneous or contrary to law" standard is extremely deferential. *Pac. Employers Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850J99MMH, 2007 WL 433362, at *2 (M.D. Fla. Feb. 6, 2007). A finding is clearly erroneous if "the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed." *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997).

## III.   DISCUSSION

In support of its Objections, Centennial largely (1) rehashes the same arguments it made to the Magistrate Judge and (2) offers new arguments it did not raise before the Magistrate Judge. Centennial articulates few reasons why the Magistrate Judge's Order, based on the facts and arguments before her, was clearly erroneous or contrary to law. The few reasons Centennial does provide are unpersuasive.

Centennial first quarrels with the Magistrate Judge's finding that Centennial failed to establish grounds to exceed the 10-deposition limit. Doc. 495 at p. 13. Centennial argues that finding "ignores the fact that Centennial was forced to select its deponents without the benefit of the [November conversation document] because that document was improperly withheld." *Id.* But Centennial previously stated in its Motion to Depose Material Witnesses that it long had suspicions that Sansbury was a proper witness in this litigation but decided to "wait[] to seek to set" Sansbury's deposition until it obtained further evidence about Sansbury's role. Doc. 398 at ¶ 12. Knowing discovery was ongoing, including that others' depositions might reveal evidence about Sansbury, Centennial apparently chose to move forward with setting all of its available depositions. That Centennial now regrets its strategic decision is not cause for exceeding the ten-deposition limit.

Centennial also takes issues with the Magistrate Judge's "assumption" that Sansbury's testimony would be unnecessarily duplicative and that he would have no information to add about what was meant by the statement in the November conversation document that sometimes "a little money changes hands." Doc. 495 at p. 13. But the Magistrate Judge is correct that Sansbury's deposition testimony about the November conversation would be unnecessarily duplicative. There were multiple parties to that conversation, including Bryant, who Centennial had the opportunity to depose. Again, Centennial fails to establish grounds to exceed the 10-deposition limit, much less meet the higher burden of showing a deposition of opposing counsel is necessary. Doc. 463 at p. 5. The Magistrate Judge correctly determined that Centennial failed to show cause for deposing Sansbury.

Centennial next argues the Magistrate Judge places an "impossible burden" on Centennial by not allowing Centennial to re-depose Miller and Broughton, whose depositions Centennial took

6

before it was aware of the November conversation document. Doc. 495 at pp. 14-15. According to Centennial, it would have had to "divine that such a conversation took place and, from that divination, been able to ask the appropriate questions." *Id.* at p. 14.

Centennial's argument misapprehends the Magistrate Judge's point. While no one would fault Centennial for failing to ask questions about a specific conversation of which Centennial was unaware, the fact remains that Centennial had the opportunity to ask many broad questions about who spoke to whom and what the content of those conversations were. Moreover, as the Magistrate Judge pointed out, Broughton acknowledged setting up the November conversation between Sansbury and Bryant, but testified he did not "know what they discussed." Doc. 398 at pp. 4-5, n.2. The Court agrees with the Magistrate Judge: it is entirely unclear what information Broughton would be able to offer about the November conversation considering (1) he was not a party to it and (2) he already testified he does not have knowledge of what was discussed.

Centennial also argues the Magistrate Judge assumed Miller's recollection could not be refreshed by the November conversation document. Doc. 495 at p. 15. To the contrary, the Magistrate Judge held an additional deposition of Miller would be unnecessarily cumulative and not proportional to the needs of the case. The Court agrees.

Centennial next argues that the Magistrate Judge erred by not allowing an additional five hours to depose Bryant. Centennial states the Magistrate Judge "summarily disregarded" that Bryant was not deposed about his self-dealings and that Allison was not permitted an opportunity to examine Bryant about Bryant's counterclaim. Again, though, the Magistrate Judge concluded it was not clear how further testimony from Bryant would be beneficial or proportional to the needs of the case, particularly in light of the fact that Centennial had the opportunity to question Bryant about the November conversation document, the main impetus for Centennial's motions. Finally,

as ServisFirst and Bryant point out, Allison apparently ceded his time to Centennial. Doc. 412 at pp. 9-10; Doc. 412-5.

Upon review, the Court finds no basis to conclude that the Magistrate Judge's Order was clearly erroneous or contrary to law. As such, the Court will affirm the Magistrate Judge's Order.

Accordingly, it is **ORDERED:**

1. Centennial Bank's Objections to Order Denying Deposition Motions (Doc. 495) are **OVERRULED.**

2. The Order of the Magistrate Judge (Doc. 463), entered July 26, 2019, is **AFFIRMED.**

3. Centennial shall **immediately** take the deposition of Broughton on the topics upon which he will provide expert testimony. Broughton's deposition shall occur on or before March 13, 2020, so that transcripts of the testimony are available for the *Daubert* hearing on March 20, 2020, if needed. ServisFirst **shall** produce Broughton for deposition and coordinate a date for the deposition with Centennial.

**DONE AND ORDERED** in Tampa, Florida on February 27, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:   All Counsel of Record
             All *Pro Se* Parties