UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTENNIAL BANK,

      Plaintiff,

v.                                    Case No: 8:16-cv-88-T-36CPT

SERVISFIRST BANK, INC., GREGORY
W. BRYANT, GWYNN DAVEY,
PATRICK MURRIN, and JONATHAN
ZUNZ,

      Defendants.
_____/

## O R D E R

Before the Court are Plaintiff *Centennial Bank's Motion to Determine Scope of Attorney-Client Privilege and Work Product of Sansbury Firm in Light of Operation of the "At Issue" Doctrine* (Doc. 464) and Defendant ServisFirst Bank, Inc.'s (ServisFirst) response in opposition (Doc. 478).[1]  With the benefit of oral argument and for the reasons discussed below, the Court denies Centennial's motion.

I.

This diversity action stems from Centennial's acquisition of Bay Cities Bank (Bay Cities) in 2015 and the subsequent resignation of four of Centennial's

---

[1] This motion was referred to the undersigned following the recusal of the Magistrate Judge previously assigned to this case.  (Docs. 581, 582).

employees—Defendants Gregory Bryant, Patrick Murrin, Gwynn Davey, and Jonathan Zunz—all of whom went to work at ServisFirst (a competitor of Centennial) shortly thereafter. In its operative complaint filed in November 2016, Centennial asserts various state-law claims against the Defendants, including for breach of contract, specific performance, misappropriation of trade secrets, conversion, fraudulent inducement, fraudulent omission, breach of fiduciary duty, and civil conspiracy. (Doc. 199). These claims largely pertain to the individual Defendants' alleged violations of various ethical, confidentiality, and contractual obligations Centennial avers they had with the bank. *Id.* The contractual obligations include Bryant, Davey, and Murrin's agreements not to compete with Centennial for one year following their departure from the bank, and ServisFirst's alleged tortious interference with those agreements.

ServisFirst answered Centennial's operative complaint in September 2017 and asserted eighteen affirmative defenses. (Doc. 264). Several of those affirmative defenses relate to the employment contracts Centennial had with the individual Defendants, including the non-compete agreements involving Bryant, Davey, and Murrin. *Id.* at 27-29.

According to the most recent Case Management and Scheduling Order (CMSO), discovery in this case closed on June 7, 2019. (Doc. 365). The Court has since indicated, however, that it intends to issue an amended CMSO (Doc. 639), and recently granted leave to conduct additional, limited discovery (Docs. 639, 655). A

motion to reopen discovery to take further depositions also remains pending.    (Doc. 599).

In its instant motion, Centennial contends that, as a result of various events in this litigation, ServisFirst has impliedly waived its attorney-client and work-product protections under the "at issue" doctrine regarding communications between ServisFirst and its counsel, Michael Sansbury.[2]    (Doc. 464).    Based on this alleged waiver, Centennial requests that the Court order ServisFirst and Sansbury's law firm "to produce all documentation between them relating in any way to Bay Cities and Centennial through the first year of admitted conduct of banking business by" Bryant, Davey, Murrin, and Zunz at ServisFirst.    *Id.* at 14.    ServisFirst counters in its response that Centennial's waiver arguments are without merit and that the relief it seeks is unwarranted.[3]    (Doc. 478).

---

[2] The phrase "implied waiver" includes waivers under the "at issue" doctrine.  *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 2015 WL 1860826, at *9 (S.D. Fla. Apr. 22, 2015) (noting that "the 'at-issue' doctrine [is] also referred to as an 'implied waiver' of privilege").

[3] At oral argument, ServisFirst contended for the first time that Centennial's motion was also untimely because it was filed after the discovery deadline.    (Doc. 633 at 30-41, 47).    Putting aside the fact that ServisFirst did not raise this contention in its response, ServisFirst's timeliness challenge fails in any event.    While ServisFirst is correct that discovery closed prior to Centennial's filing of the motion, part of the impetus for Centennial's submission (as discussed below) is an argument ServisFirst made in its summary judgment motion (Doc. 439), which was filed after the discovery deadline.    Under the circumstances, Centennial's motion, submitted less than two and a half weeks after ServisFirst's summary judgment filing, is not untimely.

