UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


CENTENNIAL BANK,

     Plaintiff,

v.                                    Case No: 8:16-cv-88-T-36CPT

SERVISFIRST BANK, INC., GREGORY
W. BRYANT, GWYNN DAVEY,
PATRICK MURRIN, and JONATHAN
ZUNZ,

     Defendants.
_____/


**O R D E R**

Before the Court are Plaintiff *Centennial Bank's Motion to Vacate Sansbury Disqualification Order, or Alternatively, Objections to the Same* (Doc. 583) and Defendant ServisFirst Bank, Inc.'s (ServisFirst) response in opposition (Doc. 595). With the benefit of oral argument and for the reasons discussed below, Centennial's motion is denied.

I.

This diversity action stems from Centennial's acquisition of Bay Cities Bank in 2015 and the subsequent resignation of four of Centennial's employees—Defendants Gregory Bryant, Patrick Murrin, Gwynn Davey, and Jonathan Zunz—all of whom

went to work at ServisFirst (a competitor of Centennial) shortly thereafter. In its operative complaint filed in November 2016, Centennial asserts various state-law claims against the Defendants, including for breach of contract, specific performance, misappropriation of trade secrets, conversion, fraudulent inducement, fraudulent omission, breach of fiduciary duty, and civil conspiracy. (Doc. 199). These claims largely pertain to the individual Defendants' alleged violations of various ethical, confidentiality, and contractual obligations, including non-compete agreements Centennial avers those Defendants had with the bank. *Id.*

In July 2019, following the close of discovery, Centennial moved to disqualify ServisFirst's counsel, Michael Sansbury, alleging that Sansbury was a "material witness in this case." (Doc. 458). That motion was premised in part on an email Bryant sent to Davey the month before the two departed Centennial, in which Bryant recounted a conversation he had with Sansbury and ServisFirst's Vice President of Human Resources, Dana Miller, regarding the non-compete agreements, among other topics. *Id.* Centennial argued that this email (as well as other evidence it had obtained) revealed that Sansbury "had personally insinuated himself into the recruiting process for ServisFirst with [Bryant, Murrin, Davey, and Zunz] and was therefore a first-hand participant." *Id.* at 8. As a result, Centennial maintained that Sansbury's disqualification was required under, *inter alia*, Rule 4-3.7 of the Florida Rules of Professional Conduct. *Id.* at 7-10.

In an Order issued in September 2019 (September 2019 Order), the Magistrate Judge then assigned to this case—the Honorable Julie S. Sneed—denied Centennial's

motion, finding that Centennial had not demonstrated that Sansbury's disqualification was warranted. (Doc. 544). Judge Sneed noted that, by its terms, Rule 4-3.7 "'generally is not implicated when a party does not intend to call its own lawyer as a witness,'" *id.* at 3 (quoting *Pharma Supply, Inc. v. Stein*, 2014 WL 4261011, at *5 (S.D. Fla. Aug. 28, 2014)), and that ServisFirst had specifically "disavow[ed] any intention of calling" Sansbury to testify at trial, *id.* (citation omitted). Judge Sneed also noted that, while an attorney may be subject to disqualification under Rule 4-3.7 if his testimony will be sufficiently adverse to his client's positions, Centennial had not made such a showing. *Id.* at 3-4.

Soon after Judge Sneed issued the September 2019 Order, she learned "that her child was a member of a Girl Scouts of the United States of America troop with . . . Murrin's child before he became a defendant in this case.[1] (Doc. 581). Although "Murrin [wa]s a stranger" to her, Judge Sneed nonetheless elected to recuse herself from the case "given the nature of this highly-contested matter and in an abundance of caution." *Id.* As a result of Judge Sneed's recusal, the undersigned was randomly selected to serve as the assigned Magistrate Judge for this action. (Doc. 582).

In its instant motion, Centennial makes various objections to Judge Sneed's September 2019 Order and requests that the Order be vacated pursuant to 28 U.S.C. § 455 based on the Judge's decision to disqualify herself. (Doc. 583). In a subsequent notice filed with the Court, Centennial requested that, for purposes of the

---

[1] Murrin was first named as a defendant in this action in November 2016.

undersigned's handling, Centennial's filing be deemed a "standalone motion to vacate" under section 455(a), and that its objections to Judge Sneed's September 2019 Order be preserved for subsequent consideration by the District Judge. (Doc. 587). As a result, the undersigned will address only Centennial's section 455(a) challenge to the September 2019 Order.

II.

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The purpose of this provision is "to promote public confidence in the integrity of the judicial process" and "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859-60, 865 (1988) (citations omitted).

