UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


CENTENNIAL BANK,

     Plaintiff,

v.                                Case No: 8:16-cv-88-T-36CPT

SERVISFIRST BANK, INC., GREGORY
W. BRYANT, GWYNN DAVEY,
PATRICK MURRIN, and JONATHAN
ZUNZ,

     Defendants.
_____/


**O R D E R**

     Before the Court are three motions filed by Plaintiff Centennial Bank (Centennial): (1) *Centennial's Motion to Compel Discovery from [Defendant Gregory] Bryant and for Sanctions* (Doc. 532); (2) *Centennial's Motion to Compel Discovery from [Defendants Gwynn] Murrin and [Patrick] Davey [as well as] for Sanctions* (Doc. 600); and (3) *Centennial's Motion for an Adverse Inference due to Davey and Murrin's Spoliation of Evidence* (Doc. 490). For the reasons discussed below, Centennial's motions to compel are granted in part and denied in part, and Centennial's motion for an adverse inference is denied without prejudice.

# I.

## *Background*

For purposes of the instant motions, a lengthy recitation of the tumultuous history of this action is not required. In brief, Centennial avers in its operative complaint that it acquired Bay Cities Bank (Bay Cities) in 2015 and retained several of Bay Cities' employees—namely, Defendants Gregory Bryant, Patrick Murrin, Gwynn Davey, and Jonathan Zunz[1]—as part of that acquisition. (Doc. 199). Centennial alleges that, in connection with their positions, Bryant, Murrin, Davey, and Zunz were subject to employment agreements, which included provisions governing the maintenance of confidential information, non-competition, and non-solicitation of Centennial's customers and employees. *Id.*

Shortly after the acquisition of Bay Cities, however, Bryant, Murrin, Davey, and Zunz simultaneously left Centennial and went to work at Defendant ServisFirst Bank, Inc. (ServisFirst), a competitor of Centennial. *Id.* Centennial asserted forty-eight state-law claims in its operative complaint that stemmed from Bryant, Murrin, Davey, and Zunz's simultaneous resignation and relocation to ServisFirst, including for violations of their employment agreements.[2]

---

[1] According to Centennial, Bryant was the president and CEO of Bay Cities, Murrin was the chief risk manager, and Davey was the market president for Hillsborough County. (Doc. 199). Zunz was a close friend of Bryant, a protégé of Davey, and a senior commercial lender with several years of experience at Bay Cities. *Id.*

[2] The Court later dismissed six of the forty-eight counts, including Count 17 (Bryant's Breach of the Employee Non-Solicitation Clause) and Count 21 (Davey's Breach of the Non-Compete Provision). (Doc. 251). Most of the claims, however, remain pending.

The Defendants thereafter answered Centennial's operative complaint and asserted various affirmative defenses. (Docs 261, 263-66). One of the Defendants, Bryant, also filed a counterclaim for defamation against Centennial and its Chairman and CEO, John Allison. (Doc. 263).

Discovery in this action has been ongoing since 2016, except during a stay between November 2017 and October 2018 due to a then-pending criminal investigation. (Docs. 89, 316, 354). That discovery (as well as the litigation as a whole) has been—to put it mildly—both contentious and hard-fought on all sides. In fact, motions to compel discovery were filed even before the Court entered its first Case Management and Scheduling Order. (Docs. 87-89).

Centennial's primary focus during the discovery process—at least with respect to the individual Defendants—has been Murrin and Davey. That focus began in April 2016 even before Murrin and Davey were named as Defendants in the action when Centennial filed a motion challenging their compliance with the bank's non-party subpoenas. (Doc. 88).

Several months later, as a result of allegations by Centennial that Murrin had deleted emails in 2015 (Doc. 171 at 2), Murrin engaged Adam Sharp of E-Hounds, Inc. (E-Hounds) to conduct searches of Murrin's electronic devices, as well as to image and preserve the data from those devices (Doc. 175). After Centennial objected to E-Hounds' procedures (and while Davey and Murrin were still non-parties), Centennial, Davey, and Murrin agreed to the appointment of a neutral forensic expert as well as a protocol for dealing with electronically stored information (ESI) in an effort to

streamline the discovery process. (Docs. 171, 190). The Court adopted and approved that agreement by way of an Order entered in September 2016 (the ESI Protocol Order).[3] (Doc. 192).

