UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTENNIAL BANK,

     Plaintiff,

v.                                    Case No: 8:16-cv-88-CEH-CPT

SERVISFIRST BANK, INC., GREGORY
W. BRYANT, GWYNN DAVEY,
PATRICK MURRIN, and JONATHAN
ZUNZ,

     Defendants.
_____/

**O R D E R**

Before the Court are: (1) Plaintiff *Centennial Bank's [Centennial] Motion for Order to Show Cause Why [Defendant Gywnn] Davey Should not be Found in Contempt of Court for Failure to Comply with the Court's ESI Orders* (Doc. 697); (2) Defendants *Gwynn Davey and Patrick Murrin's Motion for Clarification Regarding the Court's Order on Centennial's Motion to Compel Discovery from Murrin and Davey [as well as] for Sanctions* (Doc. 699); (3) *Centennial's Motion for Sanctions against [Defendants] ServisFirst, Davey, and Murrin* (Doc. 711); and (4) computer forensic consultant *Dwayne Denny's Amended Motion to Allow Filing of Affidavit and Supporting Exhibits under Seal, or, in the Alternative, for Leave to File*

*with Redacted Personal Information* (Doc. 712).   For the reasons discussed below, Centennial's motion for an order to show cause is denied; Davey and Murrin's motion for clarification is granted in part and denied in part; Centennial's motion for sanctions is denied; and Denny's amended motion to file his affidavit is granted in part and denied in part.

I.

The background of this case is largely recounted in a prior Order of the Court (Doc. 667) but bears repeating here, along with some supplementation.   The facts set forth herein are derived, in part, from Centennial's operative complaint.   (Doc. 199).

In 2015, Centennial acquired Bay Cities Bank (Bay Cities) and retained several of Bay Cities's employees as a result of that acquisition, including Murrin (who was Bay Cities's chief risk manager) and Davey (who was the market president for Hillsborough County).   (Doc. 199).   In connection with their positions, Murrin and Davey were subject to employment agreements, which included provisions governing non-competition, the maintenance of confidential information, and the non-solicitation of Centennial's customers and employees.   *Id.*

Shortly after the acquisition of Bay Cities, Murrin and Davey, along with co-Defendants Gregory Bryant and Jonathan Zunz, simultaneously left Centennial and went to work for a competitor, ServisFirst Bank, Inc. (ServisFirst).   *Id.*   Based on these events, Centennial asserts forty-eight state-law causes of action in its operative

complaint, including claims for Murrin and Davey's alleged violations of their employment agreements.[1]   *Id.*

In their answer to Centennial's allegations, the Defendants denied any wrongdoing and asserted various affirmative defenses.   (Docs. 261, 263–66).   One of the Defendants, Bryant, also filed a counterclaim for defamation against Centennial and its Chairman and Chief Executive Officer, John Allison.   (Doc. 263).

Discovery in this action has been ongoing since 2016, except during a stay between November 2017 and October 2018 due to a then-pending criminal investigation.   (Docs. 89, 316, 354).   As the Court has previously observed, that discovery (as well as the litigation as a whole) has—to put it mildly—been both contentious and hard-fought on all sides.   In fact, motions to compel discovery were filed even before the Court entered its first Case Management and Scheduling Order. (Docs. 87–89).

Centennial's primary focus during the discovery process—at least with respect to the individual Defendants—has been Murrin and Davey.   That focus began in April 2016 before Murrin and Davey were even named as defendants in the action when Centennial filed a motion challenging their compliance with the bank's non-party subpoenas.   (Doc. 88).

---

[1] The Court has since dismissed six of these forty-eight counts, including Count 21 (Davey's Breach of the Non-Compete Provision).   (Doc. 251 at 14–29).   Most of the claims remain pending, however.

Several months later, as a result of Centennial's allegations that Murrin deleted emails in 2015 (Doc. 171 at 2), Murrin and Davey engaged Adam Sharp of E-Hounds, Inc. (E-Hounds) to conduct searches of their electronic devices, as well as to image and preserve the data from those devices (Doc. 175 at 2).   After Centennial objected to E-Hounds' procedures (and while Murrin and Davey were still non-parties), Centennial, Murrin, and Davey agreed to both the appointment of a neutral forensic expert and a protocol for dealing with electronically stored information (ESI) in an effort to streamline the discovery process.   (Docs. 171, 190).   The Court approved and adopted that agreement by way of an Order entered in September 2016 (hereinafter, ESI Protocol Order).[2]   (Doc. 192).

In relevant part, the ESI Protocol Order appointed a computer forensics consultant, Dwayne Denny (who was and remains Centennial's computer forensic expert but who was intended to be impartial for this purpose), to "produce mirror images of all mobile devices, computers[,] and portable or detachable hard drives in [Murrin and Davey's] personal possession, custody, or control and used by [Murrin and Davey] since January 1, 2015, as well as [Murrin and Davey's] respective Gmail and iCloud accounts."   *Id.* at 2–3.   The Order also directed that Murrin and Davey make all of their computer equipment available to Denny within ten days of the Order, and provide Denny with access to their accounts.   *Id.* at 3.   In addition, the Order

---

[2] The ESI Protocol Order applied solely to Centennial, Murrin, and Davey, and not to ServisFirst, Bryant, or Zunz.   (Doc. 192)

established a procedure by which Denny was to turn over the records that were pertinent to Murrin and Davey's counsel for their review. *Id.* at 4. Murrin and Davey's counsel were then to produce a filtered set of responsive, non-privileged materials to Centennial, along with a privilege log. *Id.* at 5. Finally, of significance to Denny's amended motion, the Order stated that "Denny [was] not to maintain a copy of any data or documents recovered from [Murrin and Davey];" was "not to disclose any of his findings to Centennial or any other third-party;" and was to submit an affidavit certifying he had complied with these requirements. *Id.* at 4-5.

Independent of the ESI Protocol Order, all of the parties—including ServisFirst, Bryant, and Zunz—stipulated to the entry of a protective order to safeguard confidential information disclosed during the discovery process. (Docs. 253, 254). That stipulated protective order was also adopted by the Court in September 2017 (hereinafter, Protective Order) and included an "attorneys' eyes only" provision for "highly confidential" information, as well as a process for objecting to claims of confidentiality. (Doc. 253-1 at 2, 7; Doc. 254).