## II.

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). That longstanding privilege is "[b]ased on the theory that 'sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client,' [and] is designed 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994) (quoting *Upjohn*, 449 U.S. at 389).

In a diversity action such as this one, the attorney-client privilege is governed by state law. Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 2017 WL 8314668, at *2-3 (M.D. Fla. June 13, 2017) (citations omitted). In Florida, the attorney-client privilege is codified in section 90.502 of the Florida Statutes and protects "confidential communications made in the rendition of legal services to the client." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994) (citing Fla. Stat. § 90.502); *see also Batchelor v. Geico Cas. Co.*, 142 F. Supp. 3d 1220, 1242 & n.45 (M.D. Fla. 2015) (same). "A 'communication' between a lawyer and a client is 'confidential' if the communication is not intended to be disclosed to third persons." *United Servs. Auto. Ass'n v. Law Offices*

*of Herssein and Herssein, P.A.*, 233 So. 3d 1224 (Fla. Dist. Ct. App. 2017) (citing Fla. Stat. § 90.502(1)(c)).

Although Florida law recognizes that a client may waive the attorney-client privilege either expressly or by implication, waiver of the attorney-client privilege is disfavored. Fla. Stat. § 90.507; *Coates v. Akerman, Senterfitt & Eidson, P.A.*, 940 So. 2d 504, 508 (Fla. Dist. Ct. App. 2006). Indeed, the confidentiality of attorney-client privileged communications is considered to be "one of the most sacrosanct principles of the law," *Reuter v. Physicians Cas. Risk Retention Grp.*, 2017 WL 395242, at *4 (S.D. Fla. Jan. 27, 2017), and is "traditionally deemed worthy of maximum legal protection," *Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (quoting *State Farm Fla. Ins. Co. v. Puig*, 62 So. 3d 23, 27 (Fla. Dist. Ct. App. 2011)).

Florida courts have found an "at-issue" waiver "when a party 'raises a claim that will *necessarily* require proof by way of a privileged communication.'" *Coates*, 940 So. 2d at 508 (quoting *Jenney v. Airdata Wiman, Inc.*, 846 So. 2d 664, 668 (Fla. Dist. Ct. App. 2003)); *see also Lee v. Progressive Express Ins. Co.*, 909 So. 2d 475, 477 (Fla. Dist. Ct. App. 2005) ("[I]f proof of the claim would *require* evidence of the privileged matter, the privileged matter is discoverable.") (emphasis added). Of relevance here, such a situation can occur when a party seeks to invoke an advice of counsel defense. *West Bend Mut. Ins. Co. v. Higgins*, 9 So. 3d 655, 658 (Fla. Dist. Ct. App. 2009) (observing that the implied waiver doctrine includes instances where a litigant relies on an "advice of counsel" defense).

Florida courts also recognize a "sword and shield" (or "selective disclosure") waiver, which results "[w]hen attorney-client communications are disclosed regarding a certain matter." *Coates*, 940 So. 2d at 511. Under such circumstances, "a party may not insist upon the protection of the privilege for damaging communications *while disclosing other selected communications* because they are self-serving." *Id*. Instead, the party is deemed to impliedly waive the privilege "with respect to communications on that same, specific matter." *Id.* (citation omitted).

A party, however, "does not waive the attorney-client privilege merely by bringing or defending a lawsuit." *Id*. at 508 (citing cases). Nor is the attorney-client privilege "set aside simply because the opposing party claims that the information held by the attorney is necessary to prove the opposing party's case." *Volpe v. Conroy, Simberg & Ganon, P.A.*, 720 So. 2d 537, 539-40 (Fla. Dist. Ct. App. 1998); *see also Coates*, 940 So. 2d at 509 (noting that party does not waive the attorney-client privilege merely because documents protected by the privilege "are relevant to or may assist the [opposing] lawyers in their defense"); *Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011) (observing that, unlike the work-product doctrine, there is no "need" or "undue hardship" exception to attorney-client privilege).