Centennial's reliance on section 455(a) in support its vacatur request fails for a number of reasons. To begin, it incorrectly presupposes that there has been violation of section 455(a) in the first instance. "[J]udges are presumed to be impartial" and a litigant seeking to have a judge recused from a case "bears the burden of demonstrating an objectively reasonable basis for questioning the judge's impartiality." *Taylor v. Bradshaw*, 2014 WL 5325291, at *1 (S.D. Fla. 2014). The test in this regard "'is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" *Yeyille v. Miami Dade Cty. Pub. Sch.*, 654 F. App'x 394, 396

(11th Cir. 2016) (per curiam)[2] (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988)). A movant cannot meet this standard by making "unsupported, irrational, or tenuous allegations," *id.* (citing *Giles v. Garwood*, 853 F.2d 876, 878 (11th Cir. 1988) (per curiam)), or—except in rare circumstances—by pointing to a judge's prior rulings, *Litsky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Centennial has not shown through its filings related to the recusal issue that Judge Sneed was required to disqualify herself under section 455(a). As Judge Sneed noted in her recusal Order, she does not know Murrin, and the only commonality the two share is that their children were in the same Girl Scouts troop before Murrin became a defendant in this action. (Doc. 581). While it is true that Judge Sneed elected to remove herself from the case, she did so only in light of the "highly-contested" nature of this action and "in an abundance of caution." *Id.* Centennial does not cite anything in its motion (or in its sealed submissions that preceded Judge Sneed's recusal) that would cause an "objective, disinterested, lay observer fully informed of the facts" to entertain a doubt—much less a "significant" one—regarding Judge Sneed's impartiality.[3] *Yeyille*, 654 F. App'x at 395.

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

[3] The cases Centennial cites in its brief, far from buttressing its vacatur request, actually undermine it. In *United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989), for example, the Court concluded that a judge who found a defendant guilty following a bench trial should have recused himself because (1) the judge met in chambers during the trial with the spouse of one of the defendant's witnesses, who was also a "close personal friend[]" of the judge's wife; (2) "[t]he judge indicated on several occasions that he held [the defendant] responsible for putting

Even assuming *arguendo* that Judge Sneed's recusal was mandated under section 455(a), vacatur of her September 2019 Order would not be warranted under the circumstances present here. It is well settled that a court is not compelled to vacate decisions made by a judge even where the judge's recusal is required. *Liljeberg*, 486 U.S. at 862 ("There need not be a draconian remedy for every violation of [section] 455(a) . . . Although [section] 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty."). Instead, in deciding whether to vacate an order based on a section 455(a) violation, a court should consider: (1) "the risk of injustice to the parties in the particular case;" (2) "the risk that the denial of relief will produce injustice in other cases;" and (3) "the risk of undermining the public's confidence in the judicial process." *Id*. at 864; *see also In re Sch. Asbestos Litig.*, 977 F.2d 764, 785 (3d Cir. 1992) (applying *Liljeberg* considerations to prior rulings made by district judge who was disqualified under section 455(a)). A review of these considerations is also fatal to Centennial's motion to vacate.

With respect to the first *Liljeberg* factor, Centennial does not identify in its motion any particular circumstance that indicates a risk of injustice to it, nor can it

---

him in such a difficult position," including commenting during the trial that the defendant may have been abusing the recusal issue as his "ace in the hole;" and (3) the judge himself even "expressed near certainty [during the proceedings] that he should disqualify himself." *Id*. at 738-40, 745. Centennial's reliance on *United States v. S. Fla. Water Mgmt. Dist.*, 290 F. Supp. 2d 1356 (S.D. Fla. 2003)—where the judge participated in media interviews and made other comments that would cause an "objective observer" to "reasonably doubt" whether some of the parties "would be treated impartially," *id.* at 1361—is similarly inapposite.

credibly argue that the purported section 455(a) violation was either "egregious" or "readily apparent." *United States v. Cerceda*, 172 F.3d 806, 814 (11th Cir. 1999) (finding party seeking vacatur did not meet its burden under first *Liljeberg* factor where section 455(a) violation, although "established," was "neither egregious nor clear to the judge"). On the other hand, ServisFirst—which also bears a burden of showing that vacatur poses a risk of injustice to it, *id.*—could argue it would be unfair to annul the September 2019 Order given the minimal nature of the alleged breach of section 455(a).

An evaluation of the second *Liljeberg* factor similarly militates against vacatur. As noted above, Judge Sneed does not know Murrin outside the context of this litigation, and Centennial has not shown how—once Murrin was named as a Defendant in this action in November 2016—Judge Sneed would have been aware that Murrin's child and hers were in the same Girl Scout group *prior* to that time frame. As such, "there is little risk that denying relief here will produce injustice in other cases." *Id*.

As to *Liljeberg*'s third prong, this is not a situation where declining to vacate a court order under section 455(a) will risk undermining the public's confidence in the judicial process. This is particularly true since the alleged violation is "neither egregious nor clear cut" and, indeed, is nonexistent. *Id*. at 815-16. These considerations, among others, "factor[] into the public confidence calculus" and counsel against vacatur under this prong. *Id*.

III.

In light of the above, Centennial's motion to vacate Judge Sneed's September 2019 Order is denied.

DONE and ORDERED in Tampa, Florida, this 4th day of March 2020.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record