In relevant part, the ESI Protocol Order appointed Dwayne Denny, a computer forensics consultant, to "produce mirror images of all mobile devices, computers and portable or detachable hard drives in [Davey and Murrin's] personal possession, custody, or control and used by [Davey and Murrin] since January 1, 2015, as well as [Davey and Murrin's] respective Gmail and iCloud accounts." *Id.* at 2-3. The Order also directed that Davey and Murrin make all of their computer equipment available to Denny within ten days of the Order, as well provide Denny with access to their accounts. *Id.* at 3. In addition, the Order established a procedure by which Denny was to analyze the records and then turn over those records that were relevant to Davey and Murrin's counsel for their review. Davey and Murrin's counsel were then to produce a filtered set of relevant, non-privileged materials to Centennial along with a privilege log. *Id.* at 5.

Independent of the ESI Protocol Order, all of the parties—including ServisFirst, Bryant, and Zunz—stipulated to the entry of a protective order to safeguard confidential information disclosed during the discovery process. (Docs. 253, 254). That stipulated protective order was also adopted by the Court in September 2016 and included an "attorney eyes only" provision for "highly

---

[3] The ESI Protocol Order applied solely to Centennial, Murrin, and Davey, not to ServisFirst, Bryant, or Zunz.

confidential" information, as well as a process for objecting to claims of confidentiality.   (Doc. 253-1 at 2, 7).

In November 2018, after the above-referenced stay was lifted, the Court entered a Second Amended Case Management and Scheduling Order, which, among other things, set a discovery deadline of June 7, 2019.[4]   (Doc. 365).   The Court also resolved at that point several pending motions that had been filed prior to the implementation of the stay.   Of significance here, those motions included a motion by Centennial seeking partial relief from the ESI Protocol Order to enable it to pursue evidence of alleged spoliation by Davey and Murrin (Doc. 255), as well as a motion by Centennial requesting an adverse inference due to Davey and Murrin's alleged failure to preserve evidence (Doc. 256).   The Court granted in part Centennial's motion seeking relief from the ESI Protocol Order based on the parties' agreement that reports from the Court-appointed forensic expert (Denny) and additional files in their native format would be produced.   (Doc. 381).[5]   The Court, however, denied Centennial's spoliation motion without prejudice.   (Doc. 386).

In May 2019, Centennial moved for a show cause order seeking to have the Court hold Murrin in contempt for failure to comply with the ESI Protocol Order. (Doc. 397).   That motion stemmed from Centennial's deposition of Murrin, in which

_____

[4] In October 2019, Centennial moved to reopen discovery to conduct additional depositions. (Doc. 599).   That request remains pending.

[5] According to Murrin and Davey, the native format files were provided in early 2019.   (Doc. 612 at 4).   That production appears to form the basis for Centennial's current motion to compel and for sanctions against Murrin and Davey.   (Doc. 600).

Murrin testified that he had not construed the ESI Protocol Order to cover a family computer he obtained in 2016, an external hard drive he used primarily to maintain family photographs, and an external hard drive he employed mainly to store iTunes purchases. The Court denied Centennial's motion in July 2019, finding that Murrin's interpretation of the scope of the ESI Protocol Order was reasonable and that he had shown substantial good-faith compliance with the Order. (Doc. 460).