In November 2018, after the above-referenced stay was lifted, the Court entered a Second Amended Case Management and Scheduling Order, which, among other things, set a discovery deadline of June 7, 2019.[3] (Doc. 365). The Court also resolved several pending motions that had been filed prior to the implementation of

---

[3] In October 2019, Centennial moved to reopen discovery to conduct additional depositions. (Doc. 599). That request was denied. (Doc. 681).

the stay.   Notably, in one of those motions, Centennial sought partial relief from the ESI Protocol Order to enable it to pursue evidence of alleged spoliation by Murrin and Davey.   (Doc. 255).   The Court granted that motion in part in an Order entered in January 2019 (hereinafter, January 2019 Order), based upon an agreement by the parties that reports from the Court-appointed forensic expert (Denny), as well as additional files in their native format, would be produced.   (Doc. 381).[4]   The Court, however, denied another motion brought by Centennial, in which Centennial requested that it be awarded an adverse inference jury instruction due to Murrin and Davey's alleged failure to preserve evidence.   (Docs. 256, 386).

In May 2019, Centennial moved for a show cause order seeking to have the Court hold Murrin in contempt for failing to comply with the ESI Protocol Order. (Doc. 397).   That motion stemmed from Centennial's deposition of Murrin, in which Murrin testified that he had not construed the ESI Protocol Order to cover a family computer he obtained in 2016, an external hard drive he used primarily to maintain family photographs, and an external hard drive he employed mainly to store iTunes purchases.   *Id.*; (Doc. 460 at 3).   The Court denied Centennial's motion in July 2019, finding that Murrin's interpretation of the scope of the ESI Protocol Order was reasonable and that he had shown substantial good-faith compliance with the Order. (Doc. 460 at 3–4).

---

[4] According to Murrin and Davey, the native format files were thereafter provided in early 2019. (Doc. 612 at 4).

In June 2019, Centennial again filed a motion to compel directed at Murrin, this time seeking a Court order instructing that E-Hounds' images of Murrin's devices be produced so that Centennial could show he had deleted "copious amounts of data." (Doc. 402 at 6, 11).   The Court denied that motion in September 2019, finding that Centennial had not established that the E-Hounds images would reveal any new information.   (Doc. 539 at 3).   The Court noted in this regard that, according to Murrin, "any deletions—which [Murrin] generally denie[d]—were done either before the E-Hounds imaging or after [the] imaging" performed by the Court-appointed forensic expert, Denny.   *Id.* (citing Doc. 402 at 74–75, 81–82, 118).[5]

In late 2019, Centennial again sought the imposition of spoliation sanctions against both Murrin and Davey (Doc. 490), as well as the production of documents and sanctions against Bryant, Murrin, and Davey (Docs. 532, 600).   In connection with the latter motion against Murrin and Davey, Centennial submitted a supporting declaration from Denny.   (Doc. 629).   Following a hearing on the matter, the Court entered an Order in March 2020 (hereinafter, March 2020 Order), denying without prejudice Centennial's request for spoliation sanctions but granting in part Centennial's motion to compel discovery from Bryant, Murrin, and Davey.   (Doc. 667).   Of significance to the instant motions, the Court stated in its March 2020 Order that, within ten (10) days thereof:

---

[5] That Order was issued by the Magistrate Judge assigned to the case at the time and was upheld on appeal by the presiding District Judge.   (Docs. 563, 662).

   a. Murrin shall provide Denny access to the iCloud account associated with the email address pmurrin1@tampabay.rr.com and any other undisclosed backup account that Murrin used in connection with his mobile Apple devices and his MacBook Pro, including, but not limited to, the iPhone with the IMEI number 353256070407979 (i.e., the 7979 iPhone);

   b. Davey shall provide Denny with access to the iCloud account associated with the email address gwynndavey@gmail.com and any other undisclosed backup account that Davey used in connection with her Apple mobile devices; [and]

   c. Murrin and Davey shall direct their consultant, Adam Sharp, and/or his firm, E-Hounds, to produce following counsel's review for privilege or other protections: (i) Sharp's chain of custody forms for all evidence provided to Sharp, including a description and the evidence number Sharp assigned to each device and account, (ii) a log of the dates of Sharp's data preservation and forensic imaging for each device and account, as well as the method used, (iii) a log of the universally unique identifier for any backups and associated devices, and (vi) the plist logs for all Apple mobile devices Sharp obtained from Murrin and Davey.

*Id.* at 20-21 (footnote omitted).

Following the entry of the March 2020 Order, attorney Jonathan Stidham appeared as counsel for Denny (Doc. 693),[6] and Murrin and Davey submitted affidavits to the Court regarding their efforts to comply with the March 2020 Order (Docs. 694, 696). Contemporaneously with those filings, Denny sought leave to submit an affidavit under seal. (Doc. 695). In support of that request, Denny

---

[6] According to Murrin and Davey, Stidham advised them shortly after making his appearance that they should no longer communicate directly with Denny. (Doc. 700 at 5).

asserted that "he [was] legally obligated to disclose [certain] information to the Court," which—he averred—was "necessary to th[e] Court's resolution of pending matters," but which he claimed he could not detail to the Court without risking violating both his confidentiality agreement with the parties and the Court's ESI Protocol Order.   *Id.* at 2.   The Court denied Denny's request without prejudice, stating:

> Denny's motion leaves a number of important questions unanswered, starting with the purpose of his affidavit.   As a Court-appointed expert, Denny is not a party in this case and instead is supposed to be neutral participant.   Although he now asserts he is compelled by law to make various disclosures to the Court that he claims are relevant to matters before it, he does not identify those pending matters.   Nor does he articulate the basis for his opinion that he is legally required to bring such information to the Court's attention.   Denny also does not address whether he seeks to submit his affidavit *ex parte*, a request which might implicate additional concerns for the Court.

> In light of the above, the Court directs Denny to file an amended motion to seal that—without violating his confidentiality agreement with the parties or the Court's ESI Protocol Order—provides greater details as to the purpose of his affidavit, the nature of the legal obligations he believes mandate him to submit the affidavit to the Court, and whether he seeks to file his affidavit *ex parte*.

(Doc. 703 at 4) (internal citations omitted).

The motions currently pending before the Court were filed in the midst of, and subsequent to, the above submissions.   In the first of these motions, Centennial requests a show cause order as to why Davey should not be held in contempt for her alleged failure to comply with the ESI Protocol Order, the January 2019 Order, and the March 2020 Order.   (Doc. 697).   Davey opposes Centennial's motion (Doc. 704)

and, along with Murrin, moves for clarification of the Court's March 2020 Order (Doc. 699).   Both Centennial and Denny respond in opposition to Davey and Murrin's clarification motion.   (Docs. 705, 706).   The Court heard oral argument on these matters following its review of the parties' submissions.   (Doc. 722).

In addition to these requests for relief, Centennial moves for sanctions against Murrin, Davey, and ServisFirst, claiming that these Defendants have engaged in a pattern of spoliation, willful disobedience of Court orders, and contumacious abuse of the judicial process that warrants the entry of a default judgment against them and the imposition of an award of attorneys' fees and costs.   (Doc. 711).   ServisFirst, Murrin, and Davey oppose Centennial's sanctions motion.   (Docs. 728, 729).