In the end, whether there has been an implied waiver of the attorney-client privilege and, if so, the scope of any such waiver are factual issues for which the party claiming the waiver bears the burden of proof. *McPartland v. GEICO Gen. Ins. Co.*, 2010 WL 11507535, at *6 (M.D. Fla. Mar. 5, 2010) (citing *First Union Nat. Bank v. Turney*, 824 So. 2d 172, 183 n.9 (Fla. Dist. Ct. App. 2001) ("Just as the proponent of

the privilege has the burden of proof as to facts which give rise to the privilege, the party seeking to abrogate the privilege has the burden to prove facts which would make an exception to the privilege applicable.")).

Unlike the attorney-client privilege, the work-product doctrine is governed by federal law. *Oppenheim*, 2017 WL 8314668, at *2. That doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which "establishes two tiers of [work-product] protection." *Keim v. ADF Midatlantic, LLC*, 2019 WL 2298787, at *3 (S.D. Fla. May 30, 2019) (citations omitted). Under the first tier, "work product prepared in anticipation of litigation by an attorney . . . is discoverable only upon a showing of need and hardship." *Id.* Under the second tier, "'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery.'" *Id.* (citation omitted).

Federal courts have found an implied waiver of the work-product doctrine "when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense." *Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D. Fla. 2008) (citations omitted); *see also Oppenheim*, 2017 WL 8314668, at *3 ("Federal law recognizes that an at-issue waiver of work-product protection may occur when a party asserts a claim or defense that relies on work-product protected materials.") (citations omitted); *Guarantee Ins.*

*Co. v. Heffernan Ins. Brokers, Inc.,* 300 F.R.D. 590, 594-95 (S.D. Fla. 2014) ("Under the federal standard, [f]airness may compel a finding of an implied waiver [of the work-product doctrine] when a party asserts a claim or defense that requires examination of protected communications.") (internal quotation marks and citations omitted; first alteration in original).[4]

The Eleventh Circuit has held, however, "that the at-issue waiver doctrine 'does not extend to materials protected by the *opinion* work product privilege.'" *Oppenheim*, 2017 WL 8314668, at *3 (quoting *Cox*, 17 F.3d at 1422). A number of lower courts have found an exception to this limitation where the opinion work product in question "is directly at issue, particularly if the lawyer or law firm is a party to the litigation." *Monitronics Int'l, Inc. v. Hall, Booth, Smith, P.C.*, 2017 WL 218397, at *2 & n.3 (S.D. Fla. Jan. 18, 2017) (internal quotation marks and citations omitted).

Here, neither Centennial nor ServisFirst meaningfully addresses the distinctions between the work-product doctrine and the attorney-client privilege as they relate to the facts in this case. Nonetheless, as discussed below, the Court finds that ServisFirst has not impliedly waived either of these protections.

---

[4] Rule 502 of the Federal Rules of Evidence also applies to the intentional and inadvertent disclosure of communications and information covered by the work-product doctrine. Fed. R. Evid. 502.

*A. ServisFirst's Affirmative Defenses*

Centennial's first implied waiver argument is predicated upon its contention that "several of ServisFirst's affirmative defenses assert a lack of knowledge or intent to interfere with the [n]on-[c]ompete [a]greements, and assert good faith in general terms." (Doc. 464 at 4). This contention is unavailing.