In June 2019, Centennial again filed a motion to compel relative to Murrin, this time seeking a Court order directing that E-Hounds' images of Murrin's devices be produced so that Centennial could show he had deleted "copious amounts of data." (Doc. 402). The Court denied that motion in September 2019, finding that Centennial had not established that the E-Hounds images would reveal any new information. (Doc. 539). The Court noted in this regard that, according to Murrin, "any deletions—which [Murrin] generally denie[d]—were done either before the E-Hounds imaging or after [the] imaging" performed by the Court-appointed forensic expert, Denny. *Id.* at 3 (citing Doc. 402 at 74-75, 81-82, 118).[6]

By way of the instant motions, Centennial again seeks the imposition of spoliation sanctions against both Murrin and Davey (Doc. 490), as well as the production of documents and sanctions against Bryant, Murrin, and Davey (Docs. 532, 600). The Defendants have filed their respective responses to these motions

---

[6] Centennial objected to that Order entered by Magistrate Judge Julie Sneed (Doc. 563), which the Court overruled (Doc. 662).

(Docs. 549, 612, 628), and, in connection with its spoliation motion, Centennial has submitted a reply as well as a supporting declaration from Denny (Doc. 629).

## II.

*Centennial's Motion to Compel Discovery from Bryant and for Sanctions*

The Court begins with Centennial's motion directed to Bryant. (Doc. 532). To understand the dispute at issue in this motion, some background is necessary.

In May 2016, Centennial filed a motion to compel relative to requests for production it had served on Bryant months earlier. (Doc. 124). Those production requests sought, among other materials, communications between ServisFirst and Bryant from January 1, 2015, through the present date; documents reflecting Bryant's efforts to market to Centennial's customers; and documents reflecting Bryant's efforts to evaluate any credit relationship for purposes of actually or potentially documenting or funding loans to Centennial's customers. (Doc. 532 at 6-8). In response to these discovery requests, Bryant provided a total of approximately three hundred pages of materials.

Deeming Bryant's production deficient, Centennial sought relief from the Court, arguing that Bryant had failed to provide a privilege log and that certain of his responses, including those relating to emails from his personal email account, were insufficient. (Doc. 124). At a July 2016 hearing on the matter, Bryant—through counsel—informed the Court that he had produced all non-privileged, responsive documents in his possession, custody, or control. (Doc. 532 at 8-11). The Court subsequently denied Centennial's motion to compel. (Doc. 165).

Nearly three years later, in April 2019, Centennial served Bryant with a separate set of production requests seeking communications between Bryant and certain Centennial customers with substantial commercial loans, including an individual named Kirk Eicholtz. *Id.* at 11; *see also* (Doc. 532-4). In response to these document requests, Bryant produced seven pages of text message communications in May 2019. (Doc. 532-5). In August 2019, several months after Bryant's deposition, the close of discovery, and the filing of motions for summary judgment, Bryant produced "a sixty-six (66) page PDF of partially redacted, and substantially incomplete screenshots reflecting text message communications dating back to 2016 between him and [Eicholtz]." (Doc. 532 at 2); *see also* (Doc. 532-2).

Centennial's instant motion to compel is in response to this later disclosure by Bryant. In its motion, Centennial requests that the Court: (1) compel Bryant to produce a full, complete, and unredacted version of the August 2019 production; (2) compel Bryant to produce any and all other responsive documents; (3) deem any objections as untimely, improper, and waived; (4) compel Bryant to produce all of his personal devices for forensic analysis; and (5) sanction Bryant by requiring him to pay Centennial's attorney fees and costs associated with bringing this motion, and— depending on the results of the forensic analysis—either (a) deem the factual allegations in Centennial's operative complaint regarding Bryant to be true; (b) refuse to permit Bryant to support or oppose the claims or defenses set forth in Centennial's operative complaint; or (c) allow Centennial to conduct supplemental discovery from Bryant, including re-opening his deposition to address the issues raised by his untimely

8

production; and (6) fashion any other appropriate remedy that the Court deems appropriate. (Doc. 532 at 23). In support of these requests for relief, Centennial relies on, among other things, the representation Bryant made at the July 2016 hearing that he had produced all non-privileged documents in his possession, custody, or control, which were responsive to the earlier document requests. (Doc. 532 at 8-11).