And, finally, in response to the Court's above ruling denying without prejudice Denny's request for leave to file his affidavit under seal, Denny has filed an amended motion for leave to submit his affidavit, which is supported by Centennial and opposed by Murrin and Davey.   (Docs. 712, 720, 721).   Pursuant to a subsequent Court Order (Doc. 724), Denny has since tendered his affidavit to the Court for its *in camera* review. According to the submissions of Centennial, Murrin, and Davey, it appears that at least an unexecuted draft of Denny's affidavit has also been provided to both Murrin and Davey, but not Centennial.   (Doc. 720 at 9; Doc. 721 at 4).   The Court has completed its review of Denny's affidavit, and the pending motions are therefore now ripe for adjudication.

10

II.

A.

The Court begins it analysis with Centennial's motion for a show cause order as to why Davey should not be held in contempt (Doc. 697), as well as Murrin and Davey's motion for clarification (Doc. 699), both of which the Court finds appropriate to address together.[7]  As reflected in these filings, the parties' dispute centers around the applicability and scope of the ESI Protocol Order (Doc. 192), the January 2019 Order (Doc. 381), and the March 2020 Order (Doc. 667).   From Centennial's perspective, information has come to light in the wake of the March 2020 Order that reveals Davey has (a) failed to turn over a previously undisclosed (and now unavailable) iPhone 6; (b) mispresented for several years that she did not use an iCloud account; (c) unilaterally limited the scope of her data production to materials from 2015 and 2016; and (d) unilaterally withheld certain forensic ESI reports that the parties agreed would be produced years ago via the January 2019 Order.[8]   (Doc. 697). From Davey's perspective, Centennial is again—without adequately conferring with Davey's counsel—(a) overreaching; (b) engaging in unduly aggressive litigation tactics; (c) making inaccurate assumptions about Davey's production; (d) using the

---

[7] The Court is not persuaded by Centennial's contention that Murrin and Davey's motion is untimely or otherwise beyond the Court's purview at this juncture.   (Doc. 705 at 7–8).

[8] Although Centennial argues that Davey's "undisclosed iPhone 6" has not been produced for imaging or analysis (Doc. 697 at 6), it does not appear that Centennial relies on that argument as a specific basis for relief.   Even were that not the case, it does not appear that Centennial has conferred with Davey on the matter.   (Doc. 704 at 10, n.5).   As a result, the Court does not address this issue here.

fact that Denny exceeded his authority by conducting an unnecessary, unwarranted Apple Privacy Download as fodder to complain Davey is somehow obfuscating ESI; and (e) attempting to define Davey's actions as contemptable despite knowing that Davey intended to seek clarification from the Court as to her production obligations. (Doc. 704).   Given the ambiguity Davey submits surround these issues, she claims contempt is not an appropriate sanction.   *Id.*

To Davey's point, four days after Centennial moved for its show cause order as to why Davey should not be held in contempt, Davey—along with Murrin—sought the requested clarification of the Court's March 2020 Order.   (Doc. 699).   With respect to their clarification motion, Murrin and Davey seek the Court's guidance regarding (a) the relevant timeframe for responsive documents; (b) the production of plist logs; (c) the disclosure of Davey's Apple Privacy Download; and (d) the application of the January 2019 Order to Davey's iCloud data.   *Id.*

To resolve the parties' dispute, the Court looks to Rule 37(b) of the Federal Rules of Civil Procedure.   That rule "authorizes a panoply of sanctions for a party's failure to comply with a discovery order," *Wyndham Vacation Ownership, Inc., v. Clapp Bus. Law, LLC*, 2020 WL 3266059, at *2 (M.D. Fla. Apr. 2, 2020) (internal quotation marks and citation omitted), including—of relevance here—"treating [the violation] as contempt of court," Fed. R. Civ. P. 37(b)(2)(A)(vii).

Civil contempt, however, "is a severe remedy," and the burden on a litigant requesting such relief is therefore "a high one."   *In re Roth*, 935 F.3d 1270, 1277 (11th

Cir. 2019) (quoting *Taggart v. Lorenzen*, 587 U.S. ___, 139 S. Ct. 1795, 1802 (2019)). In particular, a party seeking civil contempt for noncompliance with a court order must demonstrate by clear and convincing evidence that: "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007) (citation and emphasis omitted); *see also F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010) (citation omitted).

"Instead of or in addition to" contempt (or certain other sanctions available under Rule 37), the Court must order a party who has failed to obey a discovery order "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In the end, the Court has substantial discretion in deciding whether and how to impose sanctions under Rule 37. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). That discretion, however, is not unbridled, as the magnitude of the sanctions must always be "reasonable in light of the circumstances." *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1453 (11th Cir. 1985) (noting that the permissible purposes for sanctions are to compel discovery, deter misconduct, punish the guilty party, or compensate the court or the parties for the added expense caused by the abusive conduct) (citations omitted).

Upon careful consideration of the matter, the Court finds Centennial's request to initiate contempt proceedings to be without merit.   As even a casual observer to these proceedings is aware, discovery in this action has been rife with disagreements as to the relevance, preservation, and production of ESI, as well as accusations of intentional obfuscation and/or destruction of evidence.   The instant dispute again seems to stem from the parties' inability to see the forest for the trees and to come together in a rational, pragmatic approach to address the merits of their ongoing feud.

On this front, the efforts by counsel to resolve this dispute appear to have taken place mainly by way of an email exchange.   Such an exchange between the parties under the circumstances present here does not comply with either the letter or the spirit of Local Rule 3.01(g), particularly given the complexity of the issues involved.   At the time Centennial filed its motion for a show cause order, Local Rule 3.01(g) provided, in pertinent part:

> Before filing any motion in a civil case . . . the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement (1) certifying that the mov[ant] has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion. . . .

M.D. Fla. R. 3.01(g).[9]

Local Rule 3.01(g) has long been construed to impose upon counsel the

---

[9] Local Rule 3.01(g) has been amended effective February 1, 2021 but contains essentially the same language as the prior version.

obligation to actually speak to one another before filing a motion.   *See, e.g., Knights Armament Co. v. Optical Sys. Tech. Inc.*, 254 F.R.D. 463, 466 (M.D. Fla. 2008); *N.H. Indem. Co. Inc. v. Reid*, 2006 WL 1760624, at *2 (M.D. Fla. June 23, 2006) ("The purpose of Local Rule 3.01(g) 'is to require the parties to communicate and resolve certain types of disputes without court intervention.'   The term 'communicate' has been further clarified to mean, 'to speak to each other in person or by telephone, in a good faith attempt to resolve disputed issues.'") (internal citations omitted).[10]   Indeed, the undersigned states in his "Preferences" section on the Court's website that "[t]he term 'confer' in Local Rule 3.01(g) requires a substantive conversation in a good-faith effort to resolve the motion without court action."[11]

Had Centennial and Davey followed this directive, they might have been able to settle their differences without judicial intervention.   Instead, it strikes the Court that Centennial filed its motion for a show cause order without engaging in a sufficiently robust conferral process in an effort to gain a tactical advantage by "beating Davey to the punch" before she could file her clarification motion.   Denial of Centennial's motion is justified on this basis alone.