The Court notes initially that Centennial neglected to identify in its motion which of ServisFirst's eighteen affirmative defenses Centennial relies upon for this contention. And, while Centennial self-servingly refers to these unspecified defenses as the "ServisFirst Good Faith Defenses," it fails to identify a single defense that actually mentions the words "good faith" in the context of an attorney-client or work-product-related matter. According to ServisFirst, there are none.[5]

When pressed on the matter at oral argument, Centennial pointed to ServisFirst's second and third affirmative defenses as supportive of its implied waiver argument. (Doc. 633 at 23). In the former affirmative defense, ServisFirst avers that it: (a) "instructed the other Defendants to abide by the terms of their agreements;" (b) "never intended to interfere with any agreement between the other Defendants and Centennial;" (c) "never intended for the other Defendants to violate their agreements

---

[5] While ServisFirst's thirteenth affirmative defense includes the phrase "good faith," that defense relates to ServisFirst's alleged good faith reliance on the Court's determination following the preliminary hearing that, among other things, one of the non-compete agreements was unenforceable. (Doc. 264 at 35-36).

with Centennial;" (d) "has no knowledge that any other Defendant violated any of their agreements with Centennial." (Doc. 264 at 27-28).

Contrary to Centennial's contention, these averments do not place attorney-client communications or work-product materials at issue. They do not, for example, invoke an advice of counsel defense or otherwise inject into this litigation defenses that necessarily require proof by way of a privileged communication. *Teachers Ins. Co. v. Loeb*, 75 So. 3d 355, 357 (Fla. Dist. Ct. App. 2011) (declining to find waiver of attorney-client privilege where party did not plead affirmative defense of advice of counsel); *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987) ("[I]t is the rule in Florida that a party who bases a claim on matters which would be privileged, the proof of which will *necessitate* the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege.") (emphasis added) (quotation and citations omitted); *Coates*, 940 So. 2d at 508 (noting that party impliedly waives attorney-client privilege when it "has filed a claim, *based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence*") (quoting and adding emphasis to *Savino v. Luciano*, 92 So. 2d 817, 819 (Fla. 1957)). Nor do these averments raise a defense that relies on work-product-protected materials. *Oppenheim*, 2017 WL 8314668, at *3; *Guarantee Ins. Co.*, 300 F.R.D. at 594-95; *Stern*, 253 F.R.D. at 676.

The Eleventh Circuit's decision in *Cox* and the Second Circuit's decision in *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.), *cert. denied*, 502 U.S. 813 (1991), upon

which Centennial relies, do not undermine this conclusion. As an initial matter, neither of these cases specifically addresses the application of the implied waiver doctrine to the attorney-client privilege under Florida law. *Cox*, 17 F.3d at 1419 (finding attorney-client waiver in non-diversity case where party went "beyond mere denial, affirmatively to assert good faith, [thereby] inject[ing] the issue of its knowledge of the law into the case"); *Bilzerian*, 926 F.2d at 1292 (addressing implied waiver doctrine in context of federal criminal case where defendant sought to testify "he thought his actions were legal," thereby "put[ting] his knowledge of the law and the basis for his understanding of what the law required in issue"). And, while *Cox* did address federal work-product protections, the Court determined that such protections were not waived under the circumstances present in that case. 17 F.3d at 1423 ("Where a party asserts that he believed his actions to be lawful, he waives the attorney-client privilege as to what his attorney told him about the legality of his actions [ ]; his attorney's work product, however, is a different matter.").

Even were *Cox* and *Bilzerian* to apply here, they do not sweep as widely as Centennial claims. Those decisions stand for the proposition that a party impliedly waives the attorney-client privilege where it affirmatively asserts as a defense that it had a good faith belief in the legality of its actions. *Cox*, 17 F.3d at 1418 (determining party impliedly waived attorney-client privilege where it affirmatively asserted defense that it had a good faith belief in legality of its challenged policy); *Bilzerian*, 926 F.2d at 1291-94 (finding criminal defendant would be deemed to impliedly waive attorney-client privilege if he were to testify regarding his good faith belief as to the legality of

certain disclosures in connection with securities laws). ServisFirst does not allege in its second affirmative defense that it had a good faith belief in the legality of its actions, and Centennial has not established otherwise.