After careful consideration of the matter, the Court finds that Centennial's expansive requests for relief amount to an overreach that is, in substantial measure, disproportionate and unsupported given the circumstances present in this case.

Rules 26 and 37 of the Federal Rules of Civil Procedure establish the framework for resolving the instant dispute. Rule 26(e) provides, in pertinent part, that any party who has responded to discovery requests—including requests for production made under Rule 34—must supplement or correct their responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

A party that believes another party's discovery responses are evasive or incomplete may move to compel disclosure. Fed. R. Civ. P. 37(a)(4). If such a motion to compel is granted or if disclosure is provided after the motion is filed, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion,

including attorney's fees" unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."   Fed. R. Civ. P. 37(a)(5).

A violation of the duty to supplement incomplete responses to requests for production can independently trigger the imposition of sanctions.   In particular, Rule 37(c)(1) states that, "[i]f a party fails to provide information . . . as required by [Rule 26(e) governing supplementation], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1).[7]   Rule 37(c)(1) also provides that, in addition to or in lieu of exclusion, courts may (1) "order payment of reasonable expenses, including attorney's fees, caused by the failure;" (2) "inform the jury of the party's failure;" or (3) "impose other appropriate sanctions," including directing that "designated facts be taken as established for purposes of the action, as the prevailing party claims" or "prohibiting the disobedient party from supporting or opposing designated claims or defenses."   Fed. R. Civ. P. 37(c)(1) (incorporating the remedies set forth in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)).

Where, as here, a party seeks to enforce Rule 37's sanctions, "[t]he burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."   *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir.

---

[7] Centennial does not appear to seek exclusion of the text messages at issue.

2009) (quotation omitted). In addressing this issue, reviewing courts consider the nondisclosing party's explanation for the failure, the importance of the information at issue, and whether the opposing party is prejudiced by the discovery violation. *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)).

In the end, the Court has substantial discretion in deciding whether and the extent to which sanctions should be imposed under Rule 37. *Long v. E. Coast Waffles, Inc.*, 762 F. App'x 869, 870-71 (11th Cir. 2019) (citations omitted); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) (citations omitted). On appeal, a court's resolution of a discovery violation will be upheld absent an abuse of that broad discretion. *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019).

In this case, it is uncontested that Bryant's August 2019 supplemental production of additional text messages was made outside of the discovery period. There is also no substantial dispute that the text messages were responsive to Centennial's discovery requests. Bryant, however, refutes Centennial's efforts to impute a nefarious motive or conspiratorial intent to hide information, explaining that: (1) the text messages involving him and Eicholtz between December 2016 and March 2018 were found on a rarely used family iPad after the discovery deadline passed; (2) he alerted his counsel shortly after finding those text messages; and (3) Bryant's counsel turned over those relevant communications to Centennial in a prompt manner and in a good-faith effort to supplement its prior production. (Doc. 549).

While the Court is somewhat troubled by Bryant and his counsel's apparently less than fulsome effort to ensure that Bryant had searched *all* devices in his possession, custody, or control for responsive text messages, as was indicated at the July 2016 hearing, the Court finds Bryant's explanation of the supplemental production to be reasonable and adequate. The Court accordingly determines that there is not a sufficient basis on the record before it to conclude that Bryant's nondisclosure was intentional or that such nondisclosure necessarily means he has additional responsive documents, which he has yet to produce.

The Court is also not persuaded that the information contained within the text message was of such importance to Centennial that it would have altered its approach to discovery. As Bryant points out (Doc. 549 at 11), Centennial was well aware of Bryant's relationship with Eicholtz before the close of discovery and even sought the Court's permission to depose Bryant for an extra five hours relying, in part, upon an affidavit from Eicholtz outlining their dealings (Docs. 400; Doc. 405 at 124-29).[8] In addition, Centennial apparently subpoenaed records from Eichholtz himself, although it is not clear whether Eicholtz was asked for, or disclosed, text messages between him and Bryant. (Doc. 549 at 11). And, other than stating that it would have questioned Bryant more thoroughly at his deposition about his business entanglements with Eicholtz, Centennial fails to explain the significance of the belatedly disclosed text

---

[8] The Court denied that motion in July 2019 due to Centennial's failure to establish good cause. (Doc. 463).

messages or how it was harmed in the discovery process by not having those text messages at an earlier juncture.