Regardless of this deficiency, once again it seems evident that there is blame to be cast on both sides.   As a result, the Court must intervene to address and clarify

---

[10] There are, of course, some instances where exchanges of emails or written correspondence can effectively accomplish the goals of Local Rule 3.01(g).   This is obviously not one of those cases.
[11] Available at http://www.flmd.uscourts.gov/judges/christopher-tuite.

some outstanding matters raised by the parties.

1.    *Temporal Scope of Production*

One of the issues on which Davey seeks the Court's input is the temporal scope of the production required by the March 2020 Order as it pertains to her iCloud data. (Doc. 699 at 9–12).   Neither that Order nor any of the Court's prior ESI Orders directed at Murrin and Davey specified a time period or a cutoff date for relevant discovery.   Nonetheless, the generally pertinent time frame for this case does appear to end on December 31, 2016—the date on which the non-compete agreements (including those executed by Murrin and Davey) terminated.   (Doc. 395 at 3–5).[12] Davey now contends that she should only have to produce communications stored via her iCloud account up to December 31, 2016.   Centennial disagrees, arguing that the December 31, 2016, date eroded when the alleged evidence of spoliation surfaced, and that it is thus entitled to wholesale discovery up to the present day.   Neither party is correct.

Starting with Centennial, simply because it suspects that ESI from 2017 forward may reveal spoliation does not mean—at least on the evidence presented—that the entirety of Davey's iCloud data is automatically open to discovery without limits.   By way of its March 2020 Order, the Court did not provide, nor did it intend to create, an

---

[12] In their motion for clarification (Doc. 699 at 10-11), Murrin and Davey cite the Court's May 9, 2019, Order (Doc. 395), as evidence that the Court has imposed a categorical hard deadline of December 31, 2016, for all discovery.   The Court does not read its May 9, 2019, Order so broadly.

entryway for Centennial to access all of Davey's ESI well outside the realm of what is relevant to the parties' claims and defenses and proportional to the needs of this action. *See* Fed. R. Civ. P. 26(b)(1).

Nonetheless, as discussed at the oral argument on this matter and as Davey acknowledged, although her non-compete agreement expired at the end of 2016, documents post-dating December 31, 2016, *could* be relevant to the parties' claims and defenses, as well as to Centennial's allegations of spoliation.   On the record before it, however, the Court is not privy to all of the discovery requests that Centennial has served on Davey specifically seeking such discovery.   As such, to the extent that (a) Davey is in the possession of ESI (or other items or information) accessible through her iCloud account that post-date December 31, 2016; (b) such items and information are responsive to a discovery request that has already been propounded by Centennial; *and* (c) such items or information are relevant to the parties' claims and defenses and/or the issue of spoliation relative to devices or accounts belonging to Davey in existence in 2016 but which Davey failed to timely disclose, Davey shall produce such responsive items and information within twenty-one days of the date of this Order.

### 2.   *Applicability of the Court's Prior ESI Orders*

By way of her motion for clarification, Davey also seeks the Court's guidance on whether the January 2019 Order applies to the production of her iCloud data required by the March 2020 Order.   (Doc. 699 at 15–16).   Davey, of course, contends that it does not.   *Id.*

17

In response, the Court clarifies that it did not intend its March 2020 Order to abrogate the procedures or applicability of its prior ESI Orders, including the January 2019 Order.   The Court understands, however, that the January 2019 Order was entered in a specific context that may not be appropriate with respect to Davey's iCloud data.   At the hearing on her motion, for example, Davey's counsel represented that he did not receive raw data or forensic images in connection with the iCloud data, as was contemplated by the January 2019 Order.   Thus, it appears that certain procedures set forth in the January 2019 Order may not apply to the iCloud data. However, to the extent that the parties are able to comply with such an agreed-upon procedure, the Court expects them to do so.

       *3.*    *Plist logs*

In addition to the above matters, there is a question among the parties, as reflected in Murrin and Davey's motion for clarification, regarding plist logs and/or plist files that have been produced to date.   Murrin and Davey assert that all plist *logs* have been disclosed (Doc. 699 at 13), while Centennial claims that Murrin and Davey have wrongfully withheld plist *files* (Doc. 705 at 13–16).   According to Murrin and Davey, plist logs "typically include the info.plist, manifest.plist, and status.plist" and "provide the information necessary to conduct a forensic analysis of the Apple devices." (Doc. 699 at 13).   On the other hand, they aver that plist files are used to store configuration data for every app and plug-in device.   *Id.*   Notwithstanding their differences on this matter, the parties agree that "produc[ing] every plist file on the

18

Apple device[s at issue] would result in hundreds of files about apps on the devices." (Doc. 699 at 13); *see also* (Doc. 705 at 14).

In its March 2020 Order, the Court directed that Murrin and Davey instruct "Adam Sharp, and/or his firm, E-Hounds, to produce . . . the plist *logs* for all Apple mobile devices Sharp obtained from Murrin and Davey."   (Doc. 667 at 21) (emphasis added).   Although not an exact recitation of the language Centennial employed in its motion to compel that led to the March 2020 Order, this verbiage was intended to encompass the information Centennial requested—namely, "the logs for all Apple mobile devices, including but not limited to info.plist, manifest.plist, status.plist, and manifest.mbdb reports."   (Doc. 600 at 2).   At no point did Centennial seek, nor did the Court direct, the production of all plist *files*.

### 4.   Forensic Reports

Centennial's motion for a show cause order encompasses a dispute over the status of Davey's production of the forensic reports mandated by the March 2020 Order (Doc. 697 at 10–15), although the parameters of this quarrel—including the reports Denny has provided to Davey in the first instance—are difficult to decipher. After reviewing the parties' submissions, it is evident to the Court that the parties have not adequately consulted on this matter, as Davey's response indicates that Denny did not provide Davey with many of the reports Centennial claims are missing from Davey's production.   (Doc. 704 at 12–15).   As such, the Court declines to wade into

this particular minefield before the parties have exhausted their efforts to identify the universe of forensic reports that even exist at this stage.