Instead, under *Cox* and *Bilzerian*, ServisFirst's averments in its second affirmative defense are fairly characterized as "mere denials." *Cox*, 17 F.3d at 1419 (noting a party must go "beyond mere denial[s]" to affirmatively assert good faith belief in legality of its actions in order to impliedly waive attorney-client privilege); *Bilzerian*, 926 F.2d at 1293 (drawing distinction between mere denial of criminal intent and assertion of good faith belief in legality of one's actions). And, such denials— without more—do not amount to a waiver of the protections afforded the matters here. *Maar v. Beall's, Inc.*, 237 F. Supp. 3d 1336, 1340 (S.D. Fla. 2017) (FLSA case in which court cited *Cox* for the proposition that "a defendant can always deny the element of a plaintiff's claim alleging a certain mental state 'without affirmatively asserting' a good faith belief in an act's legality") (citing *Cox*); *Butterworth v. Lab. Corp. of Am. Holdings*, 2010 WL 11470895, at *5 & n.7 (M.D. Fla. Dec. 2, 2020) (unlawful employment practice case alleging Title VII and various state law claims, in which court found defendant's "contention that its actions were made in 'good faith' and were 'lawful'" in defense of punitive damages claim requiring showing of "malice or reckless indifference" did "not transform th[e] case into one in which advice of counsel [wa]s at issue;" "[r]ather, the [c]ourt construe[d] the reference to 'lawful' as referring to the requirements imposed by [the statute governing defendant's behavior] and [d]efendant's efforts to comply with it"); *Jenney*, 846 So. 2d at 668 ("[A]ttorney-client

privilege is not waived simply because the credibility of [a party's] statements concerning his intent could possibly be impeached by his communications with his former attorney. Were this court to hold otherwise, it would essentially create a 'credibility exception' to the attorney-client privilege that would swallow the entire rule. We decline to create such an exception.") (internal citation omitted); *see also Nova Se. Univ., Inc. v. Jacobson*, 25 So. 3d 82, 88 (Fla. Dist. Ct. App. 2009) (citing *Jenney* and *Cuillo v. Cuillo,* 621 So. 2d 460 (Fla. Dist. Ct. App. 1993)).

Centennial's reliance on ServisFirst's third affirmative defense to support its implied waiver argument fares no better. The gist of that affirmative defense is that Bryant, Davey, and Murrin did not "engage in banking business" (as that term is defined under the law) in any of the territories covered by the non-compete agreements. Centennial fails to show how these averments, based on ServisFirst's proffered interpretations of certain contractual provisions in the non-compete agreements, amount to an implied waiver of its attorney-client or work-product protections.

In sum, based on the record presently before it, the Court finds that Centennial has not carried its burden of showing that ServisFirst impliedly waived the attorney-client privilege or the work-product doctrine by asserting its second and third affirmative defenses.

### B. Bryant Email

As additional support for its implied waiver argument, Centennial points to an email Bryant sent to Davey the month before their departure from Centennial. In

that email, Bryant informs Davey of a conversation he had with ServisFirst's counsel, Sansbury, as well as its Vice President of Human Resources, Dana Miller, regarding compliance with the Centennial employment agreements, among other topics.[6] (Doc. 464 at 17).    To the extent Centennial now seeks to rely on this email as a basis for its waiver argument, such an argument fails.