Furthermore, although Centennial complains it did not have the benefit of the Eicholtz text messages for purposes of responding to the Defendants' summary judgment motions, the reply Centennial filed in connection with its own summary judgment motion days after it received the text messages contains multiple references to the relationship between Bryant and Eichholtz, but makes no mention of the text messages. (Doc. 517). It is also noteworthy that Centennial apparently has not moved to supplement the summary judgment record with these text messages, even though it has sought and been granted leave to supplement the record with other materials. (Docs. 618, 644).

That said, the Court does find merit to Centennial's contention that it was improper for Bryant unilaterally to redact the text messages before he produced them given the particular facts and history of this case. The Court agrees in this regard with the general proposition, propounded by Centennial, that a party is ordinarily not permitted to omit portions of a document it deems irrelevant. *See* (Doc. 532 at 16-17). While it recognizes that a text message chain is not a classic "document"—as Bryant maintains—the Court nonetheless finds that Bryant should have disclosed the entire text chain, in unredacted form, under the circumstances present here. These circumstances include the fact that the parties have an agreed-upon confidentiality protective order in place, which permits Bryant to designate undisclosed text messages

13

as "confidential" or "highly confidential" if such designations are warranted.[9]  *See* (Docs. 253-1, 254).

## III.

*Centennial's Motion to Compel Discovery from Murrin and Davey [as well as] for Sanctions*

Centennial's next motion pertains to Murrin and Davey, with whom, as noted above, Centennial has been battling over discovery matters since the early stages of this litigation.   In its motion, Centennial outlines Murrin and Davey's alleged pattern of obfuscation, recalcitrance, and dilatoriness in providing ESI, and points out that, long after these two Defendants should have complied with their discovery obligations, they produced a large amount of data in 2019 that revealed even more missing information yet to be produced.   (Doc. 600).   In particular, Centennial asserts that, as evidenced in Denny's supporting affidavit, the late production demonstrates the existence of: (1) several additional devices that had not been identified by either Murrin or Davey, nor provided to Denny for imaging; (2) a previously-undisclosed email address for Murrin (pmurrin1@tampabay.rr.com); (3) two previously-undisclosed iCloud storage plans for Murrin and Davey pertaining to the email addresses pmurrin1@tampabay.rr.com and gwynndavey@gmail.com, respectively; and (4) forensic analysis results that undermine Davey and Murrin's prior representations to the Court regarding the sufficiency of their discovery responses.   *Id.*

---

[9]  The Court leaves it to counsel to determine the appropriate designation, if any, to be applied. And, should Centennial seek to challenge such designation, it may, after a good-faith conferral on the matter, bring an appropriate motion.

Centennial submits the evidence shows that these two Defendants continue to deliberately withhold, conceal, and destroy relevant evidence in violation of their discovery obligations and the Court's prior Orders, including the ESI Protocol Order. *Id.*[10]

To remedy this pattern, Centennial requests that the Court: (1) compel Murrin to provide Denny with access to the iCloud account associated with the email address pmurrin1@tampabay.rr.com and any other undisclosed backup account that Murrin used in connection with his mobile Apple devices and his MacBook Pro, including, but not limited to, a previously undisclosed iPhone with IMEI number 353256070407979 (the 7979 iPhone); (2) compel Davey to provide Denny with access to the iCloud account associated with the email address gwynndavey@gmail.com and any other undisclosed backup account that Davey used in connection with her Apple mobile devices; (3) compel Murrin, Davey, and their consultant (Sharp) and his firm (E-Hounds) to produce: (a) Sharp's chain of custody forms for all evidence provided to him, including a description and the evidence number Sharp assigned to each device and account; (b) a log of the dates of Sharp's data preservation and forensic imaging for each device and account, as well as the method used; (c) a log of the universally unique identifier for any backups and associated devices, and (d) the plist logs for all Apple mobile devices; (4) deem any objections by Murrin and Davey to be untimely and waived; and (5) impose sanctions upon Murrin and Davey, including requiring