     5.    *Apple Privacy Download*

Finally, the parties' competing motions reflect a controversy over whether Denny exceeded his authority by conducting an Apple Privacy Download of Davey's iCloud account. (Doc. 699 at 14–15; Doc. 704 at 5–6). This issue requires little discussion. While it is true that the Court did not explicitly authorize such a procedure, the Court is not in a position to opine whether performing an Apple Privacy Download is standard practice for forensic computer experts, as Denny maintains (Doc. 706 at 5), or if it is an overreach by Denny, as Davey asserts (Doc. 699 at 14–15; Doc. 704 at 14–15). Nor need the Court weigh in on this debate. Quite simply, to the extent that the Apple Privacy Download contains information responsive to a pending discovery request that is relevant to the parties' claims and defenses and proportional to the needs of the case, Davey is obligated to disclose that information.

B.

Akin to the above motions, Centennial's motion for sanctions directed at Murrin, Davey, and ServisFirst pertains to the alleged spoliation of ESI and the Defendants' compliance with the Court's prior discovery orders. (Doc. 711). Invoking Rules 37(b) and 37(e), as well as the Court's inherent authority, Centennial seeks the entry of a default judgment against Murrin, Davey, and ServisFirst, along with a blanket payment of Centennial's attorneys' fees. *Id.* This request fails.

20

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."   *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).   "A district court possesses broad discretion in deciding whether to impose sanctions for the spoliation of evidence."   *Romero v. Regions Fin. Corp./Regions Bank*, 2019 WL 2866498, at *3 (S.D. Fla. July 3, 2019) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).

When considering a spoliation claim involving ESI, the courts look to Rule 37(e), as amended in 2015.   Case law from the Eleventh Circuit on the application of this new provision is still relatively scant.[13]   In explaining the reason for the 2015 amendment, however, the accompanying advisory committee notes provide helpful guidance:

> [The prior version of the Rule] has not adequately addressed the serious
> problems resulting from the continued exponential growth in the volume

---

[13] Prior to the amendment of Rule 37(e), the Eleventh Circuit applied the following four-factor test to determine whether spoliation sanctions were warranted: "(1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed."   *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018) (citing *Flury*, 427 F.3d at 944–45).   The Eleventh Circuit acknowledged in *ML Healthcare*, however, that it had not had the opportunity as of the date of that decision to decide whether the multi-factor test set forth in *Flury* applied when a party seeks sanctions based on the spoliation of ESI under the amended version of Rule 37.   *ML Healthcare*, 881 F.3d at 1307.   That said, the Eleventh Circuit continues to apply the *Flury* four-factor test in assessing whether to impose sanctions under Rule 37 outside the ESI context.   *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020).

of [ESI].    Federal circuits have established significantly different standards for imposing sanctions or curative measures on parties who fail to preserve [ESI].   These developments have caused litigants to expend excessive effort and money on preservation in order to avoid the risk of severe sanctions if a court finds they did not do enough.

Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.

In light of these concerns, Rule 37(e) "authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures.    It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used."

*Id*.   As a result, "many courts have held that Rule 37(e) . . . provide[s] the exclusive mechanism by which [the court] must analyze spoliation allegations involving ESI."

*Romero*, 2019 WL 2866498, at *4 (collecting cases).

Rule 37(e) itself states:

If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Thus, four threshold elements must be present for Rule 37(e) to apply: (1) there was a duty to preserve ESI; (2) ESI was lost or destroyed; (3) the ESI was lost as a result of the party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or recovered through additional discovery.   *See id.*; *Akkasha v. Bloomingdales, Inc.*, 2019 WL 11215918, at *4 (S.D. Fla. Oct. 18, 2019); *Sosa v. Carnival Corp.*, 2018 WL 6335178, at *10 (S.D. Fla. Dec. 4, 2018) (citation omitted).   If all of these elements are not met, "a motion for spoliation sanctions or curative measures must be denied."   *Sosa*, 2018 WL 6335178, at *10 (quotation and citation omitted).

Even if these elements are satisfied, a court may only award sanctions under subsection (e)(1) if it finds "prejudice" to another party, or under subsection (e)(2) if it finds that the party acted with the "intent to deprive" the opposing party of the ESI. Fed. R. Civ. P. 37(e); *Title Cap. Mgmt., LLC v. Progress Resid., LLC*, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 29, 2017) (citation omitted).

At this stage, the threshold requirements to trigger a finding of spoliation have not been met.   As an initial matter, the Court does not accept Centennial's rather conclusory contention that Murrin, Davey, and ServisFirst had a duty to preserve as of an unspecified date in 2015 because they "knew this litigation would ensue" by then and because Murrin and Davey had explored an employment opportunity at an unrelated bank during the summer of 2015.   (Doc. 711 at 4–5).   Such allegations are not sufficiently specific, and the time frame Centennial proposes is too indefinite.   *See, e.g., In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 2018 WL 4856767, at *3 (N.D. Fla.

Oct. 5, 2018) (describing the reasonable foreseeability standard and duty to "pinpoint[] the trigger date when the duty to preserve arises" as "highly case specific and fact dependent").

Irrespective of this deficiency, the Court is not persuaded based on the record before it that relevant ESI was actually lost, destroyed, or unrecoverable, as Rule 37(e) mandates before a finding of spoliation can be made. Indeed, Centennial's argument on this issue is based largely, if not entirely, on supposition. As examples of lost ESI, Centennial points to (1) Murrin and Davey's purported "wiping" of their iPhones on December 31, 2015; (2) evidence that Murrin and Davey allegedly continued to destroy ESI after the Court ordered them to produce data; (3) its dispute with Davey regarding the disclosure of her iCloud account; (4) the existence of Davey's iPhone 6, which she possessed during 2016 but then traded in; (5) Davey's purported possession of a second, undisclosed iPad; (6) confusion surrounding the existence of Murrin's "roadrunner" iCloud account; (7) production of Murrin and Davey's plist files; (8) Sharp's collection of ESI using the software program, Aid4Mail;[14] and (9) Sharp/E-Hounds' lack of "chain of custody" forms and allegedly unreliable logs of data preservation and forensic imaging. (Doc. 711 at 11).

Despite listing these general categories, however, Centennial does not show what ESI, if any, has actually been lost and cannot be recovered from other sources.

---

[14] According to Aid4Email's website, this program provides a variety of services, including email forensics and migration. *See* Aid4Mail, *https://www.aid4mail.com/* (last visited Feb. 18, 2021).

Instead, Centennial merely argues that "[o]nly the Defendants know what they have failed to preserve and, because they have repeatedly refused to comply with the Court's discovery orders, the ESI should be presumed lost." *Id.* at 12. These averments provide an inadequate basis upon which to impose the severe sanctions Centennial seeks.