ServisFirst concedes, and Centennial does not dispute, that the Bryant email is non-privileged.[7]    Centennial has not offered any case law for the proposition that the disclosure of such a non-privileged document can result in an implied waiver of attorney-client and work-product protections for other materials and information entitled to such safeguards.    The authority cited by ServisFirst, along with the Court's own research, points to the opposite conclusion.    *See Zarrella v. Pacific Life Ins. Co.*, 498 F. App'x 945, 950-51 (11th Cir. 2012) ("Zarrella offers no support, and we know of none, for the extraordinary assertion that disclosure of concededly non-privileged communication with counsel operates as a waiver of privilege with respect to all other

---

[6] According to Centennial, it learned of this email when Bryant "inadvertently produced" it during discovery.    (Doc. 464 at 5, 10-11).    Centennial adds that, although ServisFirst initially claimed the email was privileged and sought to "claw" it back, ServisFirst no longer asserts that it is protected.    *Id.*

[7] Indeed, in prior filings, Centennial argued that the Bryant email was not covered by the attorney-client privilege for, among other reasons, "Bryant testified that he had never retained Sansbury as his legal counsel to provide legal advice" and "Bryant waived such privilege when he documented the conversation and forwarded it on to a third-party, non-participant, Davey."    (Doc. 399 at 5-6); *see also* (Doc. 458 at 5-6) (Centennial asserting there "is no basis to claim privilege [with respect to Bryant email] and the document should not have been withheld").

14

communications between a party and the same attorney."); *Butterworth*, 2010 WL 11470895, at *6 (concluding that disclosure of non-privileged e-mails, which "simply and broadly" stated that Defendant's employees "had consulted or were planning to consult the legal department," did not constitute implied or intentional waiver of attorney-client or work-product protection with respect to documents at issue on Defendant's privilege log). Centennial has therefore failed to carry its burden of showing that ServisFirst impliedly waived the attorney-client privilege or the work-product doctrine as a result of Bryant's inadvertent production of his email.

### C. ServisFirst's Summary Judgment Motion

Centennial alternatively argues that the Court should find an implied waiver based on the following passage from ServisFirst's summary judgment motion.

> ServisFirst determined that, despite their restrictions, Bryant and Davey could work for ServisFirst while also complying with Centennial['s n]on-[c]ompete [agreements]. Bryant then discussed how to comply with the Centennial [n]on-[c]ompete [agreement] with Miller and counsel for ServisFirst.

> ServisFirst cannot be liable for tortious interference with the Centennial [n]on-[c]ompete [agreements] because Centennial has not shown, and cannot show, that ServisFirst's alleged interference was willful or done with the specific intent to induce a breach.

(Doc. 464 at 6-7) (internal citations omitted). In connection with this passage, ServisFirst cites the above-referenced email that Bryant sent to Davey. *Id.*

In its opposition, ServisFirst downplays the significance of this passage, arguing that the statements made in the passage are a "far cry from asserting an affirmative defense that [it] believed in good faith that the actions it ultimately took were lawful."

15

(Doc. 478 at 8-9 n.6). ServisFirst further contends that, even if it could be construed as having "inadvertently made a stray comment going beyond mere denial of intent," the proper remedy would be for the Court simply to ignore or strike the challenged language. *Id.* The Court agrees.

Here, as noted above, ServisFirst indicates it did not intend to assert a good faith defense that its actions were lawful. It also disavowed at oral argument any intent to invoke a good-faith reliance on an advice of counsel defense. (Doc. 633 at 31, 49). The Court accepts these attestations and takes counsel at their word. In light of ServisFirst's representations, Centennial fails as a threshold matter to show that it has suffered any prejudice as a result of the above passage. *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 2017 WL 3840354, at *5-6 (S.D. Fla. Sept. 1, 2017) (addressing scope of implied waiver doctrine under Florida law and rejecting waiver of attorney-client privilege argument, in part, because any potential prejudice stemming from disclosure of claimed privileged material ameliorated by privileged holder's representation that it was not relying on attorney's legal advice in pursuing claim); *see also Cox*, 17 F.3d at 1417 (noting that "courts generally have not found a waiver [of the attorney-client privilege] where the party attacking the privilege has not been prejudiced").[8] As a result, Centennial's reliance on this passage in support of its implied waiver argument fails.