---

[10] As the Court previously mentioned, Murrin and Davey's alleged spoliation of evidence is the subject of the third motion addressed herein.   (Doc. 490).

them to pay Centennial's attorney fees and costs associated with bringing this motion. (Doc. 600 at 1-2).

Unlike the above motion related to Bryant, the instant motion involves Murrin and Davey's alleged violation of a Court Order.   As such, the Court looks to Federal Rule of Civil Procedure 37(b), which authorizes the imposition of "just" sanctions against a party that violates a discovery order.   Fed. R. Civ. P. 37(b)(2); *see also* Fed. R. Civ. P. 16(b) (authorizing the court to impose sanctions pursuant to Rule 37 for a party's "fail[ure] to obey a scheduling or other pretrial order").   Those possible sanctions include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Regardless of whether the Court imposes any such sanctions, once it finds that a party has failed to comply with its discovery order, it "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."   Fed. R. Civ. P. 37(b)(2)(C).

16

Strict adherence to Rule 37 serves to thwart parties from "flouting discovery orders." *Reed v. Fulton Cty. Gov't*, 170 F. App'x 674, 675 (11th Cir. 2006) (per curiam) (quotation omitted). As such, sanctions "are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process." *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982) (per curiam).

As above, the Court has substantial discretion in deciding whether and the extent to which it imposes sanctions under Rule 37. *Chudasama*, 123 F.3d at 1366. That discretion, however, is not unbridled. It is axiomatic that the magnitude of the sanctions must be "reasonable in light of the circumstances." *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1453 (11th Cir. 1985) (noting that permissible purposes of sanctions are to compensate the court or parties for added expenses, compel discovery, deter misconduct, or punish the guilty party) (quotation marks and footnote omitted).

Upon thorough consideration of the matter, the Court finds Centennial's requests for relief on this motion are generally warranted. Murrin and Davey do not dispute in their response to Centennial's motion that the sought-after devices and information—if they existed—fall within the ambit of the Court's prior Orders, including the ESI Protocol Order. Yet, Murrin and Davey in their response mostly evade a number of the issues presented by Centennial,[11] fail to proffer persuasive argument or sufficiently support their claims (for example, with a sworn affidavit), and attempt to shift the blame for their own apparent efforts to fog the discovery of

---

[11] For example, Murrin does not address the 7979 iPhone at all in the response.

x

17

information they agreed to produce as early as 2016. (Doc. 612). By contrast, the sworn declaration submitted by Denny largely buttresses Centennial's claims regarding Murrin and Davey's alleged previously unidentified and undisclosed devices, email addresses, and storage plans. (Doc. 629).

The frustration at how the discovery process has proceeded in this case is obvious and extends to both the plaintiff and the defense. The Court, however, sees troubling patterns, which cannot be countenanced. The plague is on both houses here, but, in relation to this discovery dispute in particular, Centennial's position holds greater sway and is supported, in the main, by the Denny affidavit. In light of this showing, Centennial's requests for inspection, imaging, and access to Murrin and Davey's accounts and devices is proportional, reasonable, and appropriate under the circumstances present here. In addition, given the ongoing disputes regarding Murrin and Davey's preservation of evidence, production of the requested reports from Sharp and E-Hounds is justified.[12] These reports could put many of these disputes to rest and may also shed light on the veracity of several statements made by Murrin and Davey to which Centennial alludes in its motion.