The same can be said of Centennial's other contentions relating to purportedly lost ESI. For example, although Centennial contends that *both* Murrin and Davey "wiped" their iPhones on December 31, 2015, it appears this claim is predicated solely on Denny's assertion that Davey restored her iPhone from an iCloud backup. (Doc. 710 at 11). As Murrin points out, Denny does not allege that Murrin "wiped" or restored his iPhone on that date. (Doc. 729 at 6–7). And, as for Davey, she disputes Denny's contention that she "wiped" or restored her iPhone, arguing that such a claim lacks evidentiary support. *Id.* Putting aside these infirmities, even accepting Denny's statement as true, Centennial does not demonstrate that Davey's restoration of her iPhone caused the deletion of relevant ESI that could not have been obtained from other sources. *Id.* at 7.

Centennial's assertion that Murrin and Davey deleted relevant ESI after the Court ordered them to produce it is likewise insufficiently supported. As a threshold matter, while it appears Centennial relies on Denny's supplemental affidavit to bolster its argument, it does not include pin cites to that affidavit (which totals forty pages and includes thousands of pages of exhibits) to buttress its assertions. It is not the role of

the Court to blindly comb through such an extensive submission in an effort to ascertain if it contains information that justifies Centennial's claims.

Notwithstanding this defect, the Court has nonetheless conducted a careful review of Denny's supplemental affidavit. Even having done so, however, it cannot discern whether the allegedly deleted data was relevant to this case and/or could not have been secured from another source.

Similarly, Centennial raises a concern that Davey did not promptly disclose her iPhone 6, but it does not explain what data potentially existed on that device that could not have been recovered from Davey's emails, her iPhone 5, or other sources. Moreover, Davey submitted evidence contradicting Denny's theory that Davey could have used two phones simultaneously, such that her iPhone 6 would contain information that was not on her iPhone 5. (Doc. 729-1 at 4–5). Lastly, in contrast to Denny's assertion, Davey emphatically disputes that she used a second iPad in 2016 to access her Gmail account. (*Id.* at 11–12; 729-1 at 3–4).

Because Centennial's contention that Murrin, Davey, and ServisFirst lost or destroyed relevant ESI does not meet Rule 37(e)'s threshold requirements, the issue of whether Centennial has been prejudiced under subsection (e)(1) of Rule 37 need not be addressed. *Title Cap.*, 2017 WL 5953428, at *5 (citing *Keim v. ADF Midatlantic, LLC*, 2016 WL 7048835, at *3 (S.D. Fla. Dec. 5, 2016); *Living Color Enter., Inc. v. New Era Aquaculture*, 2016 WL 1105297, at *5 (S.D. Fla. May 22, 2016)). Even if the Court were required to resolve that issue, it is not convinced that Centennial has suffered the

type of harm urged by counsel assuming, for the moment, that relevant ESI has actually been lost and is not recoverable from other sources.   Simply put, Centennial's arguments on this matter are again too speculative and fail to adequately identify any undisclosed information that would materially further its defense.

Centennial's request for the harsher measures afforded under Rule 37(e)(2) is similarly deficient.   As noted above, even if no prejudice is found under subsection (e)(1), subsection (e)(2) allows for more severe sanctions, including default judgment, only upon a finding that the party acted with an "intent to deprive."   Fed. R. Civ. P. 37(e)(2).   At least one court within this Circuit has found the intent to deprive standard analogous to the test for a finding of bad faith.   *Living Color*, 2016 WL 1105297, at *6 n.6 (citing *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010)).[15]   While the Eleventh Circuit does not require a showing of malice in order to find bad faith, it has determined that "mere negligence in losing or destroying records is not sufficient to draw an adverse inference."   *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (citing *Bashir v. Amtrak*, 119

---

[15] In *Managed Care*, the court held that following constitutes circumstantial evidence of bad faith: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.
736 F. Supp. 2d at 1323 (citing *Walter v. Carnival Corp.*, 2010 WL 2927962 at *2 (S.D. Fla. July 23, 2010)).

F.3d 929, 931 (11th Cir. 1997)); *see also* Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment (explicitly "reject[ing] cases . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence"); *Romero*, 2019 WL 2866498, at *9 (noting that Rule 37(e) "specifically rejects cases that previously authorized sanctions based on a finding of negligence or gross negligence"). And, "[b]ecause dismissal is the most severe sanction available," the Eleventh Circuit has instructed that "it 'should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice.'"   *Oil Equip. Co. Inc. v. Modern Welding Co. Inc.*, 661 F. App'x 646, 653 (11th Cir. 2016) (per curiam) (quoting *Flury*, 427 F.3d at 944).

In an attempt to show bad faith here, Centennial questions Sharp's use of the Aid4Mail software program to collect data from Murrin and Davey's devices; Murrin and Davey's production of the plist logs; and Murrin's alleged failure to disclose his "roadrunner" iCloud account.   (Doc. 711 at 12–26).   These claims do not survive scrutiny.

Centennial's complaint regarding Aid4Mail relates to the March 2020 Order's requirement that Murrin and Davey instruct Sharp to produce his "chain of custody forms for all evidence provided to" him, as well as "a log of the dates of [his] data preservation and forensic imaging for each device and account, as well as the method used."   (Doc. 667 at 21).   According to Centennial, the logs provided by Sharp are unclear as to whether he utilized Aid4Mail or a program called Google Takeout.

(Doc. 711 at 15–18).   Centennial suspects that Sharp used Aid4Mail to "identify [Murrin and Davey's Gmail emails] or [to] migrate them, thereby allowing Murrin and Davey to maintain a full set of their emails while producing only selected emails for the subsequent Google Takeouts."   *Id.* at 18.

The Court cannot determine on this record that Sharp's purported use of both Aid4Mail and Google Takeout was improper.   Even putting aside that issue, Centennial does not explain beyond pure conjecture why this should lead to a finding of bad faith against the Defendants.

Centennial's claim that Murrin and Davey did not comply with the Court's Order requiring the production of the plist logs fares no better.   (Doc. 711 at 18–20). This argument appears to encompass the parties' dispute regarding the production of plist logs versus plist files.   The Court resolved this objection above and concludes it is not a basis for a finding of bad faith.

The Court is likewise unpersuaded by Centennial's argument that Murrin's alleged nondisclosure of his "roadrunner" iCloud account constitutes bad faith. (Doc. 711 at 20).   This contention relates to the confusion regarding whether Murrin used his "roadrunner" email address to create a separate iCloud account. [16] Centennial theorizes that Murrin used a "concealed" iCloud account associated with his "roadrunner" email address to back up his data, but that he has now deleted that

---

[16] In its March 2020 Order, the Court required Murrin to provide Denny with access to the iCloud account associated with the "roadrunner" email address.   (Doc. 667 at 20).

account.   (Doc. 711 at 20–22, n.46).   Murrin responds that he simply changed the email account he used to access iCloud from his "roadrunner" email address to his Gmail address.   (Doc. 729 at 12–13).