_____

[8] Centennial suggested at oral argument for the first time that the Court should also find an implied waiver here because the individual Defendants may raise (or possibly have raised) either an advice of counsel defense or a defense that they had a good faith belief in the legality of their actions. (Doc. 633 at 50-51). Centennial did not raise this argument in its motion,

16

### D.    *Broughton's Deposition*

Centennial's final argument is that, during his deposition, ServisFirst's chairman and chief executive officer, Thomas Broughton, III, impliedly waived the attorney-client privilege by placing at issue the legal advice his company received from its attorney, Sansbury.    Centennial cites the following passage from Broughton's deposition testimony in support of this contention:

> A.    We asked them to comply with their contract and comply with Florida law.
>
> Q.    Okay.    And none of them is a lawyer.    Right?
>
> A.    No.
>
> Q.    And did you have any members of the Florida Bar providing an opinion on what complying with Florida law was when you were telling them to comply with Florida law?
>
> A.    No.
>
> Q.    Did any of them hire their own Florida lawyers to help them comply with either the Resignation, Release and Terms of Employment Agreement or with any other agreement or statute on point?
>
> Mr. Sansbury: Object to the form.
>
> A.    I don't know.
>
> Q.    You don't know?    You didn't make that your business?

---

however, and neither ServisFirst nor the individual Defendants have had an opportunity to respond to it.    Accordingly, the Court does not address this contention here.

A.      No.

Q.      You just wanted them to comply with the law?

A.      Correct.

Q.      The next sentence, after much consideration Mr. Bryant and I decided that opening a ServisFirst branch in Pasco County, Florida, which was outside of the area prescribed in the non-complete provision of the agreement would allow him to honor the noncompete provision and allow him to being [sic] working for ServisFirst.   Is that your legal conclusion that you reached?

Mr. Sansbury: Object to the form.

A.      I would not make a legal conclusion.

* * *

Q.      Did you get any professional opinion that related to the conclusion that's memorialized in the second sentence, paragraph four?

Mr. Sansbury: You can answer this yes or no, but don't tell him what the content of your opinion was.

A.      Yes.

Q.      Okay.   And you're not - - on instruction of counsel you're not going to answer what the content of that opinion was, whether or not that was compliant or not in the eyes of the counsel that you consulted?

A.      No, I'm not going to answer.

Q.      Okay.   And - - but the counsel that you consulted was the litigator on the opposite side of me right now?

A.    Yes.

(Doc. 464 at 7-8).

Based on this testimony, Centennial maintains that "[i]t is obvious that the only manner in which ServisFirst believes it 'could' comply with the [n]on-[c]ompete [a]greements is based upon the advice of counsel—Sansbury—as admitted by Broughton."    (Doc. at 8).    This argument also fails.

As noted above, ServisFirst has made clear in its response and at oral argument that it is not asserting either an advice of counsel defense or a defense that it had a good faith belief in the legality of its actions.    And, notwithstanding Centennial conclusory assertion to the contrary, it has not shown that ServisFirst must necessarily rely on such defenses to fend off Centennial's allegations.    In addition, as discussed previously, ServisFirst's references to its intentions in its affirmative defenses do not place attorney-client and/or work-product-protected matters at issue.    This is therefore not a case where a party seeks to raise a claim that will require the introduction of attorney-client and work-product protected information into evidence, and then attempts to invoke those protections as a means of shielding that information from disclosure.    *GAB Bus. Servs.*, 809 F.2d at 762 (citing *Home Insurance Co. v. Advance Machine Co.*, 443 So. 2d 165, 168 (Fla. Dist. Ct. App. 1983)).