On the other hand, the Court finds that Centennial again overreaches in seeking a complete waiver of all objections. Such a remedy is unwarranted at this point. Rather, as has been the process to date in this case, counsel for Murrin and Davey shall

---

[12] Unlike in the previous circumstances in which the Court found that Centennial had not shown the E-Hounds imaging would reveal new information (Docs. 539, 662), Centennial makes a sufficient showing here that discovery of the sought-after ESI—which relates to previously undisclosed devices and information—is relevant, reasonable, and proportionate.

review the production for responsiveness, privilege, or other protections (including with respect to the Sharp/E-Hounds reports) and provide a log to Centennial of all items withheld.

Finally, the Court denies Centennial's request for attorney's fees and costs. At the hearing on this matter, defense counsel asserted that a proper conferral was not undertaken pursuant to Local Rule 3.01(g) prior to Centennial filing this motion. In response, Centennial's counsel could not confirm that such a conference had, in fact, occurred, even though a 3.01(g) certification had been appended to its motion (Docs. 600 at 15; 633 at 126-129). In light of these circumstances, Centennial's request for attorney's fees and costs fails. The Court cautions both sides, however, that it will not hesitate to revisit the matter of fee-shifting under Rule 37 if the parties and counsel engage in any gamesmanship in contravention of, *inter alia*, the Federal Rules of Civil Procedure, the Middle District of Florida's Discovery Handbook, and the Local Rules.

IV.

*Centennial's Motion for an Adverse Inference due to*
*Davey and Murrin's Spoliation of Evidence*

Given the Court's ruling in section III, *supra*, the Court denies without prejudice Centennial's motion for an adverse inference based on alleged spoliation. (Doc. 490). While the Court understands that the parties have expended time and effort to brief this issue, it appears that the production of additional information, reports, and access to accounts (addressed above) may substantially alter the facts surrounding Murrin and Davey's alleged spoliation. Centennial may renew its motion following Murrin and Davey's compliance with this Order.

V.

In light of the above, the Court ORDERS as follows:

1.      *Centennial's Motion to Compel Discovery from Bryant and for Sanctions* (Doc. 532) is granted in part and denied in part.

2.      Within seven (7) days of the date of this Order, Bryant shall provide an unredacted version of the text message chain that was produced in redacted form in August 2019.

3.      *Centennial's Motion to Compel Discovery from Murrin and Davey [as well as] for Sanctions* (Doc. 600) is granted in part and denied in part.

4.      Within ten (10) days hereof:

    a.   Murrin shall provide Denny access to the iCloud account associated with the email address pmurrin1@tampabay.rr.com and any other undisclosed backup account that Murrin used in connection with his mobile Apple devices and his MacBook Pro, including, but not limited to, the iPhone with the IMEI number 353256070407979 (i.e., the 7979 iPhone);[13]

    b.   Davey shall provide Denny with access to the iCloud account associated with the email address gwynndavey@gmail.com and any other

---

[13] The Court expects that Murrin will make every reasonable effort to obtain his password for this iCloud email account, including, if necessary, by contacting the appropriate provider to ascertain how to access the account.  Additionally, Murrin shall endeavor to provide (or explain under oath why he cannot provide) access to this iCloud account and the 7979 iPhone.

undisclosed backup account that Davey used in connection with her Apple mobile devices;

    c.    Murrin and Davey shall direct their consultant, Adam Sharp, and/or his firm, E-Hounds, to produce following counsel's review for privilege or other protections: (i) Sharp's chain of custody forms for all evidence provided to Sharp, including a description and the evidence number Sharp assigned to each device and account, (ii) a log of the dates of Sharp's data preservation and forensic imaging for each device and account, as well as the method used, (iii) a log of the universally unique identifier for any backups and associated devices, and (vi) the plist logs for all Apple mobile devices Sharp obtained from Murrin and Davey.

5.    To the extent not granted hereby, Centennial's motions to compel (Docs. 532, 600) are denied.

6.    *Centennial's Motion for an Adverse Inference due to Davey and Murrin's Spoliation of Evidence* (Doc. 490) is denied without prejudice.

DONE and ORDERED in Tampa, Florida, this 4th day of March 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record