The Court finds that Murrin has offered a reasonable explanation for his position, along with sufficient evidentiary support.   Even were that not the case, the Court finds that Centennial's argument regarding Murrin's "roadrunner" account is too speculative to support a finding that Murrin acted in bad faith to deprive Centennial of relevant ESI.

In sum, as discussed above, Centennial has presented evidence demonstrating, at most, Murrin and Davey's negligence (perhaps gross negligence) with respect to their devices.   And, while it appears that Murrin and Davey should have possibly taken additional steps to preserve their ESI, a negligent or even grossly negligent failure to do so does not warrant a finding of an intent to deprive.[17]   *See, e.g., Living Color*, 2016 WL 1105297, at *6 n.6 (S.D. Fla. Mar. 22, 2016) (declining to impose Rule 37(e)(2) sanctions because there was insufficient evidence that the defendant intentionally deleted text messages in order to deprive the plaintiff of their use in the lawsuit); *Socas v. Nw. Mut. Life Ins. Co.*, 2010 WL 3894142, at *8 (S.D. Fla. Sept. 30,

---

[17]   For this reason, to the extent Centennial asks the Court to rely on its inherent authority to sanction Defendants for reasons other than spoliation, its request is denied.   *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) ("The key to unlocking a court's inherent power [to sanction] is a finding of bad faith."); *see also* Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment (stating Rule 37(e) "forecloses reliance on inherent authority" in the spoliation context).

2010) (denying motion to dismiss and for adverse inference jury instruction when plaintiff doctor negligently failed to suspend her ordinary policy of purging inactive patient files after learning the information in those files was relevant to her disability claim); *Preferred Care Partners Hldg. Corp. v. Humana, Inc.*, 2009 WL 982460, at *7–8 (S.D. Fla. Apr. 9, 2009) (declining to order adverse inference even though party's performance in fulfilling its discovery obligations was "clearly egregious" and even though its discovery failings "resulted from the grossly negligent oversights of counsel").   As such, Centennial's request for a default judgment against Murrin and Davey under Rule 37(e)(2) is not justified as well.

Centennial's motion for sanctions against ServisFirst, which Centennial includes with its motion against Murrin and Davey, also fails for the reasons stated above.   In addition, the Court notes that Centennial's request for sanctions against ServisFirst appears to hinge on a theory that ServisFirst controlled Murrin and Davey's litigation strategy as a result of its indemnification agreement with those Defendants. (Doc. 711 at 1).   The existence of the indemnification agreement, however, does not establish that ServisFirst directed Murrin and Davey to take any improper action with respect to discovery.   Centennial wholly fails to show that ServisFirst's responsibility sweeps so broadly that the Court should sanction ServisFirst for conduct by Murrin and Davey in executing their discovery obligations.

Centennial also appears to claim that ServisFirst failed to provide Murrin and Davey with a proper litigation hold.   While there is some dispute among the parties

about this matter, ServisFirst submitted evidence showing that on January 19, 2016—several days after Centennial filed suit—it placed a litigation hold on the e-mail accounts for Murrin and Davey and issued a litigation hold notice to them as well. (Doc. 727 at 1–2). The Court does not opine as to whether these steps are adequate in all instances, but finds that, on the facts presented by Centennial, ServisFirst did not engage in conduct warranting the severe sanctions of a default judgment or blanket award of attorneys' fees.

C.

The final matter before the Court is Denny's motion to file his amended affidavit under seal, or, alternatively, for leave to file the affidavit in the public record with redacted personal information. (Doc. 712). Denny asserts in his motion that the purposes of his affidavit are, *inter alia*, "to inform the Court of devices [associated with Murrin and Davey] that have not been examined;" to set forth his "concerns regarding recent activity with [Murrin and Davey's] iCloud accounts that make it impossible for [him] to review all of the data" required by the Court; and "to correct misinformation and defamatory statements published about Denny by the Defendants" in their filings. *Id.* at 4, 6. Denny further asserts that it is necessary for him to bring these matters to the Court's attention for, among other reasons, to address "possible fraud on the Court" purportedly committed by Murrin and Davey. *Id.* at 4. He also avers that, in the absence of such relief, he "is unaware of how he can fulfill his duties to the Court, as well as his duties pursuant to Federal Rule of Civil Procedure 706, which

32

provides that a court-appointed expert 'must advise the parties[, including Centennial,] of any findings the expert makes.'" *Id*. at 9 (quoting Fed. R. Evid. 706(b)(1)).

In Centennial's "limited" response, it argues that the Court should grant Denny's motion and allow it to see his affidavit given that (1) Murrin and Davey may be engaging in acts constituting fraud on the court; (2) Murrin and Davey have also allegedly frustrated and obstructed Denny's ability to fully carry out his duties as the Court-appointed expert; and (3) no other mechanism exists to ensure that Murrin and Davey have produced all discoverable evidence to Centennial.   (Doc. 721 at 3, 7, 9).

Notwithstanding these concerns, Centennial highlights in its response that it informed Murrin and Davey during the Rule 3.01(g) conferral process that it would be amenable to resolving the matter by allowing only Denny, Murrin, Davey, and the Court to have access to Denny's affidavit.   *Id*. at 5.   In particular, it advised Murrin and Davey:

> We propose that Denny's affidavit being filed under seal and ex parte – meaning Denny, Murrin, Davey, and the Court will be the only ones to know its content.   *We are willing to defer to the Court's judgment regarding what parts of the affidavit, if any, Centennial will be allowed to see.   While we have some measure of discomfort with this proposal, we think it fully addresses the concerns that you have raised.*

*Id.* (emphasis added).   Centennial took this position, it appears, because it believed the "Court's review of the Denny Affidavit [wa]s essential" in light of the allegations that Murrin and Davey "ha[d] perpetrated a continuing fraud upon th[e] Court."   *Id*. at 3.

Murrin and Davey's opposition to Denny's motion is grounded on a number of arguments, including that (1) Denny's affidavit contains information prohibited from disclosure by the ESI Protocol Order; (2) Denny played the role of "investigator" and/or "fact finder" in compiling the affidavit in contravention of the ESI Protocol Order; and (3) Denny provides no valid basis for filing the affidavit under seal or otherwise.   (Doc. 720).

After a thorough review of the matter, the Court grants Denny's motion solely to the extent that Denny seeks to file his affidavit under seal such that it is accessible to the Court only.   The Court denies Denny's motion in other respects.   Several considerations inform the Court's decision.