Moreover, counter to Centennial's suggestion, the mere fact that ServisFirst—through Broughton—conferred with counsel with respect to the non-compete agreements does not, standing alone, mean that it waived its attorney-client and work-product protections by implication.    *Butterworth*, 2010 WL 11470895, at *6 (refusing

19

to find implied waiver of attorney-client or work-product protections simply because defendant's employee acknowledged in his deposition that he had consulted with in-house counsel) (citing *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1103, 1114-16 (D. Kan. 2006) (holding "no waiver" occurred when "testimony concerning reliance on counsel was elicited by plaintiffs' counsel in response to pointed questions from plaintiffs' counsel;" as such, "the testimony . . . does not indicate that defendant intends to use advice of counsel to justify any conduct on its part")).

This is true regardless of whether the advice ServisFirst received may have affected its state of mind.   As the court observed in *Guarantee Ins. Co.*:

> Advice [received from counsel] is not in issue [for purposes of an "at issue" waiver] merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner.   *The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.*

300 F.R.D. at 595 (quoting *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994)) (footnote omitted).

Here, Broughton did not engage in an affirmative step during his deposition to place advice of counsel at issue.   Instead, he simply answered questions asked of him by opposing counsel.   And, even then, Broughton did not disclose any attorney-client protected information, a point Centennial does not meaningfully contest.   *Blake v. Batmasian*, 2017 WL 10059251, at *9 (S.D. Fla. Oct. 5, 2017) (noting in FLSA case that "if deposition testimony does not actually reveal the substance of attorney-client

communications, there is no waiver"), *report and recommendation adopted*, 2018 WL 3829803, (S.D. Fla. Aug. 9, 2018); *Butterworth*, 2010 WL 11470895, at *6.

Centennial has therefore not carried its burden of showing that ServisFirst impliedly waived the attorney-client privilege or the work-product doctrine as a result of Broughton's above-cited deposition testimony.

## IV.

In addition to the above deficiencies, Centennial's motion is fatally infirm because it also fails to show that it is entitled to the expansive relief it seeks. Even were the Court to find that ServisFirst placed attorney-client or work-product protected information at issue through some affirmative act for its own benefit, the proper remedy (as noted above) would be for the Court to dismiss or strike the offending defense(s) or argument(s), not to find that that privilege or doctrine has been waived. *See, e.g., TheStreet.com, Inc. v. Carroll*, 20 So. 3d 947, 949 (Fla. Dist. Ct. App. 2009) ("[E]ven if the sword and shield doctrine were to apply in this case, the proper remedy would be to dismiss or strike petitioners' defenses and not to compel production of the very information claimed to be privileged."); Fla. Stat. § 90.510 ("In any civil case or proceeding in which a party claims a privilege as to a communication necessary to an adverse party, the court, upon motion, may dismiss the claim for relief or the affirmative defense to which the privileged testimony would relate."); *Cox*, 17 F.3d at 1417; *Kipnis*, 2017 WL 3840354, at *5-6. Centennial does not refer to this line authority in its motion, much less attempt to show why it does not apply.

Nor does Centennial demonstrate why it would be entitled to the broad subject-matter waiver of the attorney-client privilege and the work-product doctrine it seeks. *Lender Processing Servs., Inc. v. Arch Ins. Co.*, 183 So. 3d 1052, 1060 (Fla. Dist. Ct. App. 2015) ("When the attorney-client privilege is waived regarding a certain matter, the waiver is limited to communications on that same matter.") (citing *Courville v. Promedco of Sw. Fla., Inc.*, 743 So. 2d 41, 42 (Fla. Dist. Ct. App. 1999)).

V.

In light of the above, *Centennial Bank's Motion to Determine Scope of Attorney-Client Privilege and Work Product of Sansbury Firm in Light of Operation of the "At Issue" Doctrine* (Doc. 464) and seeking the production by ServisFirst and Michael Sansbury's law firm of "all documentation between them relating in any way to Bay Cities and Centennial through the first year of admitted conduct of banking business by" Defendants Bryant, Davey, and Murrin at ServisFirst is denied.

DONE and ORDERED in Tampa, Florida, this 4th day of March 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record