To begin, as Murrin and Davey argue and Denny tacitly acknowledges, a substantial portion, if not more, of Denny's affidavit relates to information and evidence which the ESI Protocol Order expressly forbids him from preserving and divulging.   (Doc. 712 at 4; Doc. 720 at 9).   In particular, as noted above, the ESI Protocol Order states in, pertinent part, that Denny "is not to maintain a copy of any data or documents recovered from [Murrin and Davey] and is not to disclose any of his findings to Centennial or any other third-party."   (Doc. 192 at 4).   This language is clear and unambiguous and admits of no exceptions.   If the parties—all of whom are very ably represented—had wished to allow Denny to engage in fact finding and to subsequently report his findings to the Court, Centennial, or anyone else, it was

34

incumbent upon them to include such explicit verbiage in the agreed-upon Order entered by the Court.

Nor can it be fairly argued that the restrictions cabining Denny's role as a neutral forensic expert were a mere afterthought. Denny has served as Centennial's expert for most, if not all, of this litigation. As such, it was understandable that Murrin and Davey would require the above limitations to be part of their stipulated Order before agreeing to permit Denny to have the type of wide-ranging access to their electronic devices that the Order contemplates.[18]

The Court also does not accept the suggestion that, at the time the parties negotiated the ESI Protocol Order, they could not reasonably have foreseen the situation in which they now find themselves. It is hardly unheard of for litigants participating in the discovery process, particularly where ESI is involved, to complain that the opposing side is not being fully transparent or acting in good faith.

The Court is similarly not persuaded by Denny and Centennial's apparent contention that Federal Rule Evidence 706(b) authorizes Denny to divulge his findings to Centennial despite the clear language in the ESI Protocol Order to the contrary. Notably, neither Denny nor Centennial cite any case authority analogous to this

---

[18] Because the matter is not before it, the Court makes no finding as to whether Denny has exceeded his role as a neutral forensic expert and whether he should continue to serve in that capacity. The Court notes only at this juncture that it has serious reservations as to whether Denny should remain in that role for, among other reasons, the fact that Murrin and Davey are only allowed to communicate with Denny through his attorney. (Doc. 720 at 7).

situation to support their argument.   Irrespective of this deficiency, such an exception to the ESI Protocol's restrictions on Denny would effectively nullify those limitations. And, again, if the parties had intended such an expansive exception to apply, they should have expressly stated as much in the stipulated ESI Protocol Order.

Centennial's assertion that it will be prejudiced if it is denied access to the Denny affidavit is unavailing.   It is apparent to the Court after an in-depth analysis of the matter that the vast majority, if not the entirety, of Denny's attestations in the affidavit touch on discovery issues that the parties have already litigated in the public record and/or involve conduct of the ilk that can fairly be expected to have come to light during the adversarial process.   *See, e.g., Council v. Am. Fed'n of Gov't Emps. Union*, 559 F. App'x 870, 873 (11th Cir. 2014) (per curiam) (noting that the evils like "[p]erjury and fabricated evidence" can fairly be "expect[ed] to be exposed by the normal adversary process") (quoting *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir.1985) (per curiam)).   Furthermore, the Court cannot help but note that the affidavit contains a number of instances in which it appears the alleged misdeeds Denny accuses Murrin and Davey of committing is based on Denny's speculation and/or Denny acting more as an advocate than as a neutral expert.

Notwithstanding the above, the Court shares Centennial's concerns regarding Denny's claims that Murrin and Davey engaged in "possible fraud on the Court." (Doc. 712 at 4).   The Eleventh Circuit has defined fraud on the court to be "'that species of fraud which does or attempts to, defile the court itself, or is a fraud

36

perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'" *Brown v. S.E.C.*, 644 F. App'x 957, 959 (11th Cir. 2016) (per curiam) (quoting *Travelers*, 761 F.2d at 1551).   As a number of courts have pointed out, however, fraud on the court is different than "fraud *inter parties*," *Brown*, 644 F. App'x at 959, or the "simple nondisclosure of facts or withholding of discovery," *DeBose v. Univ. of S. Fla. Bd. of Trs.*, 2020 WL 3440651, at *2 (M.D. Fla. June 23, 2020) (citation omitted), *aff'd*, ___ F. App'x ___, 2021 WL 212272 (11th Cir. Jan. 21, 2021) (per curiam); *see also Bryant v. Troutman*, 2006 WL 1640484, at *1 (M.D. Fla. June 8, 2006) (holding that parties' averments that their adversary lied under oath, gave misleading answers, thwarted their discovery efforts, and concealed certain pertinent evidence did not rise to the level of fraud on the court); *BDT Invs., Inc. v. Lisa, S.A.*, 2019 WL 7344829, at *9 (S.D. Fla. Oct. 25, 2019) ("The mere nondisclosure of allegedly pertinent facts also does not ordinarily rise to the level of fraud on the court.").

As these cases indicate, claims of fraud on the court are of a wholly different magnitude, necessitate further inquiry by the Court, and can fairly be considered to fall outside the ambit of the type of limitations imposed upon Denny by the ESI Protocol Order.   Accordingly, consistent with the above approach advocated by Centennial in its discussions with Murrin and Davey during the Rule 3.01(g) conferral process, the Court has engaged in a detailed and fulsome review of both Denny's affidavit and the parties' prior discovery filings to ascertain if the "possible" frauds on

the Court which Denny cites in his motion actually qualify as "the more egregious forms of subversion of the legal" system referred to by the courts in *Brown* and *DeBose*. Based on its review, the Court finds that Denny's affidavit does not support a claim that Murrin and Davey have perpetrated a fraud on the court.

III.

In light of the above, it is hereby ORDERED:

1.    *Centennial Bank's Motion for Order to Show Cause why Davey Should not be Found in Contempt of Court for Failure to Comply with the Court's ESI Orders* (Doc. 697) is denied.

2.    *Gwynn Davey and Patrick Murrin's Motion for Clarification Regarding the Court's Order on Centennial's Motion to Compel Discovery from Murrin and Davey [as well as] for Sanctions* (Doc. 699) is granted in part and denied in part.   Within twenty-one (21) days of the date of this Order, Murrin and Davey shall provide supplemental production in accordance with section II.A. above.

3.    *Centennial Bank's Motion for Sanctions against ServisFirst, Davey, and Murrin* (Doc. 711) is denied.

4.    *Dwayne Denny's Amended Motion to Allow Filing of Affidavit and Supporting Exhibits Under Seal, or, in the Alternative, for Leave to File with Redacted Personal Information* (Doc. 712) is granted in part and denied in part.   Within three (3) business days of the date of this Order, Denny shall file his affidavit *ex parte* and under seal such that only

the Court, and not the parties, has access to it.

DONE and ORDERED in Tampa, Florida, this 20th day of February 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record